**No. 2015-1945**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

WI-FI ONE, LLC,

*Appellant,*

v.

BROADCOM CORPORATION,

*Appellee.*

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2013-00602

**NON-CONFIDENTIAL BRIEF FOR APPELLEE
BROADCOM CORPORATION**

DOMINIC E. MASSA
KATIE M. SAXTON
KEVIN A. GOLDMAN
ZACHARY P. PICCOLOMINI
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

*Attorneys for Appellee Broadcom
Corporation*

January 25, 2016

# CERTIFICATE OF INTEREST

Counsel for Appellee Broadcom Corporation certifies the following:

1.     The full name of every party or *amicus* represented by us is:

Broadcom Corporation

2.     The names of the real party in interest represented by us is:

Broadcom Corporation

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

WILMER CUTLER PICKERING HALE AND DORR LLP:  Dominic E. Massa, Katie M. Saxton, Kevin A. Goldman, Zachary P. Piccolomini, Michael A. Diener

Dated:  January 25, 2016          /s/ Dominic E. Massa
                                  Dominic E. Massa
                                  WILMER CUTLER PICKERING
                                     HALE AND DORR LLP
                                  60 State Street
                                  Boston, MA  02109
                                  (617) 526-6000

**TABLE OF CONTENTS**

Page

CERTIFICATE OF INTEREST ...................................................................i

TABLE OF AUTHORITIES ......................................................................v

STATEMENT OF RELATED CASES .......................................................1

INTRODUCTION ......................................................................................2

STATEMENT OF ISSUES .........................................................................4

STATEMENT OF THE CASE .....................................................................4

    A.    The Parties ...................................................................................4

    B.    The Prior Art ...............................................................................5

        1.    Morley ................................................................................5

        2.    Adams ................................................................................7

    C.    The '568 Patent ...........................................................................8

        1.    The '568 claims and specification .....................................8

        2.    The '568 patent prosecution history ..................................9

    D.    The Eastern District of Texas Litigation ...................................10

    E.    The Proceedings Before The Board And The Prior
        Petition For Mandamus .............................................................12

SUMMARY OF THE ARGUMENT .........................................................21

ARGUMENT .............................................................................................22

I.    STANDARD OF REVIEW ...............................................................22

II.    THE BOARD CORRECTLY DETERMINED THAT THE '568 PATENT
      CLAIMS ARE UNPATENTABLE. ...................................................24

A.     The Board Correctly Construed The Phrase "Service Type Identifier." ....................................................................24

    1.     The claim language, specification, and prosecution history all support the Board's construction. ...........................25

    2.     Wi-Fi One's proposed construction is inconsistent with the intrinsic evidence and contrary to its position in the Texas litigation appeal. ....................................28

B.     Substantial Evidence Supports The Board's Factual Finding That Morley Anticipates The '568 Patent Claims. ....................................................................................33

    1.     Morley discloses a "service type identifier" under the Board's (correct) construction. ..........................................33

    2.     Wi-Fi One's contrary arguments lack merit. ...........................34

    3.     Morley discloses a "service type identifier" even under Wi-Fi One's (incorrect) proposed construction. ..................................................................38

C.     Substantial Evidence Supports The Board's Finding That Adams Renders The '568 Patent Claims Obvious. ...........................40

    1.     Adams discloses a "service type identifier" under the Board's (correct) construction. ..........................................41

    2.     Adams discloses a "service type identifier" even under Wi-Fi One's (incorrect) proposed construction. ..................................................................42

III.     THE BOARD'S DETERMINATION TO INITIATE AN *INTER PARTES* REVIEW IS BOTH CORRECT AND UNREVIEWABLE. ..........................................44

A.     35 U.S.C. § 314(d) Deprives This Court Of Jurisdiction To Review The Board's Determination To Initiate An *Inter Partes* Review..........................................................44

B.    Although Not Reviewable, The Board Correctly Determined That Broadcom's Petition Was Not Time-Barred. ..................................................................50

    1.    The Board properly applied Section 315(b) to determine that Broadcom's petition was timely filed. ......................................................................50

    2.    The Texas Defendants are not real parties in interest or in privity with Broadcom. ......................................52

C.    Wi-Fi One Has Identified No Basis For This Court To Invoke The Extraordinary Remedy Of Mandamus. ............................57

CONCLUSION ..............................................................................58

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

**CONFIDENTIAL MATERIAL OMITTED**

The material omitted on pages 11, 13, and 55-56 describes the commercial relationship between Broadcom and the Texas Defendants.  The material omitted on pages 54-55 describes a non-public regulatory action.

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Achates Reference Publishing, Inc. v. Apple Inc.*,
  803 F.3d 652 (Fed. Cir. 2015) ...................................................................passim

*Allied Chemical Corp. v. Daiflon, Inc.*,
  449 U.S. 33 (1980)................................................................................................57

*Apple Inc. v. Achates Reference Publishing, Inc.*,
  IPR2013-00080, 2013 WL 6514049 (PTAB Apr. 3, 2013) ..............................53

*Baldwin Graphic Systems, Inc. v. Siebert, Inc.*,
  512 F.3d 1338 (Fed. Cir. 2008) .........................................................................35

*Cheney v. United States District Court for the District of Columbia*,
  542 U.S. 367 (2004)..........................................................................................57

*City of Arlington v. Federal Communications Commission*,
  133 S. Ct. 1863 (2013)......................................................................................49

*Click-to-Call Technologies, LP v. Oracle Corp.*,
  622 F. App'x 907 (Fed. Cir. 2015) ............................................................... 46-47

*Director, Office of Workers' Compensation Programs v. Mangifest*,
  826 F.2d 1319 (3d Cir. 1987) ...........................................................................56

*Dynamic Drinkware, LLC v. National Graphics, Inc.*,
  800 F.3d 1375 (Fed. Cir. 2015) .........................................................................23

*Ericsson, Inc. v. D-Link Systems, Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014) ...................................................................passim

*Facebook, Inc. v. Pragmatus AV, LLC*,
  582 F. App'x 864 (Fed. Cir. 2014) ....................................................................33

*In re Altera Corp.*,
  494 F. App'x 52 (Fed. Cir. 2012) ......................................................................57

*In re Calmar, Inc.*,
  854 F.2d 461 (Fed. Cir. 1988) ..........................................................................57

*In re Cuozzo Speed Technologies, LLC,*
    793 F.3d 1268 (Fed. Cir. 2015) ...................................................................23, 48

*In re Gleave,*
    560 F.3d 1331 (Fed. Cir. 2009) ...........................................................................23

*In re Jolley,*
    308 F.3d 1317 (Fed. Cir. 2002) ...........................................................................23

*In re Kotzab,*
    217 F.3d 1365 (Fed. Cir. 2000) ...........................................................................23

*In re Regents of University of California,*
    101 F.3d 1386 (Fed. Cir. 1996) ...........................................................................57

*In re Telefonaktiebolaget LM Ericsson,*
    564 F. App'x 585 (Fed. Cir. May 5, 2014) .....................................................1, 15

*In re TS Tech USA Corp.,*
    551 F.3d 1315 (Fed. Cir. 2008) ...........................................................................57

*KCJ Corp. v. Kinetic Concepts, Inc.,*
    223 F.3d 1351 (Fed. Cir. 2000) ...........................................................................35

*Kennametal, Inc. v. Ingersoll Cutting Tool Co.,*
    780 F.3d 1376 (Fed. Cir. 2015) ...........................................................................24

*Lindahl v. Office of Personnel Management,*
    470 U.S. 768 (1985) .............................................................................................48

*MCM Portfolio LLC v. Hewlett-Packard Co.,*
    No. 2015-1091, __ F.3d __, 2015 WL 7755665 (Fed. Cir. Dec. 2,
    2015) .....................................................................................................................46

*Preminger v. Secretary of Veterans Affairs,*
    517 F.3d 1299 (Fed. Cir. 2008) ...........................................................................46

*Reilly v. Office of Personnel Management,*
    571 F.3d 1372 (Fed. Cir. 2009) ...........................................................................48

*Sebelius v. Auburn Regional Medical Center,*
    133 S. Ct. 817 (2013) ...........................................................................................49

*SightSound Technologies, LLC v. Apple Inc.*,
 No. 2015-1159, __ F.3d __, 2015 WL 8770164 (Fed. Cir. Dec. 15,
 2015) ...............................................................................................46

*Taylor v. Sturgell*,
 553 U.S. 880 (2008).......................................................................53

*Versata Development Group, Inc. v. SAP America, Inc.*,
 793 F.3d 1306 (Fed. Cir. 2015) .....................................................48

## DOCKETED CASES

*Achates Reference Publishing, Inc. v. Apple Inc.*,
 No. 15-842 (U.S. Dec. 29, 2015)......................................................2

*Cuozzo Speed Technologies, LLC*,
 No. 15-446 (U.S. Jan. 15, 2016) ................................................2, 46

## STATUTES, REGULATIONS, AND RULES

35 U.S.C.
 § 314(d)....................................................................................passim
 § 315(b)....................................................................................passim
 § 316(a)(5) ...............................................................................14, 53

37 C.F.R. § 42.51(b)(2).................................................................14, 53

Office Patent Trial Practice Guide,
 77 Fed. Reg. 48,756 (Aug. 14, 2012) ............................................53

Fed. Cir. R. 35(a)(1).........................................................................46

**STATEMENT OF RELATED CASES**

A petition for a writ of mandamus in the underlying *inter partes* review was previously before this Court. *In re Telefonaktiebolaget LM Ericsson*, Nos. 2014-127, -128, and -129, 564 F. App'x 585 (Fed. Cir. May 5, 2014). The panel was composed of Judges Lourie, Dyk, and Reyna. Judge Lourie authored the opinion of the Court.

The patent at issue in the present appeal, U.S. Patent No. 6,466,568 ("the '568 patent"), is involved in a case currently pending in the United States District Court for the Eastern District of Texas. *Ericsson, Inc. v. D-Link Sys., Inc.,* No. 10-cv-0473 (E.D. Tex.). This Court previously decided an appeal from that action. *Ericsson, Inc. v. D-Link Sys., Inc.*, Nos. 2013-1625, -1631, -1632, -1633, 773 F.3d 1201 (Fed. Cir. Dec. 4, 2014). The panel was composed of Judges O'Malley, Taranto, and Hughes. Judge O'Malley authored the opinion of the Court, and Judge Taranto filed an opinion dissenting-in-part.

There are two cases pending before this Court that have been designated as companions to the present appeal: (1) *Wi-Fi One, LLC v. Broadcom Corp.*, No. 2015-1944; and (2) *Wi-Fi One, LLC v. Broadcom Corp.*, No. 2015-1946.

