**No. 2015-1945**

IN THE

# UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

WI-FI ONE, LLC,

*Appellant,*

v.

BROADCOM CORPORATION,

*Appellee.*

*Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in Case No. IPR2013-00602*

## REPLY BRIEF OF APPELLANT
## WI-FI ONE, LLC

G. Donald Puckett
NELSON BUMGARDNER PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
(817) 377-9111

Douglas A. Cawley
MCKOOL SMITH, P.C.
300 Crescent Court
Suite 1500
Dallas, TX 75201
(214) 978-4972

Peter J. Ayers
LEE & HAYES PLLC
11501 Alterra Parkway
Suite 450
Austin, TX 78758
(512) 605-0252

*Attorneys for Appellant Wi-Fi One, LLC*

## CERTIFICATE OF INTEREST

Counsel for the Appellant, Wi-Fi One, LLC, certifies the following:

1.      The full name of every party or amicus represented by me is:

**Wi-Fi One, LLC**

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

**Wi-Fi One, LLC**

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

**Wi-Fi One, LLC is 100% owned by Optis Wi-Fi Holdings, LLC.**

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

**LEE & HAYES, PLLC**
Peter Ayers
J. Christopher Lynch
John Shumaker

**NELSON BUMGARDNER, P.C.**
Donald Puckett

**SKIERMONT DERBY LLP (formerly SKIERMONT PUCKETT LLP)**
Steven Joseph Udick
Sarah E. Spires

i

**MCKOOL SMITH, P.C.**
Douglas A. Cawley

Dated:  February 29, 2016                Respectfully submitted,


                                         /s/ Donald Puckett
                                         G. Donald Puckett
                                         NELSON BUMGARDNER PC
                                         3131 West 7th Street, Suite 300
                                         Fort Worth, Texas 76107
                                         (817) 377-9111 (telephone)
                                         (817) 377-3485  (facsimile)
                                         puckett@nelbum.com

                                         Douglas A. Cawley
                                         MCKOOL SMITH, P.C.
                                         300 Crescent Court, Suite 1500
                                         Dallas, TX 75201
                                         (214) 978-4972 (telephone)
                                         (214) 978-4044 (facsimile)
                                         dcawley@mckoolsmith.com

                                         Peter J. Ayers
                                         LEE & HAYES PLLC
                                         11501 Alterra Parkway, Suite 450
                                         Austin, TX 78758
                                         (512) 605-0252 (telephone)
                                         (512) 605-0252 (facsimile)
                                         peter@leehayes.com

                                         *Attorneys for Appellant,*
                                         *Wi-Fi One, LLC*

**TABLE OF CONTENTS**

CERTIFICATE OF INTEREST ...................................................................................i

TABLE OF CONTENTS............................................................................... iii

TABLE OF AUTHORITIES ......................................................................v

I.      SUMMARY OF REPLY........................................................................1

II.     ARGUMENT IN REPLY .....................................................................2

        A.      The Court is not precluded from reviewing the PTAB's
                decision on the §315(b) time bar issue.................................................2

                1.      This case is factually distinguishable from *Achates*. ..................3

                2.      *Achates* is not binding if this Panel determines that
                        *Achates* did not consider the relevant binding Supreme
                        Court authorities...............................................................................9

                3.      The *Achates* decision was wrongly decided. Section
                        314(d) does not bar all appellate review of the PTAB's
                        determinations regarding the §315(b) time bar. .......................13

                4.      At a minimum, this Panel should request en banc
                        reconsideration of *Achates*, or wait for the Supreme
                        Court's decision in *Cuozzo*. .....................................................15

        B.      The PTAB's decision on the §315(b) time bar issue should be
                vacated or reversed..............................................................................16

                1.      The Board committed a critical legal error by applying
                        the wrong substantive legal standards. ....................................17

                2.      The Board committed serious procedural errors. ....................19

                3.      Patent Owner is entitled to appellate relief on the §315(b)
                        time bar issue. ................................................................20

C.     The Board erred in determining that the '568 patent claims are unpatentable ..................................................................................21

     1.     The Board erred in construing "service type identifier" by failing to include transmission characteristics to identify different types of services...........................................21

     2.     Morley does not anticipate the challenged claims. ...................25

     3.     Adams does not render obvious the challenged claims. ...........28

CONCLUSION ...............................................................................................30

CERTIFICATE OF SERVICE .......................................................................32

CERTIFICATE OF COMPLIANCE ..............................................................34

## TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. Inc. v. Gardner*,
387 U.S. 136 (1967)....................................................................12

*Achates Ref. Publ., Inc. v. Apple, Inc.*,
803 F.3d 652 (Fed. Cir. 2015) ................................... 2, 3, 7, 12, 13

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
809 F.3d 1282 (Fed. Cir. 2015) ...................................................10

*Atar S.r.l. v. United States*,
730 F.3d 1320 (Fed. Cir. 2013) ......................................................8

*Atlantic Thermoplastics, Inc. v. Faytex Corp.*,
970 F.2d 834 (Fed. Cir. 1992) ........................................... 9, 10, 15

*Bowen v. Michigan Academy of Family Physicians*,
476 U.S. 667 (1986)....................................................................12

*City of Arlington v. FCC*,
133 S.Ct. 1863 (2013)..................................................................12

*Cuozzo Speed Techs. v. Lee*,
2016 U.S. LEXIS 632 (U.S. Jan. 15, 2016)..................... 13, 15, 16

*Cutsforth, Inc. v. MotivePower, Inc.*,
2016 U.S. App. LEXIS 1083 (Fed. Cir. 2016) ...............................8

*Exxon Chemical Patents, Inc. v. Lubrizol Corp.*,
64 F.3d 1553 (Fed. Cir. 1995) .....................................................21

*Grober v. Mako Prods., Inc.*,
686 F.3d 1335 (Fed. Cir. 2012) ...................................................24