The Supreme Court granted a petition for writ of certiorari to consider the circumstances under which a decision by the Patent Trial and Appeals Board ("the Board") to institute an *inter partes* review may be reviewed on appeal as well as

the claim construction methodology to be applied in *inter partes* review proceedings. *Cuozzo Speed Techs., LLC v. Lee*, No. 15-446 (U.S. Jan. 15, 2016). There is an additional petition for writ of certiorari pending before the Supreme Court that concerns the circumstances under which a decision by the Board to institute an *inter partes* review may be reviewed on appeal. *Achates Reference Publ'g, Inc. v. Apple Inc.*, No. 15-842 (U.S. Dec. 29, 2015).

Counsel for Appellee Broadcom Corporation ("Broadcom") know of no other case pending in this or any other court that may affect or be affected by the Court's decision in this appeal.

## INTRODUCTION

The '568 patent is directed to a radio communication system in which signals may contain different types of payload information (e.g., video, voice, or data). The central feature of the '568 patent is a "service type identifier," and the meaning of this term is clear. The claims state that the "service type identifier" identifies the *type* of information in the payload. The specification defines "service" as a *type* of information. And during prosecution, the applicants stated that they were "claiming the use of a field to identify the *type* of payload information."

Wi-Fi One nevertheless contends that a "service type identifier" must identify a "transmission characteristic." Wi-Fi One's proposed construction has no

- 2 -

support in the claims, is inconsistent with the definition in the specification, and is contrary to the applicants' representation that they were claiming a field that identifies the type of information "and ***not*** the type of channel coding [i.e., a transmission characteristic]."

While Wi-Fi One's proposed construction is plainly incorrect, it is also irrelevant. The Board held that the '568 patent is rendered invalid by two separate prior art references ("Morley" and "Adams"), and found as a factual matter that both references identify the "type" of information conveyed in a signal and therefore disclose a "service type identifier" under the Board's correct construction. But the Board further found, again as a factual matter, that Morley identifies a "transmission characteristic," and therefore Morley discloses a "service type identifier" even under Wi-Fi One's incorrect construction. (Adams also identifies a transmission characteristic, but the Board had no need to reach that issue.)

Tellingly, rather than focusing on the merits of the Board's determination, Wi-Fi One devotes the bulk of its brief to arguing that Broadcom's petition for *inter partes* review was untimely. Indeed, on four separate occasions below, Wi-Fi One argued that Broadcom was in privity with parties who were time-barred from petitioning for review of the '568 patent under 35 U.S.C. § 315(b), and therefore that the Board erred in its decision on institution. The Board repeatedly found that

- 3 -

Wi-Fi One's contentions were baseless and that it had properly instituted an *inter partes* review. While the Board's determination is plainly correct, 35 U.S.C. § 314(d) unequivocally deprives this Court of jurisdiction to review the Board's decision to institute an *inter partes* review, including the Board's determination that a petition is timely under 35 U.S.C. § 315(b).

Wi-Fi One has shown no error in the Board's decision, and it should be affirmed.

## STATEMENT OF ISSUES

1.    Whether the Board correctly determined that claims 1-6 of the '568 patent are unpatentable.[1]

2.    Whether 35 U.S.C. § 314(d) deprives this Court of jurisdiction to review the Board's determination to initiate an *inter partes* review based on its assessment of the time bar set forth in 35 U.S.C. § 315(b).

## STATEMENT OF THE CASE

### A.    The Parties

Broadcom is one of the world's leading developers of semiconductor technologies. Broadcom circuits are used worldwide to power numerous

---

[1] Wi-Fi One does not raise any separate arguments with respect to dependent claims 2-6, and thus those claims rise or fall with independent claim 1. *See* Opening Brief of Appellant ("Br.") 42-66.

commercial devices and applications, including smartphones, wireless and broadband communication networks, and cloud-based storage solutions.

Wi-Fi One LLC is the owner of the '568 patent and a wholly owned subsidiary of non-practicing entity Optis Wi-Fi Holdings, LLC.[2]  Wi-Fi One also identified non-practicing entity PanOptis Patent Management, LLC as a real party-in-interest in the *inter partes* review proceedings.  A2.

## B.    The Prior Art

In communication networks, data signals are typically transferred in "packets" (also referred to as "frames").  A45(1:52-2:27).  The portion of the signal that contains the data to be transmitted is called the "payload."  A56(9-16).  In addition to the payload, signals may contain fields that provide a receiving device with information about the message being conveyed.  For example, various prior art references disclose signals that contain a header that identifies the type of payload information (e.g., voice data, non-voice data, etc.).

### 1.    Morley

U.S. Patent No. 5,488,610 ("Morley"), filed July 12, 1994 and issued on January 30, 1996, relates to a communication system in which a transmitter uses a multiplexer to transmit signals that contain one or more types of payload data.

---

[2] During the pendency of the *inter partes* review, Telefonaktiebolaget LM Ericsson ("Ericsson") transferred ownership of the '568 patent to Wi-Fi One, though Ericsson retains some interest in the patent.  A535.  This brief refers to Wi-Fi One LLC and Ericsson collectively as "Wi-Fi One."

A576(4:66-67)(Morley); A577(5:4-6)(Morley).  For example, the signal may contain voice data, one of three types of non-voice data, or some combination thereof.  A577(5:41-59)(Morley); A578(7:1-17)(Morley).

The Morley signal also contains a header that identifies the contents of the payload, including whether the payload consists of voice data, non-voice data, or some combination thereof:

| Header Type | Frame Type | Header Value |
|---|---|---|
| 0 | Sync | 0 × 19b3 |
| 1 | Extend | 0 × 007f |
| 2 | Voice Only | 0 × 4ce6 |
| 3 | Not Defined | 0 × 0000 |
| 4 | Data 0 | 0 × 34e9 |
| 5 | Data 0* | 0 × 3366 |
| 6 | Voice + Data 0 | 0 × 2ad5 |
| 7 | Voice + Data 0* | 0 × 1e3c |
| 8 | Data 1 | 0 × 4b69 |
| 9 | Data 1* | 0 × 52da |
| 10 | Voice + Data 1 | 0 × 552a |
| 11 | Voice + Data 1* | 0 × 61c3 |
| 12 | Data 2 | 0 × 664c |
| 13 | Data 2* | 0 × 7870 |
| 14 | Voice + Data 2 | 0 × 078f |
| 15 | Voice + Data 2* | 0 × 4b16 |

A578(7:1-17)(Morley); *see also* A577(6:22-25)(Morley).  The receiver operates at different rates for different types of data.  For example, Morley discloses that in one embodiment voice payloads are processed at 6,800 bits per second and non-voice payloads are processed at 14,400 bits per second.  A600(52:45-47)(Morley).  The receiver uses the information conveyed in the header to direct the payload data (voice or non-voice) to the appropriate buffer and process it at the proper data rate.  A579(10:23-25)(Morley); *see also* A574(Fig. 8)(Morley).

### 2.    Adams

U.S. Patent No. 5,541,662 ("Adams"), filed September 30, 1994 and issued on July 30, 1996, discloses a satellite communication system that transmits various types of data in "packetized data streams."  A782(2:54-57)(Adams).  Using a satellite link, the receiver receives three types of data packets:  video payloads, audio payloads, and associated data payloads (e.g., closed captioning information). A792(4:5-12)(Adams); *see also* A791(1:49-56)(Adams).

The Adams signals include a header that provides information about the payload:



*Figure 5*

A787(Fig. 5)(Adams); *see also* A794(7:9-14)(Adams).  A video packet is identified as a packet that carries video data by a video identifier "VIDEO_ID" in the packet header.  A794(7:21-26)(Adams).  An audio packet is identified as a

packet carrying audio data by an audio identifier "AUDIO_ID" in the header. A794(7:27-31)(Adams).  An associated packet is identified as a packet that carries associated data by an associated data identifier "DATA_ID" in the packet header. A794(7:32-37)(Adams).

### C.   The '568 Patent

#### 1.   The '568 claims and specification

The '568 patent is directed to a radio communication system in which signals may contain different types of payload information (e.g., video, voice, or data), and in which the signal informs the receiver of the type of information contained in the payload.  A45(2:17-27); A46(3:9-22).

The patent explains that different types of information are referred to as different "services."  A45(2:28-29).  The patent further explains that a particular channel in the signal—the fast out-of-band channel ("FOC")—may be used as a "service type identifier" that identifies the type of information being conveyed in the payload, such as voice, video, and data.  A46(3:11-16).  Additionally, the patent states that different types of information have different optimal transmission characteristics, and that a receiver can use its knowledge of the type of information contained in a payload to aid in processing the information.  A46(3:16-19).

Claim 1, which is representative of the claims at issue, recites:

A communication station comprising:

a processor for arranging information for transmission including providing at least one first field in which payload information is disposed and providing at least one second field, separate from said first field, which includes a *service type identifier which identifies a type of payload information* provided in said at least one first field; and

a transmitter for transmitting information received from said processor including said at least one first field and said at least one second field.

A51(13:10-22).[3]

### 2.    The '568 patent prosecution history

During prosecution, the Examiner rejected original claims 45-51 (the predecessor to issued claims 1-7) as anticipated by U.S. Patent No. 5,757,813 ("Raith"), a prior art patent whose named inventor is one of the named inventors of the '568 patent.  A1256-57.  In response, the applicants attempted to distinguish Raith on the grounds that it did not teach a "service type identifier" as that term is used in the '568 patent because the Raith signal identifies a type of channel coding and not the type of information in the payload.  A1263-64.

The Examiner again rejected original claim 45 as anticipated by Raith. A1270-73.  The Examiner explained that, like Raith, the claimed "service type identifier" could convey information regarding transmission characteristics such as channel coding.  A1272.

---

[3] Except as otherwise noted, each emphasis in this brief is added.

The applicants responded by asserting that the claimed "service type identifier" refers only to a field that identifies the "type" of information in the payload. A1277-81. The applicants further stated that "the plain language of this claim makes clear that Applicants are claiming the use of a field to identify the type of payload information and not the type of channel coding." *Id.*

The Examiner then allowed original claims 45-51 to issue as claims 1-7. *See* A51(13:11-14:19).