*In re Cuozzo Speed Techs., LLC*,
793 F.3d 1268 (Fed. Cir. 2015) ............................................ 13, 23

*In re Sang-Su Lee*,
    277 F.3d 1338 (Fed. Cir. 2002) .................................................................7

*Intel Corp. v. U.S. Int'l Trade Comm'n*,
    946 F.2d 821 (Fed. Cir. 1991) ...............................................................3

*Mach Mining, LLC v. EEOC*,
    135 S.Ct. 1645 (2015) ..........................................................................12

*Mercier v. U.S.*,
    786 F.3d 971 (Fed. Cir. 2015) .............................................................11

*Reilly v. Office of Personnel Mgmt.*,
    571 F.3d 1372 (Fed. Cir. 2009) ..................................................... 16, 17

*Smith v. GTE Corp.*,
    236 F.3d 1292 (11th Cir. 2001) ............................................................11

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    2016 U.S. App. LEXIS 2250 (Fed. Cir. 2016) .....................................14

*Tohono O'odham Nation v. U.S.*,
    559 F.3d 1284 (Fed. Cir. 2009) ............................................................11

*Tucker v. Phyfer*,
    819 F.2d 1030 (11th Cir. 1987) ................................................. 9, 10, 11

**Statutes**

5 U.S.C. §556(d) ...................................................................................... 5, 19

5 U.S.C. §556(e) ...................................................................................... 5, 19

35 U.S.C. §314(d) ....................................................................... 1, 2, 9,12-16

35 U.S.C. §315(b) ...........................................................................................1

## I.    SUMMARY OF REPLY

Broadcom's responsive brief provides no coherent justification for the PTAB below having refused to even consider the known indemnity agreement in connection with its determination that the District Court Defendants are not a real party in interest or privy of Broadcom, and that the 35 U.S.C. §315(b) time bar does not apply. The Board's §315(b) determination should be reversed because the Board applied the wrong legal standard on this issue, and also because the Board's actions amounted to a serious procedural error. The Federal Circuit is not precluded from reviewing the §315(b) determination by 35 U.S.C. §314(d). The recent *Achates* decision is factually distinguishable. Wi-Fi One also encourages the Panel to revisit the holding of *Achates* because that case did not consider the relevant binding Supreme Court authorities and was wrongly decided.

In addition, the Board's decision below should be overturned because several of the Board's findings are not supported by substantial evidence. First, the Board failed to properly construe the term "service type identifier" by failing to give meaning to the term "service type," which requires the identification of "transmission characteristics," in addition to identifying a type of payload information. Second, neither Morley nor Adams discloses a "service type identifier." Morley fails to disclose a "service type identifier" because it describes

1

only one service and the format of the information (the transmission of a multiplex frame having a specific format of voice and data information) and further that it does not identify transmission characteristics because such characteristic are hard-wired in the receiver rather than in the service type identifier. Similarly, Adams does not disclose a "service type identifier" because it does not identify transmission characteristics of any service. Accordingly, the Board's findings that Morley and Adams invalidate the challenged claims should be reversed.

## II.    ARGUMENT IN REPLY

### A.    The Court is not precluded from reviewing the PTAB's decision on the §315(b) time bar issue.

Contrary to Broadcom's contention, the panel decision in *Achates Ref. Publ., Inc. v. Apple, Inc.*, 803 F.3d 652 (Fed. Cir. 2015) does not preclude this Panel from reviewing the Board's §315(b) determination below. This is true for at least two reasons. First, the present case is factually distinguishable from *Achates* in material ways, as discussed below. Second, the *Achates* decision itself may be revisited by this Panel because the *Achates* panel did not consider the most relevant binding Supreme Court precedents. For the reasons discussed below, this Court retains authority to review the Board's §315(b) determination, notwithstanding *Achates* and notwithstanding 35 U.S.C. §314(d).

### 1.    This case is factually distinguishable from *Achates*.

#### a.    Unlike *Achates*, the PTAB panel below did not review the most relevant evidence on the §315(b) issue.

An indemnity agreement between an IPR petitioner and a third party that covers infringement claims arising from the challenged patent is always highly relevant to the "real party-in-interest or privy" issue under §315(b). In all likelihood, an indemnity agreement is the most relevant evidence. *See* Op. Br. at 33-34.[1] Broadcom does not dispute this point, nor could it. The Federal Circuit has held that the existence of an indemnity agreement alone, in many cases, is sufficient for a finding of a privity relationship. *See, e.g., Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 839 (Fed. Cir. 1991).

Unlike the present case, in *Achates* the PTAB panel had full knowledge of the alleged terms of the alleged indemnity agreement because it reviewed an unsigned draft of the agreement. *See Achates*, 803 F.3d at 654. In that case, the PTAB denied further discovery and found that the §315(b) time bar did not apply because ***even if*** the draft indemnity agreement had been signed, the terms of the draft agreement were not sufficient (in the PTAB's view) to create a privity

---

[1] Citations to "Op. Br." refer to Wi-Fi One's Opening Brief, and citations to "Resp. Br." refer to Broadcom's Responsive Brief.

relationship between the relevant parties. *See id*. Thus, in *Achates*, the disputed issue was whether an alleged indemnity agreement had been signed at all. The Board, for purposes of its decision, essentially assumed that the agreement had been signed and found that even if it were signed it still did not establish a privity relationship on the facts of that case. *Id.* Unlike the present case, there was no dispute or uncertainty in *Achates* over the terms of the alleged indemnity agreement. *See id.*

In the present case, by contrast, there is no dispute that there is in fact a binding indemnity agreement between Broadcom and one or more of the District Court Defendants that covers infringement claims arising from the patent challenged below. But here (unlike *Achates*) the Board below ***has no idea what the terms of the indemnity agreement are***. Despite the diligent best efforts of Patent Owner, the Board would not allow the indemnity agreement to be made part of the record. In this case, the PTAB cannot claim to have made an informed decision on the §315(b) issue because the PTAB wholly failed to consider the most relevant piece of evidence. *See* Op. Br. at 32-35.