### D.    The Eastern District of Texas Litigation

On September 14, 2010, Wi-Fi One filed suit in the United States District Court for the Eastern District of Texas, accusing seven wireless communications companies—D-Link Systems, Inc., Netgear, Inc., Belkin International, Inc., Dell, Inc., Toshiba Corporation, Acer Inc., and Gateway Inc. (the "Texas Defendants")—of infringing nine patents that Wi-Fi One alleged were essential to the IEEE 802.11(n) wireless standard, including the '568 patent. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1213 (Fed. Cir. 2014).[4] Although Wi-Fi One's allegations were based in part on the Texas Defendants' use of Broadcom's chips

---

[4] The Texas litigation and subsequent appeal also involved U.S. Patent Nos. 6,772,215 ("the '215 patent") and 6,4424,625 ("the '625 patent"). In separate *inter partes* reviews, the Board found that the challenged claims of the '215 patent and '625 patent were unpatentable, and those determinations are the subject of the co-pending cases that have been designated as companions to the present appeal, *Wi-Fi One, LLC v. Broadcom Corp.*, No. 2015-1944, and *Wi-Fi One, LLC v. Broadcom Corp.*, No. 2015-1946.

- 10 -

in their products, Wi-Fi One chose not to sue Broadcom.  Broadcom never became a party to the litigation, ███████████████████████████████ ███████████████████████.  A1298(¶¶2-5).

During the district court litigation, Wi-Fi One asserted that the term "service type identifier" should be construed to mean "an identifier which identifies transmission characteristics of payload information."  A1201.  The district court, however, explained that in light of the claim language, specification, and prosecution history, the term should be construed to mean "an identifier that identifies the type of information conveyed in the payload.  Examples of types of information include, but are not limited to, video, voice, data, and multimedia."  A1202.

The district court held an eight-day jury trial.  A1998.  The Texas Defendants were allowed 15 hours to present their case, including their defenses related to the five remaining patents-in-suit, damages, and certain equitable issues.  A334-35.  The Texas Defendants elected not to address the invalidity of the '568 patent at trial.  *Id*.  At the conclusion of the trial, the jury found that the Texas Defendants infringed the '568 patent.  *Ericsson*, 773 F.3d at 1213.

The Texas Defendants appealed, *inter alia*, the finding of infringement of the '568 patent and the district court's jury instructions related to damages.  *Ericsson*, 773 F.3d at 1214.  Wi-Fi One did not challenge the district court's

construction of "service type identifier," but instead asked this Court to find that the accused products met the "service type identifier" limitation as that term was construed by the district court and to affirm the judgment on that basis. *Id.*. The Court applied the district court's claim construction and affirmed the finding of infringement. The Court vacated the damages award because the district court had not properly instructed the jury on how to apportion the value of an allegedly standard-essential patent. *Id.* at 1235. In particular, the Court noted that, while Wi-Fi One based its infringement theory on the accused products' compliance with the 802.11(n) standard, "the '568 patent, at best, only covers the ability of the system to prioritize time-sensitive payloads by informing the system what type of data is in each transmission. This is only a small aspect of the 802.11(n) standard." *Id.* at 1232.

### E. The Proceedings Before The Board And The Prior Petition For Mandamus

Broadcom petitioned for *inter partes* review of claims 1-6 of the '568 patent. A338. Broadcom identified several grounds of invalidity, including that the claims are anticipated by Morley and rendered obvious by Adams. A338. In support of its petition, Broadcom submitted testimony from Dr. Harry Bims, an expert in the field of wireless communications and communication protocols. A338-39; A857-58(¶2). Dr. Bims explained how Morley discloses each element of the challenged claims. A864-71. He further explained that Adams renders the claims obvious

- 12 -

because it discloses each claim element except for a transmitter, and a person of ordinary skill would recognize that the Adams receiver operates in conjunction with a transmitter that transmits the data that Adams receives.  A884-92.

On December 16, 2013, Wi-Fi One filed a motion for additional discovery related to its contention that Broadcom allegedly had the opportunity to control the Texas Defendants in the Texas litigation and therefore that its petition for *inter partes* review was time-barred under 35 U.S.C. § 315(b).  A57.  Broadcom submitted its opposition on December 20, 2013, explaining that ███████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████.  A92; *see also* A1298(¶¶2-5).

On January 24, 2014 the Board denied Wi-Fi One's motion.  A98-99.  The Board carefully reviewed Wi-Fi One's discovery requests (A100-01); the statute, legislative history, regulations, and prior Board decisions regarding requests for additional discovery (A102-03); the statute, regulations, and court decisions regarding privity (A103-07); and the arguments and facts asserted by Wi-Fi One

(A106-11). "After weighing the factors surrounding the issue of privity as advanced by [Wi-Fi One]," the Board found that Wi-Fi One "has not met its burden of demonstrating that additional discovery is in the interests of justice." A113; *see also* 35 U.S.C. § 316(a)(5); 37 C.F.R. § 42.51(b)(2).

On February 7, 2014, Wi-Fi One requested a rehearing of its motion for additional discovery alleging that Broadcom's actions indicate a community of interest with the Texas Defendants that was served in the Texas litigation. A121. The Board denied Wi-Fi One's request on February 20, 2014. A124. The Board explained that Wi-Fi One "ignores the weight of authority cited by the Board that shows control over prior litigation is a crucial factor normally required to bind a party to that prior litigation using collateral estoppel," A126, and held that Wi-Fi One "failed to meet its burden of showing that additional discovery would have more than a mere possibility of showing that Broadcom should be bound by the Texas litigation." A128-29.

On March 10, 2014, the Board issued its Decision on Institution, finding that there was a reasonable likelihood that the challenged claims were anticipated by Morley and obvious over Adams. A150. In particular, the Board construed "service type identifier" to mean an identifier that identifies the type of information in the payload, A137-38, and it found a reasonable likelihood that both Morley and Adams disclosed this element. A141-42; A145. The Board elected not to institute

- 14 -

review based on several additional prior art references on the grounds that the additional references were redundant.  A148-49.

On April 1, 2014 Wi-Fi One petitioned this Court for a writ of mandamus seeking to overturn the Board's denial of its motion for additional discovery related to the privity issue.  *In re Telefonaktiebolaget LM Ericsson*, 564 F. App'x 585 (Fed. Cir. 2014).[5]  This Court held that Wi-Fi One had failed to meet the "heavy burden" required for mandamus relief, and denied the petition without prejudice to Wi-Fi One attempting to raise its arguments on appeal after final decision by the Board.  *Id.*

Wi-Fi One filed a Patent Owner Response on June 11, 2014, and submitted a supporting declaration by its expert Dr. Akl.  A207; A2002(Akl).  Wi-Fi One argued that the Board erred in construing "service type identifier" and that the term should be construed to require the identification of transmission characteristics.  A234.  Wi-Fi One further argued that Morley and Adams do not disclose a "service type identifier" under either construction because their respective signal headers convey the "format" or "label" of the payload data rather than the type of information in the payload or any transmission characteristics.  A240; A250-51. Wi-Fi One also asserted that Broadcom's petition was time-barred on the grounds

---

[5] Wi-Fi One filed essentially identical petitions for writs of mandamus in the *inter partes* reviews concerning the '215 patent and '625 patent, and the Court issued a consolidated opinion that addressed all three petitions.

that Broadcom was in privity with the Texas Defendants and "could have exercised control" over the Texas litigation.  A225.

In conjunction with its Patent Owner Response, Wi-Fi One filed a contingent Motion to Amend on June 11, 2014.  Wi-Fi One requested that, in the event the challenged claims were found unpatentable, the Board amend the claims to require that the "service type identifier" identify "transmission characteristics" in addition to the type of payload information.  Wi-Fi One's proposed amended claim read:

> A communication station comprising:
>
> a processor for arranging information for transmission including providing at least one first field in which payload information is disposed and providing at least one second field, separate from said first field, which includes a service type identifier which identifies transmission characteristics of a service and a type of payload information provided in said at least one first field; and a transmitter for transmitting information received from said processor including said at least one first field and said at least one second field.

A406-07(alteration in original).

On October 1, 2014, Broadcom filed its Reply.  A262.  Broadcom explained that the Board properly construed the term "service type identifier," and that Wi-Fi One's argument that a "service type identifier" identifies "transmission characteristics" was contrary to both the plain language of the claim and the express definition in the specification that a "service" is "referred to herein" as a "*type*[] of information communication."  A268-70; *see also* A45(2:25-30).

- 16 -

Broadcom further explained that Wi-Fi One's proposed construction was inconsistent with Wi-Fi One's representation during prosecution that it was "claiming the use of a field to identify the type of payload information and *not the type of channel coding*." A270; *see also* A1279.

With respect to invalidity, Broadcom explained that Wi-Fi One's attempts to distinguish Morley and Adams relied on meaningless semantic distinctions. A270-73; A276. Both references plainly disclose signals in which the header conveys the type of data in the payload (e.g., video data, audio data, etc.) just as in the '568 patent, and Wi-Fi One's argument that the Morley and Adams headers merely disclose the "format" or "label" of the payload data is an empty distinction. A270-73; A276. Broadcom further demonstrated that both references disclose a "service type identifier" even under Wi-Fi One's proposed construction, as the Morley and Adams receivers—just as in the '568 patent—use knowledge of the payload information type to infer transmission characteristics in order to process the data. A273-77. Broadcom also explained that, with respect to the time-bar issue, Wi-Fi One was simply rearguing its "privity" theory that the Board had already rejected multiple times. A265-67.

On October 1, 2014 Broadcom also filed an opposition to Wi-Fi One's motion to amend. A430. Broadcom explained that the proposed amended claims would still be invalid over various prior art references including Morley. A437.

- 17 -

As discussed above, Morley discloses all of the claim limitations as well as the proposed amended element that the "service type identifier" identify transmission characteristics, because the Morley receiver derives transmission characteristics from the type of information conveyed in the payload.  A437-39.

On November 3, 2014, Wi-Fi One filed a reply to Broadcom's opposition to Wi-Fi One's motion to amend.  A451.  Wi-Fi One argued that Morley did not anticipate its proposed amended claim for essentially the same reason that it argued Morley did not anticipate the original claim, i.e. because (according to Wi-Fi One) the Morley header merely conveys the "format" of the payload data rather than the "type" of information in the payload.  A455-56.  Wi-Fi One further argued that the Morley header does not "determine" the rate that the Morley receiver processes data, but conceded that the Morley receiver processes different types of data at different rates, and did not dispute that data rate is a "transmission characteristic." *See* A455.

After an oral hearing, the Board issued its Final Written Decision.  The Board held that Wi-Fi One's arguments and evidence regarding the "privity" issue were not substantively different from the arguments and evidence it had already found to be insufficient, and affirmed its decision to institute *inter partes* review based on the timeliness of the petition.  A7-8.

- 18 -

The Board maintained its construction of the phrase "service type identifier" as "an identifier that identifies the type of information conveyed in the payload, including but not limited to video, voice, data, and multimedia." A12. The Board explained that Wi-Fi One had identified no support in the '568 patent for construing the term to require the identification of transmission characteristics. A11-12.