It is quite perplexing to consider the very substantial time and effort that the parties have expended in this case battling over whether the Board would simply take the indemnity agreement into evidence and consider it. *See* Op. Br. at 8-9

4

(discussing Patent Owner's procedural attempts to force Broadcom to produce the agreement for purposes of this IPR). The agreement is a short document that was produced to Patent Owner's counsel in litigation – albeit under a protective order that precludes Patent Owner from using it in the IPR proceeding below. *See* A1985-88. It simply defies logic and reason that the Board below has been so steadfastly adamant in its refusal to consider it, or to make it a part of the record that the Federal Circuit can review on appeal.

This important factual distinction from *Achates* – the fact that the Board below failed to consider the critical indemnity agreement and had no understanding of its terms – is significant to the outcome of this appeal. Unlike the patent owner in *Achates*, Patent Owner in this appeal can show that the Board committed serious procedural violations. *See* Op. Br. at 27-28 (discussing the Federal Circuit's authority to review for serious procedural violations); Op. Br. at 32-35 (discussing the ways in which the PTAB's actions in this case amount to serious procedural violations).

In its Response Brief, Broadcom ***never addresses*** Patent Owner's contention that the PTAB's refusal to consider the highly-relevant indemnity agreement amounts to a serious procedural error. *See* Op. Br. at 33-35 (arguing that the PTAB violated §§556(d) and (e) of the Administrative Procedures Act and citing cases).

Broadcom's brief simply attempts to justify the PTAB's *discovery* ruling, i.e., its refusal to compel Broadcom to produce the indemnity agreement. *See* Resp. Br. at 52-57 (discussing alleged justifications for the PTAB's discovery ruling). But this misunderstands Patent Owner's argument, and avoids the salient legal issues. As stated in Patent Owner's Opening Brief:

> Patent Owner's point of error, however, is ***more than just a complaint that the Board misapplied the standards for deciding a discovery motion***. The Board's error here is more fundamental. The requested discovery goes to the heart of whether the IPR petition was time barred when it was filed, and thus goes to whether the Board itself has complied with the statutory directive under §315(b). To arrive at the factually correct ruling, the Board by necessity must look at the known indemnity agreements.

Op. Br. at 33 (emphasis added). By limiting its argument to the merits of the discovery motion, Broadcom fails to address Patent Owner's real point of error – that the PTAB committed serious procedural error by failing to consider known, highly-relevant evidence, and also by denying Patent Owner the opportunity to present contrary evidence. *See* Op. Br. at 33-35.

### b. Unlike *Achates*, the PTAB panel below did not render a reasoned written decision on the §315(b) issue.

This case also is factually distinct from *Achates* because the Board below failed to provide a reasoned explanation for its decision on the §315(b) issue. *See* Op. Br. at 21 fn. 5 and 35-38. In *Achates*, the PTAB first decided a discovery

motion related §315(b), then later made a substantive determination in its institution decision, and then again revisited its substantive §315(b) issue in its final written decision. *See Achates*, 803 F.3d at 654. In both the institution decision and the final written decision, the PTAB in *Achates* set forth a reasoned written decision applying the law to the facts and explaining the substantive basis for its determination. *See id.*

In this case, by contrast, the PTAB never made a substantive determination of the §315(b) issue at all. It only decided Patent Owner's discovery motion – applying procedural standards relating to discovery – before Patent Owner had even fully briefed the substantive §315(b) issue. The PTAB's subsequent institution decision and final written decision merely incorporated by reference the Board's reasoning on the ***discovery motion***, without providing a reasoned basis for its ultimate ***substantive*** determination that the §315(b) time bar does not apply in this case. *See* Op. Br. at 35-38.

The Federal Circuit recently reaffirmed the important principal that the PTAB has an obligation to articulate its reasoning for making its decisions, stating:

> As we held in *In re Sang-Su Lee*, 277 F.3d 1338 (Fed. Cir. 2002), the Board must articulate its reasoning for making its decision. The Board must develop and explain the basis for its findings. This enables the reviewing court to conduct meaningful review of the proceedings. Broad, conclusory statements are not enough to satisfy the Board's obligation to provide reasoned explanation for its decision.

7

*Cutsforth, Inc. v. MotivePower, Inc.*, 2016 U.S. App. LEXIS 1083 at *7 (Fed. Cir. 2016). *See also Atar S.r.l. v. United States*, 730 F.3d 1320, 1325 (Fed. Cir. 2013).

Here, the Board committed serious procedural errors by failing to provide a reasoned decision articulating the basis for its own jurisdiction and its compliance with a statutory directive; and also by failing to explain a clearly articulated statement of reasons for departing from its actions in other similar cases. *See* Op. Br. at 35-36 (citing cases). Broadcom essentially concedes these points, because Broadcom cannot (and does not attempt to) point to any portion of the Board's institution decision or final written decision that sets forth a reasoned basis for finding that the Board complied with §315(b). Instead, Broadcom merely argues: (1) that this court is precluded from reviewing the sufficiency or the Boards' reasoning in its §315(b) decision (Resp. Br. at 50) and (2) that the Board's conclusory statements in the institution decision and final written decision, incorporating the discovery order by reference, are sufficient (Resp. Br. at 56 fn. 23). Broadcom never addresses Patent Owner's real argument – that the Board abrogated its responsibility to provide a reasoned statement of its decision on the §315(b) issue when it merely incorporated, by reference, its finding that Patent Owner had not shown that it was entitled to additional discovery on the issue.