The Board further held that claims 1-6 of the '568 patent were unpatentable as anticipated by Morley and rendered obvious by Adams. A13-28. The Board found that the Morley header informs the receiver whether the payload contains voice data, non-voice data, or a combination thereof, and therefore discloses a "service type identifier." A17-18. The Board held that Adams similarly discloses a "service type identifier" because the Adams header informs the receiver whether the payload contains video data, audio data, or associated data. A23-25. The Board specifically rejected Wi-Fi One's contentions that the prior art references merely disclosed the "format" or "label" of the payload data rather than the type of information, and explained that Wi-Fi One's arguments were based on meaningless distinctions. *See* A18; A24-25.

The Board also denied Wi-Fi One's motion to amend the claims to add the limitation that the "service type identifier" identify a transmission characteristic. A28. The Board found as a factual matter that the Morley header identifies a

- 19 -

transmission characteristic because knowing the type of information in the payload allows the receiver to determine the data rata (i.e., a transmission characteristic), and therefore held that Morley would anticipate the proposed amended claims. A31-33.

On April 6, 2015, Wi-Fi One filed a request for a rehearing of the Board's Final Written Decision, arguing that the Board had applied an erroneous legal standard in its privity determination that focused solely on whether Broadcom had the ability to control the Texas Defendants in the Texas litigation, and had not considered whether the Texas Defendants were controlling Broadcom's actions in the *inter partes* review. A291-92. The Board denied Wi-Fi One's request on June 1, 2015, explaining that Wi-Fi One had not identified any error in the Board's analysis. A303-08. In particular, the Board explained that its prior decision "focuses primarily on Broadcom's ("Petitioner") exercise of control, or opportunity to exercise control over the prior District Court lawsuit (Req. 8), that is because that was the focus of Patent Owner's Motion for Additional Discovery." A304. The Board further explained that its prior decision "did not characterize the legal standard, for all cases, as being limited strictly to a petitioner's control, or opportunity to control, a non-party in previous litigation. To the contrary, it addressed control, or opportunity to control, by a non-party generally as one of a number of factors." A304-05. The Board found that, just as Wi-Fi One had failed

- 20 -

to put forth any evidence that Broadcom had the ability to exercise control over the Texas Defendants in the Texas litigation, it had similarly failed to put forth any evidence that the Texas Defendants were controlling Broadcom's actions in the *inter partes* review. A303-09. Thus, the Board reaffirmed its determination that the Texas Defendants were not real parties in interest or in privity with Broadcom, and that the *inter partes* review was not time-barred under 35 U.S.C. § 315(b). A309.

This appeal followed.

## SUMMARY OF THE ARGUMENT

The Board correctly found that claims 1-6 of the '568 patent are unpatentable. The Board's conclusion that every claim limitation is disclosed by Morley is supported by substantial evidence. The Board also correctly determined that the challenged claims are rendered obvious by Adams.

On appeal, Wi-Fi One focuses exclusively on the claim term "service type identifier." According to Wi-Fi One, the term requires an identification of "transmission characteristics." Wi-Fi One's argument is both incorrect and irrelevant. As the Board correctly found, Wi-Fi One's construction is inconsistent with the claim language and the specification (which explain that a "service type identifier" identifies the *type* of information in a signal), and contrary to the applicants concessions during prosecution (in which they stated that the patent was

- 21 -

"claiming the use of a field to identify the *type* of payload information and *__not the type of channel coding__* [i.e., a transmission characteristic]." But in any event, Morley and Adams both teach receivers that determine transmission characteristics based on knowing the type of information in a payload, and thus disclose the "service type identifier" element even under Wi-Fi One's incorrect proposed construction.

Wi-Fi One's principal attempt to circumvent the Board's well-supported claim construction and factual determinations is to argue that the Board never should have instituted an *inter partes* review on the grounds that Broadcom's petition is time-barred under 35 U.S.C. § 315(b). The Board correctly determined that the defendants in Wi-Fi One's prior lawsuit were not real parties in interest or in privity with Broadcom and therefore Broadcom's petition for *inter partes* review was timely filed, and in any event 35 U.S.C. § 314(d) deprives this court of jurisdiction to review the Board's determination.

The Board's decision should be affirmed.

## ARGUMENT

### I.   STANDARD OF REVIEW

In an appeal from an *inter partes* review, this Court "review[s] the Board's claim construction according to the Supreme Court's decision in *Teva Pharmaceuticals U.S.A., Inc. v. Sandoz, Inc*. [The Court] review[s] underlying

factual determinations concerning extrinsic evidence for substantial evidence and the ultimate construction of the claim de novo." *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1279-80 (Fed. Cir. 2015) (citation omitted).  In an *inter partes* review, claim terms in an unexpired patent are interpreted according to their broadest reasonable construction.  *Id.* at 1278.

The Board's factual findings are to be upheld unless they are not supported by substantial evidence, while its legal conclusions are reviewed *de novo*. *Dynamic Drinkware, LLC v. National Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015).  Substantial evidence is more than a "mere scintilla of evidence" but something less than the "weight of the evidence." *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000).  "[W]here two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002).

Anticipation, including whether a limitation is disclosed in a prior art reference, is a question of fact.  *In re Gleave*, 560 F.3d 1331, 1334-35 (Fed. Cir. 2009).  Obviousness is a question of law with underlying issues of fact regarding, inter alia, the scope and content of the prior art and the differences between the

prior art and the claims at issue.  *Kennametal, Inc. v. Ingersoll Cutting Tool Co.*,

780 F.3d 1376, 1384 (Fed. Cir. 2015).

35 U.S.C. § 314(d) prohibits this Court from reviewing the Board's

determination to initiate an *inter partes* review based on its assessment of the time-

bar set forth in 35 U.S.C. § 315(b).  *Achates Reference Publ'g, Inc. v. Apple Inc.*,

803 F.3d 652, 658 (Fed. Cir. 2015).

## II.    THE BOARD CORRECTLY DETERMINED THAT THE '568 PATENT CLAIMS ARE UNPATENTABLE.

### A.    The Board Correctly Construed The Phrase "Service Type Identifier."

The '568 patent is directed to a communication station that transmits

information in a signal containing multiple fields.  A45-46(2:66-3:42).  Claim 1

requires that the signal include at least two fields:  (1) a payload field; and (2) a

"service type identifier" field.  A51(13:10-18).  There is no dispute that a "service

type identifier" must identify the type of information in the payload.  *See* Br. 43.

Wi-Fi One contends, however, that a "service type identifier" must also identify a

"transmission characteristic."  *Id.*[6]  As the Board correctly found, Wi-Fi One's

---

[6] Although the parties' dispute turns on whether a "service type identifier" must identify a transmission characteristic, for ease of comparison the following redline depicts Wi-Fi One's proposed modifications to the Board's construction of "service type identifier which identifies a type of payload information":

> [A]n identifier that identifies **a transmission characteristic of the service and** the type of information conveyed in the payload, ~~including but not limited to video, voice, data, and multimedia~~.

- 24 -

proposed "transmission characteristic" limitation is inconsistent with the claims,

specification, and prosecution history of the '568 patent.  A8-12.

> **1.      The claim language, specification, and prosecution history all support the Board's construction.**

The Board's construction of "service type identifier" reflects the plain

meaning of the term within the context of the claim language.  The claim explains

that the "service type identifier … ***identifies a type of payload information***

provided in [the payload field]."  A51(13:16-18).  Thus, the claim language itself

makes clear that the term "service type identifier" refers to a field that conveys the

***type*** of data contained in the signal.

The claim's plain meaning is confirmed by the specification, which

expressly defines "service" as a "type of information communication" such as

video or data:

> Other types of information transmission, e.g., video or hybrid voice, data and video to support internet connections, will likely be supported in the future.  These various types of information communication (also referred to herein as different "services") will likely have different optimal transmission characteristics.

A45(2:25-30).  The phrase "service type identifier" further appears twice in the

specification, and in both instances the term is used—as in the above definition—

---

*See* A12(Board's construction); Br. 43(Wi-Fi One's proposed construction).

to refer to the type of information conveyed in the payload.  In the Summary section, the patent explains that slots in the transmitted signal may be used to carry information in a "fast out-of-band" ("FOC") channel, and that this channel "may provide information relating to the same connection as the payload or data field in that time slot, e.g., *a service type identifier which informs the mobile or base station of the type of information (e.g., voice, video, or data) being conveyed in the payload.*"  A46(3:10-16).[7]  In the Detailed Description section, the patent similarly states that "the FOC fields may also serve the purpose of *service type identifier*.  In this embodiment, the FOC can provide *information regarding the type of service which the associated payload is currently supporting*, the channel coding, and/or interleaving associated therewith."  A49(9:28-32); *see also* A49(9:33-38) (explaining that in the foregoing embodiment, "a change in the FOC can inform the mobile station of the *type of information being transmitted*."). Additionally, the specification repeatedly uses the phrase "service type" to refer to the type of information conveyed in the payload.  *See, e.g.*, A49-50(10:20-36, 10:67-11:2) (describing the identification of the "service type" of the "block of information transmitted to the mobile station").

The Board's construction is further confirmed by the prosecution history. During prosecution, the Examiner rejected original claim 45 (the predecessor to

---

[7] Identical language appears in the Abstract.  *See* A36(Abstract).

issued claim 1) as anticipated by a prior art patent of one of the named inventors

("Raith").  A1256-57.  In response, the applicants did not amend the claims but

instead distinguished Raith on the grounds that it failed to disclose a "service type

identifier" that identifies the *type* of information in the payload.  A1263-64.  In

particular, the applicants argued:

> [Raith] discloses a method in which the reserved field or the
> CSFP/PCF field can be provided with an indication bit for indicating
> the type of channel coding being used in the data field.  However,
> ***Raith*** does not disclose a service type identifier which ***identifies a
> type of payload information***.

A1263(emphases in original).  The Examiner again rejected original claim 45 as

anticipated by Raith.  A1270-73.  The Examiner explained that, like Raith, the

FOC field, when functioning as a "service type identifier," could convey

information regarding transmission characteristics such as "channel coding":

> [T]he original specification [of the '568 patent], on page 15, last
> paragraph, clearly defined that "***the FOC fields may also serve the
> purpose of service type identifier***" and "***the FOC can provide
> information regarding***", among other things, "***the channel coding***."
> Thus, CSFP/PCF field in Raith reference clearly reads on the claimed
> limitation of "a service type identifier which identifies a type of
> payload information" in a manner set forth as claimed.

A1272(emphases in original).