8

These factual distinctions from *Achates* are significant to the outcome of this appeal because they amount to serious procedural errors that are reviewable by this Court, notwithstanding the language of §314(d). *See* Op. Br. at 35-39.

**2.  *Achates* is not binding if this Panel determines that *Achates* did not consider the relevant binding Supreme Court authorities.**

Even if this Panel finds that this case is not factually distinct from *Achates*, the Panel is not required to blindly follow the *Achates* decision, because the *Achates* panel itself did not consider the relevant Supreme Court authorities. If *Achates* had considered the relevant Supreme Court cases, and adopted a certain interpretation of those cases, then its holding would be binding precedent on this Panel under the "prior panel precedent rule." But where the prior panel did not consider the relevant Supreme Court precedents, a subsequent panel is allowed to revisit the issues presented in light of the binding Supreme Court authority. *See Atlantic Thermoplastics, Inc. v. Faytex Corp.*, 970 F.2d 834, 839 fn.2 (Fed. Cir. 1992). *See also Tucker v. Phyfer*, 819 F.2d 1030, 1035 fn. 7 (11th Cir. 1987).

The Federal Circuit, of course, has no authority to modify or ignore binding precedent from the United States Supreme Court. "Supreme Court decisions remain binding precedent until [the Court] sees fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality." *See*

9

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 809 F.3d 1282 at fn. 3 (Fed. Cir. 2015).

In such circumstances, the Federal Circuit has expressly recognized an exception

to the prior panel precedent rule. *See Atlantic Thermoplastics*, 970 F.2d at 839 fn. 2

("A decision that fails to consider Supreme Court precedent does not control if the

court determines that the prior panel would have reached a different conclusion if it

had considered controlling precedent.").

In *Atlantic Thermoplastics*, the Federal Circuit cited the Eleventh Circuit

decision *Tucker v. Phyfer*, 819 F.2d at 1035 fn. 7, which further explained this

exception to the prior panel precedent rule:

> The [prior] panel decided the case ***without any reference to the Supreme Court's previous holdings*** in *Lyons* and *Geraghty*. Our prior panel rule, which makes decisions of prior panels of this court binding on subsequent panels of the court . . . , if applied here, would require us to follow [the prior panel's] rationale. We decline to do so, however, for we are convinced that had *Lyons* and *Geraghty* been called to the attention of the [prior] panel, the panel would have come to the conclusion we reach today. In affirming the district court, we do not view ourselves as violating the prior panel rule; rather, we are simply ***discharging our duty to follow clearly controlling Supreme Court precedent***. We hasten to add that had the panel expressly considered *Lyons* and *Geraghty*, we would be bound by its interpretation and application of those decisions.

10

*Id.* (emphasis added).[2] *See also Tohono O'odham Nation v. U.S.*, 559 F.3d 1284, 1287-88 (Fed. Cir. 2009) (citing *Tucker* for the proposition that a prior panel decision is binding only where it considered the applicable Supreme Court authorities); *Mercier v. U.S.*, 786 F.3d 971, 981 (Fed. Cir. 2015) ("***In the absence of authority from the Supreme Court***, this Court could only overrule [a prior panel precedent] were we to sit en banc") (emphasis added).

As discussed in Patent Owner's Opening Brief, the *Achates* panel did not properly frame the legal issue, and as a result it failed to consider the most relevant Supreme Court authorities. *See* Op. Br. at 17-18, 26-27. Under the relevant Supreme Court cases, in determining whether a statute precludes judicial review the court must start with the strong presumption that judicial review is available, and must then determine whether the specific statute at issue sufficiently evidences a clear congressional intent to overcome the presumption of reviewability. *See* Op.

---

[2] A subsequent panel of the Eleventh Circuit criticized the *Tucker* exception to the prior panel precedent rule and attempted to collect contrary authority. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1302-03 (11th Cir. 2001). In doing so, however, the *Smith* panel cited no other case in which the prior panel had completely failed to consider the relevant Supreme Court authority. *See id.* The *Smith* panel rejected the notion of a broader "overlooked reason" exception. *Id.* at 1303. In any event, as stated in the *Tucker* case itself, the *Tucker* exception is properly limited to circumstances in which the prior panel altogether failed to consider relevant Supreme Court authorities.

11

Br. at 18-20 (discussing the relevant authority). The *Achates* panel, however, never once mentioned the strong presumption of reviewability, and it did not consider whether §314(d) or its corresponding legislative history are sufficient to overcome this presumption. Thus, the *Achates* decision never considered *Abbott Labs. Inc. v. Gardner*, 387 U.S. 136 (1967) (Administrative Procedure Act evidences a strong congressional presumption in favor of judicial review of administrative action), *Mach Mining, LLC v. EEOC*, 135 S.Ct. 1645 (2015) (reaffirming the presumption), or similar cases. Nor did the *Achates* decision consider *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986), or the cases collected in footnote 3 of *Bowen*, in which the Supreme Court has refused to read statutory limitations on reviewability as a complete bar to appellate review.

In *Achates*, the Court's decision to treat §314(d) as a complete bar to judicial review of the §315(b) time bar was premised upon a finding that the time bar was non-jurisdictional. *See Achates*, 803 F.3d at 657-58. Yet, the *Achates* opinion does not cite or consider the Supreme Court holding in *City of Arlington v. FCC*, 133 S.Ct. 1863 (2013), in which the Court rejected the very notion of any distinction between jurisdictional and non-jurisdictional statutory limits on agency power, and instructed lower courts to abandon any such distinction. *See id.* at 1868-71.

As can be seen, the *Achates* court did not consider the relevant and binding Supreme Court authorities on point. For this reason, this Panel may reconsider the holding in *Achates* that §314(d) precludes review of the Board's determinations under §315(b). This Panel can, and should, consider the applicable and binding Supreme Court authority and make its own determination as to whether *Achates* was correctly decided.