    The applicants unequivocally disagreed with the Examiner's characterization

of the claimed invention, and explained that the "service type identifier" refers

only to a field that identifies the "type" of information in the payload.  A1277-81.

The applicants stated that "the FOC field can provide information regarding three different aspects of the transmission, namely, 1) type of service, 2) channel coding, and 3) interleaving." A1279. The applicants further clarified that "the plain language of this claim makes clear that Applicants are claiming the use of a field to identify the type of payload information and ***not the type of channel coding***." *Id*. In light of this clear statement regarding the scope of the claim, the term "service type identifier" cannot encompass identifiers of "transmission characteristics" such as channel coding.

The Board thus properly construed "service type identifier" to mean "an identifier that identifies the type of information conveyed in the payload, including but not limited to video, voice, data, and multimedia." A12.

### 2. Wi-Fi One's proposed construction is inconsistent with the intrinsic evidence and contrary to its position in the Texas litigation appeal.

Wi-Fi One argues that "service type identifier" should be construed to require not just an identification of the type of information in the payload, but also the identification of a "transmission characteristic." Br. 42-48. As set forth below, Wi-Fi One's arguments are without merit and its proposed construction should be rejected.

***First***, Wi-Fi One argues that the Board's construction employs a broader meaning of "service" than is used by the patent. Br. 44-46. According to Wi-Fi

One, "[t]he patent clearly distinguishes between 'information' and 'services.'" *Id.* at 45. Yet the portion of the specification cited to by Wi-Fi One makes no such distinction:

> These various ***types of information communication*** (also referred to herein as different ***'services'***) will likely have different optimal transmission characteristics.

A45(2:28-30). Rather, the specification both defines "services" as types of information communication, and distinguishes "services" from their "transmission characteristics" which Wi-Fi One attempts to read into the claims. *Id.* Thus, the specification's use of the term "services" supports the Board's construction—not Wi-Fi One's—and, in any event, cannot undermine the consistent use of the phrase "service type identifier" in the claims and specification to refer expressly and exclusively to the type of information conveyed in the payload. *See supra* pp. 25-26.

***Second***, Wi-Fi One asserts that "service type identifier" must include transmission characteristics because "[m]erely knowing the type of data conveyed in a payload … is insufficient for a receiver to properly process the received data." Br. 44. Wi-Fi One does not rely on any intrinsic evidence for this proposition, but instead relies on the conclusory testimony of its expert. *See id.*; A2016(¶24)(Akl). And in fact, Wi-Fi One and its expert took the ***exact opposite*** position in trying to distinguish the Morley reference, arguing that if a "service type identifier"

- 29 -

identified the type of payload information, there would be no need for a receiver to be informed of the transmission characteristics.  Br. 58; A2028-29(¶48)(Akl).  Regardless of Wi-Fi One's contradictory positions, the'568 patent itself explains that a receiver can infer transmission characteristics such as channel coding or interleaving simply by knowing the type of information being conveyed.  A49(9:32-38).

*Third*, Wi-Fi One asserts that the Board "misread" two passages in the specification that use the term "service type identifier."  Br. 46-48.  These passages, however, plainly demonstrate that the Board's construction is correct.  In the first instance, the specification states:

> FOC may provide information relating to the same connection as the payload or data field in that time slot, e.g., *a service type identifier which informs the mobile or base station of the type of information (e.g., voice, video or data) being conveyed in the payload*.  This information can be used by the receiving equipment to aid in processing the information conveyed in the payload, e.g., by knowing the channel coding rate.

A46(3:11-19).  This description fully supports the Board's construction, as it explains that the "service type identifier" discloses identifying the "type of information."  Contrary to Wi-Fi One's contention (*see* Br. 47), the reference to the receiver "knowing the channel coding rate" does not indicate that the "service type identifier" includes transmission characteristics; rather, consistent with the rest of the specification, this passage reflects that the receiver can infer certain

information (such as channel coding) when it knows the type of information conveyed. *See* A49(9:32-38).

The second passage similarly fails to support Wi-Fi One's proposed construction. It states:

> [T]he FOC fields may also serve the purpose of service type identifier. In this embodiment, the FOC can provide information regarding *the type of service which the associated payload is currently supporting, the channel coding <u>and/or</u> interleaving associated therewith*.

A49(9:28-32). The use of "and/or" once again makes clear that a "service type identifier" may provide information only regarding the type of service, and need not also provide information about transmission characteristics such as channel coding. A11.

*Fourth*, Wi-Fi One's construction is directly contrary to the position it took during prosecution. As discussed above, Wi-Fi One distinguished the claimed "service type identifier" over the prior art Raith reference by explaining that it was "claiming the use of a field to identify the type of payload information and *not the type of channel coding*." A1279. There is no dispute that channel coding is a "transmission characteristic." *See* Br. 48. Wi-Fi One's proposed construction of "service type identifier" is therefore inconsistent with its own prior representations to the Patent Office concerning the scope of the claims.

*Finally*, Wi-Fi One's proposed construction is *narrower* than the construction that it relied on in the Texas litigation and in the subsequent appeal to

- 31 -

this Court.  In the Texas litigation, Wi-Fi One originally proposed that "service type identifier" refer *only* to the identification of a transmission characteristic, and not to the identification of the type of payload information.  A1201.  The district court, however, rejected that position and construed the term to have the same meaning that the Board ascribed to it below.  A1201-02.  Wi-Fi One then asserted that the Texas Defendants' infringed under that construction, and successfully obtained a jury verdict of infringement.  A1998-2000.

On appeal, Wi-Fi One did not dispute the district court's construction, but instead asked this Court to affirm the judgment of infringement—which this Court did.  *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1215-17 (Fed. Cir. 2014).  Indeed, consistent with the position that Wi-Fi One took in that case, the Court explained that the "service type identifier" claim element merely requires that a device be "reasonably capable of 'arranging information for transmission … which identifies a *type of payload information*'"  *Id.* at 1217 (quoting A50(12:12-18)), and further explained that "the '568 patent, at best, only covers the ability of the system to prioritize time-sensitive payloads by informing the system what *type of data is in each transmission*."  *Id.* at 1232.  Thus, the Court's analysis of the '568 patent in the prior appeal is fully in line with the Board's construction below.[8]

_____

[8] In the Texas litigation, the term "service type identifier" was construed according to the *Phillips* framework, whereas in the present appeal, the Court must construe the term according to its broadest reasonable construction.  As this Court has

**B.**     **Substantial Evidence Supports The Board's Factual Finding That Morley Anticipates The '568 Patent Claims.**

The Board correctly found that Morley discloses every limitation of the '568 patent claims.  A12-19.  On appeal, Wi-Fi One contends only that Morley does not disclose the "service type identifier" element under either the Board's construction or its proposed alternative construction.  Br. 52-60.  As set forth below, Morley discloses a "service type identifier" under either construction, and the Board's anticipation finding is supported by substantial evidence.

**1.**     **Morley discloses a "service type identifier" under the Board's (correct) construction.**

Morley is directed to a communication system (e.g., a wired or cellular telephone network) that uses a multiplexer to transmit signals containing more than one type of information, for example a signal containing both voice and non-voice data.  A575(1:3-10)(Morley).  The Morley signal is organized into "frames," with each frame containing a header and one or more fields containing voice and/or non-voice data.  A577(5:39-59)(Morley); A571(Figs. 5a-5g)(Morley).

As demonstrated by the express disclosure of Morley and the testimony of Broadcom's expert, which the Board was entitled to accept, the header identifies

explained, a term's broadest reasonable construction may be the same as its construction under the *Phillips* framework, or it may be broader, but it cannot be narrower.  *See, e.g.*, *Facebook, Inc. v. Pragmatus AV, LLC*, 582 F. App'x 864, 869 (Fed. Cir. 2014) ("The broadest reasonable interpretation of a claim term may be the same as or broader than the construction of a term under the *Phillips* standard.").

- 33 -

the type of information being conveyed in the signal.  Morley explains that the signal payload may contain voice data, three different types of non-voice data (Data 0, Data 1, or Data 2), or some combination thereof.  A577(6:21-33, 6:64-7:25)(Morley); A865-66(¶¶28, 30).  The receiver uses the header to identify the type of payload information and to write the data to the appropriate voice and/or data buffers.  A579(10:19-22)(Morley) ("The header of a received frame is checked and status, voice and non[-]voice fields are written to voice and data buffers 70 and 72 as appropriate."); A865-66(¶28).  The Morley header thus discloses the '568 claim element of a "service type identifier" that identifies the type of information conveyed in the signal payload, and the Board's finding is supported by substantial evidence.

### 2.    Wi-Fi One's contrary arguments lack merit.

Wi-Fi One raises two arguments that Morley fails to disclose a "service type identifier" under the Board's (correct) construction.  Neither has merit.

*First*, Wi-Fi One contends that the Morley header does not disclose the "service type" of the signal because it uses a single "composite" frame to convey whether the payload contains voice data, non-voice data, or a particular combination of voice and non-voice data, rather than separate frames to identify each separate type of payload information.  Br. 55-56.  According to Wi-Fi One, a "service type identifier" must identify only one type of payload information, and a

- 34 -

signal conveying multiple types of information must provide a separate "service type identifier" for each type of information. Br. 55.

Wi-Fi One's argument has no basis is in the intrinsic evidence, nor in the Board's construction. *See* A17 (rejecting Wi-Fi One's argument that the term "service type identifier" requires separate frames for each type of information). Tellingly, Wi-Fi One relies solely on the testimony of its expert to support this extraneous claim limitation. *See* Br. 55-56. The '568 patent contains no requirement that a "service type identifier" identify only a single type of payload information, and in fact, claim 1 demonstrates just the opposite: it explains that the "service type identifier … identifies a type of payload information provided in said at least one first field." A51(13:16-18). The plain language of the claim demonstrates that the service type identifier may identifier the type of payload information in one or more fields, and further that any one field may contain one or more types of information. Indeed, it is axiomatic that "an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'" *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000); *see also Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008) ("That 'a' or 'an' can mean

'one or more' is best described as a rule, rather than merely as a presumption or even a convention.").[9]

Even if Wi-Fi One's claim interpretation were correct (though it is not), the result would be the same. Morley discloses embodiments in which the payload contains only a single type of information (e.g., only voice data or only non-voice data), and the header identifies the single type of information in the payload. A577-78(6:64-7:17)(Morley); A571(Figs. 5b-5d)(Morley). Thus, Morley discloses signals in which separate frames identify separate types of information, satisfying the "service type identifier" limitation even under Wi-Fi One's (incorrect) interpretation.