> **3.   The *Achates* decision was wrongly decided. Section 314(d) does not bar all appellate review of the PTAB's determinations regarding the §315(b) time bar.**

The Federal Circuit first held that §314(d) precludes review of the PTAB's decision to institute an *inter partes* review following a final written decision on the merits in *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1273 (Fed. Cir. 2015). The *Achates* decision, which applied §314(d) to preclude review of the PTAB's §315(b) decisions, is a direct extension of *Cuozzo. See Achates*, 803 F.3d at 657.

The United States Supreme Court, however, recently granted a writ of certiorari in the *Cuozzo* case and will consider the application and scope of §314(d). *See Cuozzo Speed Techs. v. Lee*, 2016 U.S. LEXIS 632 (U.S. Jan. 15, 2016). In the pending *Cuozzo* appeal, the Supreme Court will consider the following issue: "whether the court of appeals erred in holding that, even if the Board exceeds its statutory authority in instituting an IPR proceeding, the Board's

decision whether to institute an IPR proceeding is judicially unreviewable." *See Cuozzo*, 2015 U.S. Briefs 446 (2015) (Petition for Writ of Certiorari). The Supreme Court's decision will, in all likelihood, bare directly on this appeal.

In its Opening Brief, Patent Owner provided a lengthy argument as to why *Achates* was wrongly decided. *See* Op. Br. at 17-28. Patent Owner's argument is premised upon the strong presumption of reviewability, an analysis of case law assessing similar limitations on reviewability in other statutory schemes, and an assessment of the text of §314(d) and its legislative history in the overall context of the America Invents Act. *See id.* These arguments go largely unchallenged in Broadcom's Response Brief. Instead, Broadcom's argument rests almost entirely on the notion that this Panel is bound by *Achates* and should defer to its resolution of the reviewability issue. *See* Resp. Br. at 44-50. Patent Owner therefore stands on its Opening Brief as its statement of the reasons *Achates* was wrongly decided.

Since Patent Owner filed its Opening Brief, the Federal Circuit has issued one additional decision holding (upon agreement of the Patent Owner) that §314(d) operates to bar review of the PTAB's §315(b) determination. *See Synopsys, Inc. v. Mentor Graphics Corp.*, 2016 U.S. App. LEXIS 2250 at *31 (Fed. Cir. 2016). Patent Owner encourages the Panel to consider Part III of Judge Newman's dissent, which cites the same binding Supreme Court authority relied upon by

14

Patent Owner to support the notion that *Achates* was wrongly decided. *See id.* at

*71-76.

> **4.    At a minimum, this Panel should request en banc reconsideration of *Achates*, or wait for the Supreme Court's decision in *Cuozzo*.**

For the reasons stated above, this Panel is not bound to follow *Achates*, and

it can decide the reviewability issue differently if the Panel concludes that Supreme

Court precedent dictates a different result. *See Atlantic Thermoplastics*, 970 F.2d at

839 fn. 2.

In the alternative, if this Panel concludes that *Achates* was wrongly decided,

it has the authority itself to ask the other judges of the Federal Circuit for en banc

review of *Achates*. The relevant Federal Circuit rule states:

> **Arguing to a Panel to Overrule a Precedent.** Although only the court en banc may overrule a binding precedent, a party may argue, in its brief and oral argument, to overrule a binding precedent without petitioning for hearing en banc. The panel will decide whether to ask the regular active judges to consider hearing the case en banc.

Fed. Cir. R 35(a)(1).

Finally, this Panel should consider whether it should stay this appeal or

delay a ruling on the reviewability issue under §314(d) until the Supreme Court

renders its decision in the pending *Cuozzo* case.  For purposes of judicial economy,

and also to avoid a ruling that could potentially be inconsistent with the

15

forthcoming *Cuozzo* opinion from the Supreme Court, the Panel should consider this option. In the event the Court does delay a ruling on this appeal until after the *Cuozzo* opinion is rendered, Patent Owner respectfully requests an opportunity to file a short brief on the effect of that forthcoming opinion on this appeal after *Cuozzo* is decided by the Supreme Court.

**B.    The PTAB's decision on the §315(b) time bar issue should be vacated or reversed.**

As argued in Patent Owner's Opening Brief, the Federal Circuit should, at a minimum, retain jurisdiction to review the Board's decision below to ensure that it did not commit a critical legal error or a substantial departure from important procedural rights. *See* Op. Br. at 23-24 and 27-28 (discussing *Reilly v. Office of Personnel Mgmt.*, 571 F.3d 1372 (Fed. Cir. 2009)). Broadcom's response is limited to a single footnote in which it simply points out that *Reilly* was decided under the Civil Service Retirement Act. *See* Resp. Br. at 48 fn. 15. But Broadcom ignores Patent Owner's argument that the statutory language of the Civil Service Retirement Act, on its face, is a much more restrictive limit on appellate review – yet the Federal Circuit nonetheless found that it retained jurisdiction to review administrative decisions for critical legal errors or serious procedural violations. *See* Op. Br. at 23-24. Given the less restrictive statutory language of §314(d), the

Federal Circuit should retain *at least* as much authority to review administrative action as was found in *Reilly. See id.*

### 1. The Board committed a critical legal error by applying the wrong substantive legal standards.

As shown in Patent Owner's Opening Brief, it is very clear that the Board below applied a narrow and rigid legal standard focusing exclusively on whether Broadcom had the right to control the District Court Litigation, and viewed it as irrelevant whether the District Court Defendants have the ability to control Broadcom's activities in the IPR below. As just one example, the Board stated in its decision denying discovery to Patent Owner:

> To show privity requires a showing that Broadcom would be bound by the outcome of the Texas Litigation. To be bound, in normal situations, Broadcom *must have had control over the Texas Litigation.*

*See* A104; *see also* Op. Br. at 31-32 (collecting quotations from the Board below showing that the Board applied the incorrect legal standard).