*Second*, Wi-Fi One contends that the Morley header does not satisfy the "service type identifier" limitation because it does not identify a type of payload information. Br. 56-60. According to Wi-Fi One, the Morley header identifies the "format" of the payload information rather than the "type" of payload information. *Id*. at 58. This is a distinction without a difference. Morley explains that the

---

[9] Wi-Fi One makes a related argument that the Morley header is not a "service type identifier" because it identifies only a single, hybrid "service." Br. 56. This is yet another meaningless distinction that fails for the same reasons set forth above— whether the Morley signals are considered different types of services (voice, data, or a combination thereof) or a single, hybrid service that conveys different types of information (voice, data, or a combination thereof), the Morley header plainly meets the claim element because it identifies "[the] type of payload information." *See* A51(13:16-18).

header is used "to identify the ***contents*** of the frame," A577(6:22-25)(Morley), and Wi-Fi One concedes that "[t]he [Morley] header value … specifies which portions of the payload data are to be sent to the voice buffers and which portions are sent to the data buffers." Br. 58. In other words, the Morley header informs the receiver which data should be sent to voice data processing, and which data should be sent to non-voice data processing—that process of identifying which data should be provided to voice data processing and which data should be provided to non-voice data processing is the same as identifying the type of data in the payload. The '568 patent itself explains that the "service type identifier" is used to "inform[] the mobile or base station of the type of information (e.g., voice, video, or data) being conveyed in the payload," which "can be used by the receiving equipment to aid in processing the information conveyed in the payload, e.g., by knowing the channel coding rate." A46(3:14-19); *see also* A49(9:32-38). Morley operates in precisely the same manner—the header identifies a type of information to allow the receiver to provide the identified data to the appropriate processing function.

Furthermore, although Wi-Fi One purports to be applying the Board's claim construction (*see* Br. 56), its attempt to distinguish the "format" of the information from the "type" of information is simply a recapitulation of its incorrect claim construction argument that "service type identifier" should be construed to require

- 37 -

that the signal identify "transmission characteristics." *See id.* at 57 (arguing that Morley fails to meet the "service type identifier" limitation because it does not disclose **both** "(1) the type of information conveyed in the payload, and (2) the service type for the information conveyed in the payload"); *Id.* at 58 (arguing that the Morley signal does not convey "transmission characteristics of the data" and that instead "transmission characteristics are hard-wired in the receiver"); *Id.* at 59 (arguing that "Morley teaches away from transmission characteristics"); *Id.* at 60 (purporting to distinguish Morley on the grounds that "the '569 Patent is focused on using the same frame type along with a service type identifier to identify the transmission characteristics and the type of information in the payload."). Because the Board's (correct) construction does not require that a "service type identifier" convey "transmission characteristics" of the payload information, Wi-Fi One's entire discussion of whether the Morley header conveys "transmission characteristics" is irrelevant.

### 3. Morley discloses a "service type identifier" even under Wi-Fi One's (incorrect) proposed construction.

Wi-Fi One argues that Morley does not anticipate the '568 patent claims under its proposed construction of "service type identifier." Br. 52-54. As the Board's construction is plainly correct, *see supra* pp. 25-28, the Court need not address this issue. Even under Wi-Fi One's incorrect claim construction, however, the '568 patent claims would still be invalid.

- 38 -

Wi-Fi One contends that Morley does not satisfy the "service type identifier" claim element under its proposed construction because it does not disclose a signal that identifies any "transmission characteristics." Br. 52-54. Wi-Fi One bases its entire argument on the theory that the Morley header does not include "error correction characteristics." *See id*. at 53-54. That is irrelevant, however, as Morley plainly discloses other "transmission characteristics."[10]

Morley teaches that the header is used to determine how to process the data in the payload. A1516(¶4). In Morley, the receiver operates at different rates for different types of information, for example in one embodiment voice payloads are processed at 6,800 bits per second and non-voice payloads are processed at 14,400 bits per second. A600(52:45-47)(Morley); A1516(¶4). Morley discloses that the header is used to direct the data (voice or non-voice) to the appropriate buffer and process the data at the proper rate. A579(10:23-25)(Morley) ("Frames of voice [data] are supplied to the voice decoder from the receive voice buffer 70. These can be read at a rate derived from the voice decoder clock."); *see also* A574(Fig. 8)(Morley). Thus, the Morley header's identification of the type of payload

---

[10] Wi-Fi One makes a related assertion that the Morley header provides "synchronization information." Br. 53. This is likewise irrelevant; as set forth above, the Morley header conveys "transmission characteristics" as required by Wi-Fi One's incorrect claim construction, and thus it is immaterial whether it conveys synchronization information in addition to transmission characteristics.

information also identifies the data rate, i.e., a transmission characteristic.

A1516(¶4).[11]

Notably, Wi-Fi One moved to amend the '568 claims to include the additional requirement of its proposed construction, i.e., that the "service type identifier" identify "transmission characteristics of a service" in addition to the type of payload information. A28. The Board found, however, that even with the proposed amendment the claims would be anticipated by Morley. A31-33. In particular, the Board found as a factual matter that the Morley header identifies the transmission rate of the signal—e.g., whether it contains a data payload transmitted at 14,400 bits per second or a voice payload transmitted at 6,800 bits per second— and therefore it discloses a "transmission characteristic" as required by the amended claim. A33. Thus, even if this Court were to adopt Wi-Fi One's proposed construction (though it should not), it would provide no basis for disturbing the Board's finding that the '568 claims are not patentable.

## C.    Substantial Evidence Supports The Board's Finding That Adams Renders The '568 Patent Claims Obvious.

The Board correctly found that Adams renders the '568 patent claims obvious. Wi-Fi One disputes the Board's determination solely on the ground that Adams allegedly does not disclose a "service type identifier." Br. 62-66. As set

---

[11] This is consistent with the disclosure of the '568 patent. As discussed above, the '568 patent explains that a receiver can determine transmission characteristics based on the type of information being conveyed. A49(9:32-38).

forth below, the Board's factual determination that Adams discloses this element is supported by substantial evidence—the express disclosure of Adams itself as well as the corroborating testimony of Broadcom's expert—and moreover, Adams discloses this element even under Wi-Fi One's incorrect proposed claim construction.

### 1. Adams discloses a "service type identifier" under the Board's (correct) construction.

Adams is directed to an interactive video system that receives packetized data streams, i.e., it receives streams of data that are divided into separate packets. A792(3:65-4:14)(Adams); A885(¶69). Each packet includes several fields, including a header and a payload. A794(7:22-37)(Adams); A885-86(¶70). Adams discloses that the payload consists of one of three types of information:  audio, video, or associated data. A794(7:11-14)(Adams); A787(Fig. 5)(Adams); A885-86(¶70). Adams further explains that the header identifies which of those three types of data is contained in the payload. A793-94(6:7-58, 7:9-37)(Adams); *see also* A785-88(Figs. 3, 5, and 6)(Adams); A885-87(¶¶70-72). Adams thus plainly discloses a "service type identifier" under the Board's construction.

Wi-Fi One asserts that Adams does not disclose a "service type identifier" under the Board's construction because it "labels" or "classifies" the payload packets rather than "identify" the type of data in the payload. Br. 64-66. Once again, it is clear that Wi-Fi One is drawing a purported distinction based on its own

claim construction (which requires a "transmission characteristic") rather than the

Board's claim construction (which does not):

> Merely classifying received data packets as a video, audio, or associated data packet says nothing about the *transmission characteristics* of the received data packet.

Br. 65.  Classifying payload packets as video, audio, or data is synonymous with

identifying the type of data in the payload.  A25-26.  That is all that is required

under the Board's correct construction, and it is irrelevant whether Adams also

discloses "transmission characteristics" of the data packet.  *Id*.

### 2.    Adams discloses a "service type identifier" even under Wi-Fi One's (incorrect) proposed construction.

Wi-Fi One contends that Adams does not disclose a "service type identifier"

under its proposed construction.  Br. 62-64.  As with Wi-Fi One's similar argument

with respect to Morley, the Court need not address this issue because the Board's

construction is correct.  *See supra* pp. 25-28.  But once again, even under Wi-Fi

One's incorrect claim construction, the '568 patent claims would still be invalid.

Adams discloses a "service type identifier" under Wi-Fi One's proposed

construction because, just as in the '568 patent, knowing the type of payload data

allows the receiver to derive transmission characteristics.  A1517(¶7); *see also*

A49(9:32-38).  In particular, the Adams receiver uses the information in the header

(i.e., the type of payload data) to determine the proper driver to decode the data,

e.g., a video driver for video packets, an audio driver for audio packets, or an

- 42 -

associated data driver for associated data packets.  A795(9:18-21, 9:24-32, 9:41-48)(Adams); *see also* A789(Fig. 7)(Adams).  As Dr. Bims testified, a person of ordinary skill in the art would understand that different types of data would be encoded using different standards, and that these encoding standards require different transmission characteristics.  A1517-18(¶8).[12]  Thus, by informing the receiver of the type of information conveyed in the payload, the Adams header also informs the receiver of the transmission characteristics associated with the signal encoding.  A1517(¶7).

Wi-Fi One also argues that Adams does not disclose a "service type identifier" because Adams uses an "invariant data structure" that does not "save bandwidth."  Br. 64.  Even under Wi-Fi One's proposed construction, however, there is no requirement that the "service type identifier" employ a different data structure for different types of payload information—it simply must identify a transmission characteristic.  *Id*. at 43.  As discussed above, the Adams receiver is able to derive transmission characteristics from the type of payload data, and

---

[12] The specification explains that in one embodiment video data is transferred using MPEG, which is a video-encoding standard (i.e. Motion Picture Experts Group).  A792(4:6-9)(Adams); A1517-18(¶8).  Wi-Fi One contends that, based on this one reference to MPEG encoding, Adams teaches that MPEG encoding must be used for every type of data in every embodiment.  Br. 63.  That is not supported by the specification, which makes clear that, in referring to MPEG encoding, it is describing one embodiment in which MPEG encoding is used specifically for video data.  A792(4:6-9)(Adams).

therefore Adams discloses a "service type identifier" even under Wi-Fi One's incorrect proposed construction.

### III.    THE BOARD'S DETERMINATION TO INITIATE AN *INTER PARTES* REVIEW IS BOTH CORRECT AND UNREVIEWABLE.

#### A.    35 U.S.C. § 314(d) Deprives This Court Of Jurisdiction To Review The Board's Determination To Initiate An *Inter Partes* Review.