In its Response Brief, Broadcom attempts to shift the blame to Patent Owner and asserts that the Board focused narrowly on Broadcom's control of the Texas Litigation because Patent Owner made this the focus of its argument in its request for additional discovery on the issue. *See* Resp. Br. at 51-52 (accusing Patent Owner of a "shifting sands" approach to the privity issue). But Broadcom makes

17

its argument based on a few cherry-picked quotes from Patent Owner's motion for discovery. The entirety of the motion papers makes clear that Patent Owner simply sought to obtain the relevant facts (such as a copy of the highly relevant indemnity agreement) and urged the Board to apply the correct broad and flexible legal standard that is required by §315(b). *See* A56-59 (describing a "level of coordination" between Broadcom and its customers"); A60-61 (urging the Board to apply a broad and flexible standard to consider the totality of the circumstances); A62 (stating that the existence of an indemnity agreement, alone, may be sufficient for a finding of privity); A63 (arguing that the Board's review of the indemnity agreement will inherently be useful evidence).

Indeed, in Patent Owner's request for reconsideration of the discovery motion (filed less than two weeks after the Board's denial of the discovery request, and well before Patent Owner filed its Patent Owner Response), Patent Owner specifically argued that the Board had erred by applying a narrow legal standard that required Broadcom to have control over the District Court Litigation for a finding of privity. *See* A119-121; *see also* A166-172 (Patent Owner Response). It is simply incorrect for Broadcom to contend that Patent Owner "reversed its position" after the Board rendered its final written decision. *See* Resp. Br. at 51. Patent Owner has consistently urged the Board to apply the correct, broad and

18

flexible legal standard to determine whether one or more of the District Court Defendants is a real party in interest or privy of Broadcom for purposes of this IPR. Nothing in Patent Owners' papers justifies the Board applying the wrong legal test and insisting that Broadcom must have controlled the District Court Litigation as a prerequisite to a finding of privity. The Board's application of an erroneous legal standard amounts to a critical legal error. *See* Op. Br. at 28-32.

### 2.     The Board committed serious procedural errors.

The Board's conduct also was a substantial departure from important procedural rights. *See* Op. Br. at 32-38. Specifically, the Board refused to consider the known indemnity agreement – perhaps the most relevant evidence on the §315(b) issue – and thus failed to honor its obligation to consider all relevant evidence on this issue. *See* Op. Br. at 33-34 (citing 5 U.S.C. §556(d)). The Board also denied Patent Owner an opportunity to present evidence contrary to the Board's findings. *See id.* at 34-35 (citing 5 U.S.C. §556(e)). The Board further failed to provide a reasoned explanation for its substantive decision on the §315(b) issue. *See id.* at 35-38 (collecting cases). Broadcom largely fails to rebut these points. Under the facts of this case, the Board's actions amount to serious procedural errors and are reversible.

### 3.    Patent Owner is entitled to appellate relief on the §315(b) time bar issue.

For the foregoing reasons, Patent Owner has demonstrated that it is entitled to appellate relief. Patent Owner urges this Court to find that it has authority to review the Board's determination of the §315(b) issue directly by appeal of the final written decision. In the alternative, Patent Owner has requested that this appeal be treated as a petition for writ of mandamus. *See* Op. Br. at 38-41. Broadcom provides scant argument in rebuttal to Patent Owner's request for mandamus relief in the alternative. *See* Resp. Br. at 57-58.

Patent Owner urges the Court to reverse the judgment of the Board below and render judgment in favor of Patent Owner, finding that the evidence on the present record is sufficient for a finding that one or more of the District Court Defendants is a real party in interest or privy of Broadcom for purposes of this appeal. *See* Op. Br. at 6-9, 37-38 (discussing the evidence). At a minimum, the Board's judgment below should be vacated and the case should be remanded with instructions for the Board to consider all the relevant evidence (including the indemnity agreement) and to apply the correct legal standard.

**C.    The Board erred in determining that the '568 patent claims are unpatentable**

       **1.    The Board erred in construing "service type identifier" by failing to include transmission characteristics to identify different types of services.**

On its face, the claim term "service type identifier" must identify a type of service. Both the Board and Broadcom ignored this critical language when construing this claim term, and instead focused on the remaining claim language, namely "an identifier which identifies a type of payload information." A51, Claim 1. In doing so, the Board erroneously construed this phrase as "an identifier that identifies a type of information conveyed in the payload, including but not limited to video, voice, data, and multimedia." A12. Because the Board gave no meaning to the phrase "service type" in the "service type identifier" claim term, the Board's construction must be vacated in favor of Wi-Fi One's. *Exxon Chemical Patents, Inc. v. Lubrizol Corp.,* 64 F.3d 1553, 1557 (Fed. Cir. 1995) (the court must give meaning to all the words in the claim).

Broadcom mischaracterizes the intrinsic evidence to support its erroneous position. Contrary to Broadcom's argument, the '568 patent specification does not limit the service type identifier to just the type of information conveyed in the payload. Broadcom admits that "'services' [are] types of information communication" but then inexplicably interchanges "information communication"

21

with "information." Rep. Br. at 29. Information is conveyed in the payload as data, but without the context of transmission characteristics, abstract data would not have optimal transmission characteristics, as taught in the '568 patent. A45 at 2:28–30. Merely knowing the information conveyed in the payload is not sufficient to optimally process the data. Without knowing the transmission characteristics of a particular type of data, a receiver could not vary the processing of received data for a given data type, and would thus identically process all data regardless of the application that created it. Morley's "hard-wired" receiver is an example of such a sub-optimal approach. Op. Br. at 58. In other words, the transmission characteristics are critical for analyzing the data received during a service or information communication.