Wi-Fi One asks this Court to overturn the Board's determination to institute the underlying *inter partes* review based on its assessment of the time bar set forth in 35 U.S.C. § 315(b).  Br. 17-41.[13]  Congress, however, has mandated that the Board's determination whether to institute an *inter partes* review is "final and nonappealable," 35 U.S.C. § 314(d), and thus this Court has no jurisdiction to review the Board's determination.  *Achates*, 803 F.3d at 659.

This Court squarely resolved the question of whether the Board's Section 315(b) determination is appealable in *Achates*—a case that is factually indistinguishable from the present dispute.  In that case, Apple petitioned for *inter partes* reviews of several patents held by Achates.  *Id.* at 653.  In response, Achates asserted that Apple's petitions were untimely because Apple was in privity with certain parties that were time-barred under Section 315(b), and Achates moved for

---

[13] Wi-Fi One's Section 315(b) arguments are identical to the Section 315(b) arguments set forth in its briefs in the companion appeals.  For avoidance of doubt, Broadcom has included identical rebuttals in its three responsive briefs.  The page number citations in each brief refer to Wi-Fi One's corresponding opening brief and the corresponding joint appendix in each appeal.

- 44 -

additional discovery related to a "blank indemnification agreement" that it argued could demonstrate a privity relationship between Apple and the time-barred parties. *Id.* at 654. The Board denied the motion on the grounds that there was "no basis to believe that even if the blank indemnification agreement had been signed, it would show [any time-barred parties] to be real parties in interest or in privity with Apple as those terms are used in § 315(b)." *Id.* The Board further explained that there was no evidence that any of the time-barred parties had the right to intervene or control Apple's defense to any charge of patent infringement, and concluded that none of the time-barred parties were real parties in interest or privies of Apple. *Id.* Thus, based on its assessment of the Section 315(b) time-bar, the Board instituted an *inter partes* review of the challenged patents. *Id.* During the merits phase, Achates reasserted its theory that Apple's petitions were time-barred under § 315(b), and in its final written decisions, the Board reaffirmed its earlier decisions that Apple had timely filed its petitions. *Id.* On appeal, Achates challenged the Board's final written decisions, arguing that the Board erred in denying its motions for additional discovery and in concluding that Apple's petitions were not time-barred under § 315(b). *Id.*

The Court held that the language of Section 314(d) is clear and controlling: "35 U.S.C. § 314(d) prohibits this court from reviewing the Board's determination to initiate IPR proceedings based on its assessment of the time-bar of § 315(b)."

- 45 -

*Id.* at 658.  Nor is there any exception for a claim that the Board's Section 315(b) determination rendered its actions *ultra vires*, as such "statutory interpretation disputes fall outside this [*ultra vires*] exception."  *Id.* at 658-59.

Wi-Fi One contends that *Achates* was wrongly decided and should not apply in this case.  Br. 17-28.  Wi-Fi One omits any discussion of stare decisis, but there can be no doubt that this Court may not disregard its own precedent.  *See, e.g.*, *Preminger v. Secretary of Veterans Affairs*, 517 F.3d 1299, 1309 (Fed. Cir. 2008) ("A prior precedential decision on a point of law by a panel of this court is binding precedent and cannot be overruled or avoided unless or until the court sits *en banc*."); *see also* Fed. Cir. R. 35(a)(1) ("[O]nly the court *en banc* may overrule a binding precedent.").  In the absence of *en banc* review or an intervening decision by the Supreme Court,[14] the Court may not overturn *In re Cuozzo*, *Achates*, and the numerous subsequent cases affirming that Section 314(d) prohibits this Court from reviewing the Boards' institution decisions.  *See, e.g.*, *SightSound Techs., LLC v. Apple Inc.*, No. 2015-1159, __ F.3d __, 2015 WL 8770164, at *3 (Fed. Cir. Dec. 15, 2015); *MCM Portfolio LLC v. Hewlett-Packard Co.*, No. 2015-1091, __ F.3d __, 2015 WL 7755665, at *3 (Fed. Cir. Dec. 2, 2015); *Click-to-Call Techs., LP v.*

---

[14] The Supreme Court recently granted a writ of certiorari to consider whether the Board's decision to institute an *inter partes* review is subject to judicial review in cases where the patent holder contends that the Board exceeded its statutory authority.  *Cuozzo Speed Techs., LLC v. Lee*, No. 15-446 (U.S. Jan. 15, 2016).

*Oracle Corp.*, 622 F. App'x 907, 908 (Fed. Cir. 2015).  As set forth below, however, even if the Court were to consider Wi-Fi One's arguments, they are all without merit.

*First*, Wi-Fi One contends that the Court erred in interpreting Section 314(d) to preclude judicial review of decisions whether to institute *inter partes* review. Br. 20-24.  According to Wi-Fi One, Section 314(d) should be construed to preclude only interlocutory appeals and not to preclude review of the institution decision following a final written decision.  Br. 21-22.  That is plainly incorrect. Section 314(d) is titled "No appeal" and states that "[t]he determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable."  35 U.S.C. § 314(d).  This language unambiguously precludes all review of the Board's decision whether to institute an *inter partes* review.  That plain meaning is further confirmed by reading Section 314(d) in the context of the related provisions of the America Invents Act directed to *inter partes* reviews, which separately limit appeals to final written decisions.  As this Court has explained:

> A declaration that the decision to institute is 'final' cannot reasonably be interpreted as postponing review until after issuance of a final decision on patentability.  Moreover, given that § 319 and § 141(c) already limit appeals to appeals from final decisions, § 314(d) would have been unnecessary to preclude non-final review of institution decisions.  Because § 314(d) is unnecessary to limit interlocutory appeals, it must be read to bar review of all institution decisions, even after the Board issues a final decision.

- 47 -

*Cuozzo*, 793 F.3d at 1273.[15]

**Second**, Wi-Fi One contends that, notwithstanding the clear language of Section 314(d), this Court has jurisdiction to review Section 315(b) determinations because Section 315(b) is a "congressional directive." Br. 24-27. According to Wi-Fi One, the Board's determination that a petition was timely filed is equivalent to the Board's determination that a patent qualifies for "covered business method review," which this Court held to be reviewable on appeal. Br. 19-20; *see also Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1319-21 (Fed. Cir. 2015). Once again, Wi-Fi One raises an argument that this Court has considered and properly rejected. As the Court explained in *Achates*, whether a patent qualifies as a "covered business method" is the "defining characteristic" of the Board's "authority to invalidate" a patent in a covered business method review. *Achates*, 803 F.3d at 657-58 (quoting *Versata*, 793 F.3d at 1320-21). By contrast, Section

---

[15] For these same reasons, Wi-Fi One's reliance on cases interpreting the Civil Service Retirement Act is misplaced. *See* Br. 22-23; *cf. Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768 (1985); *Reilly v. Office of Pers. Mgmt.*, 571 F.3d 1372 (Fed. Cir. 2009). The Supreme Court in *Lindahl* properly focused its analysis on the specific statutory provision at issue (which the Court held "quite naturally can be read as precluding review only of OPM's factual determinations") as well as the "overall statutory structure" and legislative history (which the Court held "quite clearly" indicated that Congress intended there to be some judicial review of decisions made pursuant to the Civil Service Retirement Act). *Lindahl*, 470 U.S. at 779, 789; *see also Reilly*, 571 F.3d at 1377 (discussing *Lindahl*). Those narrowly circumscribed decisions are irrelevant to this Court's correct interpretation of Section 314(d) and Section 315(b) of the America Invents Act.

- 48 -

315(b) has no impact on the Board's ultimate authority to invalidate a patent claim, it merely bars particular petitioners from challenging the claim. *Id.* In other words, the Board *always* has the power to invalidate a claim challenged in a time-barred petition via a timely petition from another petitioner, even if that petition raised the exact same arguments as the time-barred petition. *Id.*

Wi-Fi One contends that the Court erred in *Achates* by distinguishing the "jurisdictional" issue in *Versata* from the "non-jurisdictional" nature of Section 315(b) determinations. Br. 24-27. In particular, Wi-Fi One argues that *City of Arlington v. FCC*, 133 S. Ct. 1863 (2013), prohibits this Court from making such distinctions. *Id.* But, while *City of Arlington* notes that it is inappropriate to characterize statutory provisions as "jurisdictional" or "non-jurisdictional" when determining if an agency's statutory interpretations are entitled to *Chevron* deference, 133 S. Ct. at 1868, the Supreme Court has also explained that a time-bar governing an agency's authority to act is either "non-jurisdictional" (and thus may be waived) or "jurisdictional" (and thus is non-waivable). *Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 824-25 (2013). The Court held, moreover, that there is a presumption that agency time-bars are non-jurisdictional and that such a presumption may be overcome only by a "clear statement" to the contrary. *Id.* Section 315 lacks any such "clear statement," and thus it is plainly not a limit on

the Board's ultimate authority to invalidate particular patent claims—which the Board could indisputably do upon consideration of a non-time-barred petition.

*Finally*, Wi-Fi One contends that *Achates* does not govern the present case because the Board did not make an explicit determination regarding Section 315(b) in its Decision on Institution.  Br. 21 n. 5.  That is not correct, as *Achates* makes clear.  Any challenge under Section 315(b) is a claim that the Board erred in deciding to institute an *inter partes* review.  Indeed, as Wi-Fi One concedes elsewhere, the Board's Section 315(b) determination "goes to the heart of whether the IPR petition was time-barred when it was filed."  Br. 33.  And as this Court explained, regardless of when (or how many times) the Board considers whether a petition is time-barred, that determination is always "part of the decision to institute" and thus may not be challenged on appeal.  *Achates*, 803 F.3d at 658.

**B.    Although Not Reviewable, The Board Correctly Determined That Broadcom's Petition Was Not Time-Barred.**

**1.    The Board properly applied Section 315(b) to determine that Broadcom's petition was timely filed.**

The Board considered and rejected Wi-Fi One's contention that Broadcom's petition was time-barred because the Texas Defendants were real parties in interest or in privity with Broadcom.  A7-8; A303-05; *see also* A103-08; A125-29.  Wi-Fi One contends the Board "applied the wrong legal standard in making its § 315(b) determination."  Br. 28-32.  In particular, Wi-Fi One argues that the Board erred by

focusing exclusively on whether Broadcom controlled the Texas Defendants in the Texas litigation, and by not considering whether the Texas Defendants controlled Broadcom in the *inter partes* review. *Id.* Wi-Fi One's theory is starkly contradicted by the record.