Broadcom reiterates the Board's mistaken analysis of the '568 patent specification. The passage describing the FOC field confirms that the information conveyed in the payload must be combined with information aiding in the processing of that information (i.e., transmission characteristics) for processing of the received information. A46 at 3:11–19. Even Broadcom recognizes that the receiver must know transmission characteristics along with the information conveyed in the payload. Resp. Br. at 30–31 ("consistent with the rest of the specification, this passage reflects that the receiver can infer certain information

22

(such as channel coding) when it knows the type of information conveyed"). Thus, the intrinsic evidence supports Wi-Fi One's construction of a service type identifier, namely that such an identifier must identify payload information and transmission characteristics. *PPC Broadband, Inc. v. Corning Optical Commc'ns. RF, LLC*, No. 2015-1364 at 6 (Fed. Cir. Feb. 22, 2016) ("In IPR Proceedings, the Board gives claims their broadest reasonable interpretation consistent with the specification." (citing *In re Cuozzo Speed Techs., LLC*, 793 F.3d at 1279, *cert. granted,* 2016 U.S. LEXIS 632).

The second passage related to the FOC field further supports Wi-Fi One's position. Here the specification is clear: "[T]he FOC fields may also serve the purpose of service type identifier . . . [by providing] information regarding the type of service which the payload is currently supporting, the channel coding and/or interleaving associated therewith." A49 at 9:28–32. To conclude, as Broadcom does, that this passage teaches that transmission characteristics (such as channel coding or interleaving) are not included in the scope of a service type identifier is a circular argument because it presumes that a type of service is limited to only identification of information and excludes transmission characteristics such as channel coding or interleaving. Such a conclusion is contrary to the clear import of the specification, which states that a service type identifier is associated with (1)

23

information conveyed in the payload and (2) transmission characteristics (channel coding and/or interleaving associated therewith).

Broadcom next argues that Wi-Fi One's construction is inconsistent with the position it took during prosecution. This is incorrect. The file history passage cited by Broadcom simply recognized that a "type of channel coding" by itself does not teach or suggest "identif[ying] a type of payload information." A1279 at lines 14–20. Nothing about whether the "service type" identifies "transmission characteristics" of the service can be deduced from this statement. A2019 at ¶ 30. Because the patentee did not disclaim identifying the "transmission characteristics" during prosecution, the Board must construe each word of the claim to have its broadest reasonable construction in light of the specification. *Cf. Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1341 (Fed. Cir. 2012) ("the doctrine of prosecution disclaimer only applies to unambiguous disavowals").

Finally, Broadcom incorrectly asserts that Wi-Fi One's construction is "narrower than the construction that it relied on in the Texas litigation." Resp. Br. at 31 (emphasis removed). Not so. Consistent with the district court litigation, Wi-Fi One's construction recognizes that a "service type identifier" must identify both the type of payload information (as required by the recited claim language) and transmission characteristics (as required by construction of the term "service"). To

24

ignore either is error because such a construction is not consistent with the broadest reasonable interpretation of this term in light of the specification and must be rejected.

### 2.    Morley does not anticipate the challenged claims.

The Board's and Broadcom's erroneous conclusion as to Morley is based on a fundamental mischaracterization of Morley. Broadcom argues that the header type in Morley identifies the information being conveyed in the signal. But in Morley, the header identifies the format of the frame, and not the information in the frame. A2028–29 at ¶48. That is so because processing of the frame is indifferent to the type of information in the frame. *Id.* Thus, if the data in a Morley frame is replaced by a voice frame or another type of data, the receiver in Morley could not properly process the received data because it would process the data (which is now a voice frame) by the system processor, rather than by the voice codec. *Id.* The Morley receiver is ignorant of the transmission characteristics of the information in the payload, unlike the "service type identifier" claimed in the '568 patent.

Broadcom argues that "the plain language of the claim demonstrates that the service type identifier may identifier [sic] the type of payload information in one or more fields, and further that any one field may contain one or more types of

information." Resp. Br. at 35. But this argument misses the mark. Rather than identifying a type of information communication, a field that identifies multiple types of information (contained in one or more fields) merely identifies disparate types of information rather than a service. The inclusion of the indefinite article "a" also does not support Broadcom's position because the header in Morley identifies the format of a multiplex frame, rather than the claimed "service type identifier." A2029 at ¶49. Finally, that the Morley frame is capable of carrying varying combinations of information is insufficient to meet the "service type identifier" element. Instead, the separate frames in Morley identify one single type of information communication—the communication of a multiplex frame, not of separate services as is required by the recited claim element.

Broadcom again attempts to argue that the header in Morley identifies the contents of the frame and thus "informs the receiver which data should be sent to voice data processing, and which data should be sent to non-voice data processing." Resp. Br. at 37. But merely identifying the type of data does not "aid in processing the information conveyed in the payload, e.g., by knowing the channel coding rate" (*id.*) because the Morley receiver must be pre-programmed with the processing rate for the received data and voice frames. Because the processing rate is pre-programmed in the receiver and independent from the

26

information in the payload, the header in Morley identifies the format of the frame, and not the information conveyed in the frame. Moreover, the multiplexer and the voice coder, not the header, add error correction to the voice frames and data. A577 at 5:15–16; A578 at 8:22–33; A2026–27 ¶44. Changing the header does not change the data rate, and hence the transmission characteristics, and therefore Morley does not disclose a service type identifier.

Furthermore, under the correct construction of a "service type identifier," Morley also does not disclose this element because it does not identify any transmission characteristics of the information being conveyed. Rather than identifying how to process the received data, the header in Morley merely directs the voice and data sections of the received frame to respective buffers. The buffers, not the header, control the processing of the received information. The transmission characteristics are hard wired in the receiver such that changing the data in a specific Morley frame does not alter how that data in the frame is processed. If a data field is replaced by the data in a voice frame, the modified data would be processed as a data field, not a voice frame. Accordingly, the header identifies no transmission characteristics of the information in the payload, unlike the recited "service type identifier."