Wi-Fi One alleges error based solely on the fact that the Board explained—correctly—that Wi-Fi One had failed to show that Broadcom controlled, or could have controlled, the Texas litigation. Br. 31. In the passages cited by Wi-Fi One, *id.*, the Board was responding directly to Wi-Fi One's (baseless) contention that Broadcom had the ability to exercise control over the Texas Defendants. *See* A68 ("Here, evidence will prove that ***Broadcom has had the opportunity to control*** and maintains a substantive legal relationship with the D-Link Defendants sufficient to bind Broadcom to the District Court's judgment."); *see also* A104-12.[16] After the Board issued its Final Written Decision, Wi-Fi One reversed its position and asserted a new theory that the Texas Defendants were controlling Broadcom. A290-92. Far from Wi-Fi One's claim that "[t]he Board made it abundantly clear that it viewed the District Court Defendants' right to control this IPR to be of no

---

[16] Notably, while Wi-Fi One contended that Broadcom engaged in litigation and *inter partes* reviews "on behalf of its customers pursuant to its indemnity obligations," it made clear that it was ***not*** contending that any indemnity agreement subjected Broadcom to the control of its customers, but rather that Broadcom was independently seeking "to protect [its own] interests," A57, and following its own "corporate policy on litigation on behalf of its customers." A62.

importance whatsoever," Br. 31, the Board explained that whether a non-party (such as the Texas Defendants) could exercise control over a party (such as Broadcom) is a relevant factor in its privity analysis. A304-05. The Board simply rejected Wi-Fi One's new theory of privity because it was as baseless as Wi-Fi One's original theory. *Id.*

> ### 2. The Texas Defendants are not real parties in interest or in privity with Broadcom.

Even setting aside Wi-Fi One's shifting sands approach below, the record amply demonstrates that the Texas Defendants are not real parties in interest or in privity with Broadcom. Wi-Fi One's additional arguments—that the Board abused its discretion in denying Wi-Fi One's request for additional discovery (Br. 32-35), that the Board did not adequately set forth the reasons for its decision (Br. 35-36), and that the Board's determination is not supported by substantial evidence (Br. 37-38)—are contradicted by the record and plainly fail to support Wi-Fi One's claim that the Board erred in instituting an *inter partes* review.

Wi-Fi One's principal argument is that the Board abused its discretion by not compelling the production of certain indemnity agreements between Broadcom and two Texas Defendants. *See* Br. 32-35.[17] The Board, however, properly found that Wi-Fi One's motion was based on nothing more than "conjecture" and "mere

---

[17] Although Wi-Fi One bases its arguments on these indemnity agreements, it sought to propound far broader discovery requests upon Broadcom below. *See* A1569-73.

speculation," and therefore failed to meet its burden of proving that additional

discovery would be "in the interests of justice."  A109-13; *see also* 35 U.S.C.

§ 316(a)(5) ("[D]iscovery shall be limited to … what is otherwise necessary in the

interest of justice."); 37 C.F.R. § 42.51(b)(2)(i) ("The moving party must show that

such additional discovery is in the interests of justice.").  The existence of

indemnity provisions is not, as Wi-Fi One suggests, sufficient to establish that the

Texas Defendants are real parties in interest or in privity with Broadcom.  *See*

*Apple Inc. v. Achates Reference Publ'g, Inc.,* IPR2013-00080, 2013 WL 6514049,

at *3 (PTAB Apr. 3, 2013) ("*Apple*") ("Indemnification is not one of the

'substantive legal relationships' cited in *Taylor* [*v. Sturgell*, 553 U.S. 880 (2008)]

and is significantly different from those relationships, which involve successive

interests in property.").[18]  Rather, the Board properly evaluates whether a non-

party is a real party in interest or privy under "conventional principles of estoppel

and preclusion," *id.* at *2, and conducts that evaluation "in a manner consistent

with the flexible and equitable considerations established under federal caselaw."

77 Fed. Reg. 48,756, 48,759 (Aug. 14, 2012); *see also id.* at 48,759-48,760

(relevant factors for determining whether a non-party is a real party in interest or

---

[18] In *Taylor v. Sturgell*, the Supreme Court held that "nonparty preclusion may be justified based on a variety of pre-existing 'substantive legal relationship[s]' between the person to be bound and a party to the judgment…. Qualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor." 553 U.S. 880, 894 (2008).

**CONFIDENTIAL MATERIAL FILED UNDER SEAL REDACTED**

privy include whether the non-party funded or directed the proceedings or "exercised or could have exercised control over a party's participation in a proceeding"). The Board correctly applied these standards in rejecting Wi-Fi One's motion for additional discovery. A102-09.

In addition to its assertions regarding Broadcom's purported indemnity obligations, Wi-Fi One based its request for additional discovery on three exhibits. These documents further demonstrate that Wi-Fi One's privity allegations are groundless and that Wi-Fi One failed to meet its burden of proving that additional discovery would be "in the interests of justice." A113. First, Wi-Fi One relied on a general risk statement in Broadcom's SEC filings discussing the risks for Broadcom of patent litigation brought against its customers. A57; A1775. Second, Wi-Fi One relied on an email chain between Acer and Wi-Fi One that refers to "technical discussion with the chipset suppliers" and "comments from Acer's vendors, including Intel, Broadcom and Atheros." A58; A1809-11. Providing technical information to a customer does not remotely establish "control" or "privity." ████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████. A58; A1819-55. █████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████.  As the Board correctly found, none of this shows privity

between Broadcom and any other entity.  A107-13.[19]

The Board also considered a sworn declaration from Broadcom that directly

refutes Wi-Fi One's claims that Broadcom exerted control over the Texas

litigation.[20]  That declaration establishes that: ████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

---

[19] Wi-Fi One contends that the Board's reasoning was "circular" because it denied Wi-Fi One's motion based on its failure to present adequate supporting evidence. Br. 33.  But as noted above, the Board properly recognized that Wi-Fi One's "conjecture" and "mere speculation" were insufficient to meet its burden of demonstrating that additional discovery would be "in the interest of justice." A102-03; A109-10.

[20] *See* A113 (denying motion "[a]fter weighing … the redacted information and arguments presented by [Wi-Fi One] and Broadcom that remain under seal").  The Board did not detail Broadcom's confidential evidence in its decision because it determined that Wi-Fi One's motion should be denied with or without that evidence.  *See* A102 n.3 ("After review of the un-redacted materials, the Board determines that they do not alter the outcome.").

████████████████████████████████████████████████. *See*

A1298-99.[21]

The Board carefully considered all of Wi-Fi One's allegations and rightly

concluded that they do not justify additional discovery, *see* A107-13,[22] and

properly held that Broadcom's petition for *inter partes* review was not time-barred

under Section 315(b).  A7-8; A303-07.[23]  Because the record amply supports the

conclusion that the Texas Defendants are not real parties in interest or in privity

---

[21] Wi-Fi One asserts that Broadcom's declaration was "carefully worded to focus narrowly and exclusively on Broadcom's ties to the District Court Litigation, and to avoid any mention of the District Court Defendants' role in directing or controlling this IPR."  Br. 37.  As discussed above, Broadcom submitted this declaration in response to Wi-Fi One's claim that Broadcom could control the Texas Defendants; it was not until Wi-Fi One's petition for rehearing of the Final Written Decision that Wi-Fi One reversed course and asserted that the Texas Defendants controlled Broadcom.  Broadcom had no opportunity to respond to Wi-Fi One's new, equally meritless accusations, as the Board properly found that Wi-Fi One's second theory was as groundless as its first.  A303-05.

[22] Although Wi-Fi One contends that the Board's denial of its requested discovery violated Section 556 of the Administrative Procedure Act, Br. 34, Wi-Fi One concedes that the Board has discretion to manage discovery, Br. 33, and further concedes that Section 556 "does not command that agencies admit all relevant evidence."  Br. 35 (quoting *Director, Office of Workers' Compensation Programs v. Mangifest*, 826 F.2d 1319, 1331 (3d Cir. 1987)).  As set forth above, the Board properly exercised its discretion to deny Wi-Fi One's discovery requests.

[23] Wi-Fi One contends that the Board "never expressly decided the § 315(b) issue" because its Final Written Decision incorporated by reference its earlier analysis set forth in its denial of Wi-Fi One's request for additional discovery.  Br. 36.  The Board's multiple decisions on this point could not be more clear—in sections titled "35 U.S.C. § 315(b)" the Board held that there was no evidence that the Texas Defendants were real parties in interest or in privity with Broadcom and therefore Broadcom's petition was not time-barred.  *See* A7-8; A303-07.

with Broadcom, Wi-Fi One has shown no error with the Board's determination that Broadcom's petition for *inter partes* review was timely filed.

### C.     Wi-Fi One Has Identified No Basis For This Court To Invoke The Extraordinary Remedy Of Mandamus.

Wi-Fi One requests, in the alternative, that this Court treat its appeal as a petition for mandamus relief.  Br. 27-28, 38-41.  "[T]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations."  *Allied Chem. Corp. v. Daiflon, Inc*., 449 U.S. 33, 34 (1980); *see also In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1387 (Fed. Cir. 1996); *In re Calmar, Inc*., 854 F.2d 461, 464 (Fed. Cir. 1988).  A party seeking a writ bears the burden of proving that its right to issuance of the writ is "clear and indisputable."  *Allied Chem.*, 449 U.S. at 35.

To show a "clear and indisputable" right, the petitioner must prove that the lower court's analysis amounted to a "clear abuse of discretion."  *In re Altera Corp.*, 494 F. App'x 52, 53 (Fed. Cir. 2012); *see also In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (mandamus requires a "patently erroneous result").  Indeed, even if one demonstrates a "clear and indisputable" right to the writ, "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances."  *Cheney v. United States Dist. Court*, 542 U.S. 367, 381 (2004).

As set forth above, the Board correctly determined that Broadcom's petition was not time-barred under Section 315(b).  Wi-Fi One has no "clear and

indisputable" right to relief, and therefore its alternative request for a writ of

mandamus should be denied.

**CONCLUSION**

The Board's decision should be affirmed.

Respectfully submitted,

/s/ Dominic E. Massa
DOMINIC E. MASSA
KATIE M. SAXTON
KEVIN A. GOLDMAN
ZACHARY P. PICCOLOMINI
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

*Attorneys for Appellee Broadcom Corporation*

January 25, 2016

# CERTIFICATE OF SERVICE

I hereby certify that, on this 25th day of January, 2016 I filed the foregoing

Brief for Appellee Broadcom Corporation with the Clerk of the United States

Court of Appeals for the Federal Circuit via the CM/ECF system, which will send

notice of such filing to all registered CM/ECF users.

/s/ Dominic E. Massa
DOMINIC E. MASSA
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(b).

1.    Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(a)(7)(B), the brief contains 13,110 words.

2.    The brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.  As permitted by Fed. R. App. P. 32(a)(7)(C), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Dominic E. Massa
DOMINIC E. MASSA
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

January 25, 2016