27

Next Broadcom argues that Morley discloses a "service type identifier" under Wi-Fi One's construction. Resp. Br. at 38–40. Not so. Because the codec and the mux in the Morley receiver are not aware of the transmission characteristics of the received data, those transmission characteristics must be hard-wired in the receiver. Op. Br. at 58; A2028–29. In other words, the receiver would not be notified of changes in the transmission characteristics of the received data (or voice frame), and accordingly, could not properly process the received data. Finally, that the Board made the same error in analyzing the teachings of Morley—namely ignoring that the transmission characteristics are hard-wired in the receiver—as did Broadcom is no basis to affirm. Because Morley does not disclose transmission characteristics, it does not disclose a service type identifier, as properly construed by Wi-Fi One.

Because Morley does not anticipate the challenged claims of the '568 patent, the Board's contrary decision is not supported by substantial evidence and must be reversed.

### 3.    Adams does not render obvious the challenged claims.

Broadcom similarly applies its erroneous analysis of Morley to Adams. In particular, Broadcom argues that the header field in Adams is a "service type identifier" because that field identifies the "types of data in the payload." Resp. Br.

28

at 41. In particular, Broadcom states that the header field in Adams identifies whether the payload contains audio, video, or associated data. *Id*. But just as it does in its analysis of Morley, Broadcom erroneously equates labeling or classification of data with identifying the type of data. Classifying data as video, audio, or data is not the same as identifying the type of data. For example, if a video data is inadvertently classified as audio data, the video data would be erroneously processed as audio data. The classification does not identify the type of data, rather it identifies how that data will be processed by the receiver. Because the header does not identify how the data will be processed, it does not meet the claimed service type identifier under the Board's improper construction.

Moreover, Adams does not disclose a "service type identifier" under the proper construction because the header in Adams does not identify transmission characteristics. *Id*. at 42–43. Although Adams discloses using header information to determine the driver to decode the data, contrary to Broadcom's assertion, informing the receiver of the type of information conveyed in the payload does not inform the receiver of the transmission characteristics associated with the signal encoding. Just as with Morley, the processing of the incoming packets is determined by the processing of the data queues, not by the content of the header field. Moreover, Adams discloses only one type of encoding (MPEG), and

29

therefore negates the need for a service type identifier. A2033 at ¶57. Thus, Adams does not disclose a service type identifier.

Broadcom also argues that Adams discloses a service type identifier because there is no requirement that a service type identifier employ a different data structure for different types of payload information. Resp. Br. at 43–44. But that is precisely what is required by a service type identifier. As the '568 patent makes clear, the service type identifier must account for different types of transmission characteristics for different service types. Because Adams does not do so, Adams does not disclose a "service type identifier," and thus does not render obvious the challenged claims.

Because Adams does not render obvious the challenged claims of the '568 patent, the Board's contrary decision is not supported by substantial evidence and must be reversed.

**CONCLUSION**

For the foregoing reasons, the Board's Final Written Decision should be either reversed or vacated.

30

Dated:  February 29, 2016                    Respectfully submitted,


                                             */s/ Donald Puckett*
                                             G. Donald Puckett
                                             NELSON BUMGARDNER PC
                                             3131 West 7th Street, Suite 300
                                             Fort Worth, Texas 76107
                                             (817) 377-9111 (telephone)
                                             (817) 377-3485 (facsimile)
                                             puckett@nelbum.com

                                             Douglas A. Cawley
                                             MCKOOL SMITH, P.C.
                                             300 Crescent Court, Suite 1500
                                             Dallas, TX 75201
                                             (214) 978-4972 (telephone)
                                             (214) 978-4044 (facsimile)
                                             dcawley@mckoolsmith.com

                                             Peter J. Ayers
                                             LEE & HAYES PLLC
                                             11501 Alterra Parkway, Suite 450
                                             Austin, TX 78758
                                             (512) 605-0252 (telephone)
                                             (512) 605-0269 (facsimile)
                                             peter@leehayes.com

                                             Attorneys for Appellant,
                                             Wi-Fi One, LLC

31

# United States Court of Appeals
## for the Federal Circuit

*WiFi One, LLC v. Broadcom Corporation*, No. 2015-1945

### CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by NELSON BUMGARDNER PC, attorneys for Appellant to print this document.  I am an employee of Counsel Press.

On **February 29, 2016** counsel has authorized me to electronically file the foregoing **Reply Brief for Appellant, WiFi-One, LLC**, with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

DOMINIC E. MASSA, ESQ.
KEVIN GOLDMAN, ESQ.
ZACHARY PICCOLOMINI, ESQ.
KATIE SAXTON, ESQ.
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
617-526-6000
dominic.massa@wilmerhale.com
kevin.goldman@wilmerhale.com
zachary.piccolomini@wilmerhale.com
kate.saxton@wilmerhale.com
*Attorneys for Appellee*

Paper copies will also be mailed to the above principal counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court within the time provided in the Court's rules.

February 29, 2016                          /s/ Robyn Cocho
                                            Counsel Press

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, I hereby certify that I am an attorney of record on behalf of Appellants Wi-Fi One, LLC and that I personally used the "word count" feature of Microsoft Word 2010 to count the words in the foregoing Brief of Appellant Wi-Fi One, LLC identified in the Rule 32(a)(7)(B)(iii) and determined that the foregoing brief contains 6,822 words and is therefore in compliance with Rule 32(a)(7)(B)(i).

In addition, this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman.

By:

*/s/ Donald Puckett*
G. Donald Puckett
NELSON BUMGARDNER PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
(817) 377-9111 (telephone)
(817) 377-3485  (facsimile)
puckett@nelbum.com