**Nos. 2015-1944, -1945, -1946**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

WI-FI ONE, LLC,

*Appellant*,

v.

BROADCOM CORPORATION,

*Appellee*,

MICHELLE K. LEE, Director, U.S. Patent and Trademark Office,

*Intervenor*.

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2013-00601, IPR2013-00602, IPR2013-00636

## SUPPLEMENTAL BRIEF FOR APPELLEE BROADCOM CORPORATION ON REHEARING EN BANC

DOMINIC E. MASSA
KATIE M. SAXTON
KEVIN A. GOLDMAN
ZACHARY P. PICCOLOMINI
JANINE M. LOPEZ
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

*Attorneys for Appellee Broadcom Corporation*

March 15, 2017

# CERTIFICATE OF INTEREST

Counsel for Appellee Broadcom Corporation certifies the following:

1. The full name of every party or *amicus* represented by us is:

Broadcom Corporation

2. The names of the real party in interest represented by us is:

Broadcom Corporation

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

> Broadcom Corporation is a wholly-owned subsidiary of BC Luxembourg S.à.r.l., which is a wholly-owned subsidiary of Avago Technologies Acquisition Holding Pte. Ltd., which is a wholly-owned subsidiary of Avago Technologies Cayman Finance Limited, which is a wholly-owned subsidiary of Avago Technologies Cayman Holdings Limited, which is a wholly-owned subsidiary of Broadcom Cayman L.P., of which Broadcom Limited is the sole general partner. Broadcom Limited is a publicly traded company, and we do not believe that any publicly held corporation owns more than 10% of Broadcom Limited's shares.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

> WILMER CUTLER PICKERING HALE AND DORR LLP: Dominic E. Massa, Katie M. Saxton, Kevin A. Goldman, Zachary P. Piccolomini, Michael A. Diener (former), Janine M. Lopez

Dated: March 15, 2017

/s/ Dominic E. Massa

Dominic E. Massa
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ........ i

TABLE OF AUTHORITIES ........ iv

STATEMENT OF RELATED CASES ........ 1

RESPONSE TO THE EN BANC QUESTION ........ 1

STATEMENT OF THE CASE ........ 3

SUMMARY OF ARGUMENT ........ 12

ARGUMENT ........ 14

I. *ACHATES* CORRECTLY HELD THAT THE BOARD'S DECISION REJECTING A TIME-BAR CHALLENGE IS GENERALLY NOT APPEALABLE ........ 14

A. The Text Of Section 314(d) Provides That Issues Related To The Institution Decision Are Not Appealable ........ 15

B. The Purpose And History Of The Statute Confirm That Institution Decisions Are Not Appealable ........ 24

C. The Presumption Favoring Judicial Review Does Not Control ........ 30

II. *ACHATES* CORRECTLY RECOGNIZED NARROW EXCEPTIONS FOR CLAIMS NOT IMPLICATED HERE ........ 34

A. This Court May Review Constitutional Challenges To The Institution Decision ........ 34

B. This Court May Review *Ultra Vires* Institution Decisions ........ 36

C. The Court May Review Claims That The Board Acted Beyond Its Authority To Invalidate ........ 41

D. These Narrow Exceptions Do Not Extend To All Challenges To The Board's Process ....................................................46

III. MANDAMUS SHOULD REMAIN AVAILABLE IN EXTRAORDINARY CASES ....................................................................................................48

CONCLUSION ....................................................................................................50

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Abbott Laboratories v. Gardner*,
387 U.S. 136 (1967) ... 31

*Achates Reference Publishing, Inc. v. Apple Inc.*,
803 F.3d 652 (Fed. Cir. 2015) ... *passim*

*Alfred E. Mann Foundation for Scientific Research v. Cochlear Corp.*,
841 F.3d 1334 (Fed. Cir. 2016) ... 28

*American Airlines, Inc. v. Herman*,
176 F.3d 283 (5th Cir. 1999) ... 39, 40

*Barlow v. Collins*,
397 U.S. 159 (1970) ... 32

*Block v. Community Nutrition Institute*,
467 U.S. 340 (1984) ... 29, 31, 32, 47

*Board of Governors of Federal Reserve System v. MCorp Financial, Inc.*,
502 U.S. 32 (1991) ... 38

*Boire v. Greyhound Corp.*,
376 U.S. 473 (1964) ... 37, 38

*Bowen v. Michigan Academy of Family Physicians*,
476 U.S. 667 (1986) ... 30-31, 34, 35

*Cheney v. United States District Court for the District of Columbia*,
542 U.S. 367 (2004) ... 49

*City of Arlington v. Federal Communications Commission*,
133 S. Ct. 1863 (2013) ... 44

*Clark v. Gabriel*,
393 U.S. 256 (1968) ... 38

*Cuozzo Speed Technologies, LLC v. Lee*,
136 S. Ct. 2131 (2016) ... *passim*

*Dart v. United States*,
848 F.2d 217 (D.C. Cir. 1988)....................................................................41

*Ericsson, Inc. v. D-Link Systems, Inc.*,
773 F.3d 1201 (Fed. Cir. 2014) ......................................................................4

*Garmin International, Inc. v. Cuozzo Speed Technologies, LLC*,
IPR2012-00001, Paper 20 (PTAB Feb. 14, 2013).............................................27

*Garmin International, Inc. v. Cuozzo Speed Technologies, LLC*,
IPR2012-00001, Paper 26 (PTAB Mar. 5, 2013).......................................5, 6, 40

*Hagans v. Lavine*,
415 U.S. 528 (1974)...........................................................................................35

*Hartman v. Nicholson*,
483 F.3d 1311 (Fed. Cir. 2007) .........................................................................30

*HP Inc. v. MPHJ Technology Investments, LLC*,
817 F.3d 1339 (Fed. Cir. 2016) .........................................................................48

*Husky Injection Molding Systems Ltd. v. Athena Automation Ltd.*,
838 F.3d 1236 (Fed. Cir. 2016) .....................................................19, 21, 25, 44

*Hyatt v. Kappos*,
625 F.3d 1320 (Fed. Cir. 2010) (en banc) .........................................................28

*In re Cuozzo Speed Technologies, LLC*,
793 F.3d 1268 (Fed. Cir. 2015) .....................................................................2, 49

*In re Telefonaktiebolaget LM Ericsson*,
564 F. App'x 585 (Fed. Cir. 2014) .....................................................................8

*Johnson v. Robison*,
415 U.S. 361 (1974)...........................................................................................35

*Key Medical Supply, Inc. v. Burwell*,
764 F.3d 955 (8th Cir. 2014) ......................................................................35, 39

*Leedom v. Kyne*,
358 U.S. 184 (1958).....................................................................................36, 37

*Lepre v. Department of Labor*,
275 F.3d 59 (D.C. Cir. 2001)............................................................ 38-39, 40

*Lindahl v. Office of Personnel Management*,
470 U.S. 768 (1985)..........................................................................32

*Lingamfelter v. Kappos*,
513 F. App'x 934 (Fed. Cir. 2012) ...................................................36

*Mach Mining LLC v. Equal Employment Opportunity Commission*,
135 S. Ct. 1645 (2015)......................................................................34

*Mathews v. Eldridge*,
424 U.S. 319 (1976)..........................................................................36

*National Labor Relations Board v. United Food & Commercial Workers Union, Local 23, AFL-CIO*,
484 U.S. 112 (1987)..........................................................................46

*Oestereich v. Selective Service System Local Board No. 11, Cheyenne, Wyoming*,
393 U.S. 233 (1968)..........................................................................38

*Physicians National House Staff Association v. Fanning*,
642 F.2d 492 (D.C. Cir. 1980)...........................................................38

*Reilly v. Office of Personnel Management*,
571 F.3d 1372 (Fed. Cir. 2009) .........................................................33

*Sebelius v. Auburn Regional Medical Center*,
133 S. Ct. 817 (2013)........................................................................44

*SightSound Technologies, LLC v. Apple Inc.*,
809 F.3d 1307 (Fed. Cir. 2015) ...................................................35, 49

*St. Jude Medical, Cardiology Division, Inc. v. Volcano Corporation*,
749 F.3d 1373 (Fed. Cir. 2014) ...................................................15, 16

*United States v. Erika, Inc.*,
456 U.S. 201 (1982)..........................................................................31

*United States v. Fausto*,
484 U.S. 439 (1988)..........................................................................31

*Versata Development Group, Inc. v. SAP America, Inc.*,
793 F.3d 1306 (Fed. Cir. 2015) ....................41, 42

*Wi-Fi One, LLC v. Broadcom Corporation*,
837 F.3d 1329 (Fed. Cir. 2016) ....................*passim*

*Wi-Fi One, LLC v. Broadcom Corporation*,
No. 15-1945, __ F. App'x __, 2016 WL 4933344 (Fed. Cir. Sept. 16, 2016) .................... 11-12

*Wi-Fi One, LLC v. Broadcom Corporation*,
No. 15-1946, __ F. App'x __, 2016 WL 4933418 (Fed. Cir. Sept. 16, 2016) ....................12

## STATUTES AND REGULATIONS

5 U.S.C. § 701(a) ....................46

35 U.S.C.
§ 112....................3, 36, 43
§ 303(c) ....................20
§ 311....................43
§ 311(a) ....................15
§ 311(b)....................15, 43
§ 312(a) ....................32, 43, 45
§ 312(a)(2) ....................15, 20
§ 312(a)(3) ....................15, 18, 22, 45
§ 313....................15
§ 314....................20, 41, 42
§ 314(a) ....................15, 16, 21, 22
§ 314(b)....................26
§ 314(d)....................*passim*
§ 315(a) ....................16
§ 315(b)....................*passim*
§ 315(c) ....................43
§ 316(a)(5) ....................6, 26
§ 316(a)(11) ....................26
§ 317(a) ....................24, 43
§ 318....................42
§ 318(a) ....................15
§ 319....................13, 23, 30

35 U.S.C. § 312(c) (2010) .......... 21

37 C.F.R.
§ 42.3(b) .......... 45
§ 42.4 .......... 15
§ 42.51(b)(2) .......... 6
§ 42.108 .......... 15

*Office Patent Trial Practice Guide*, 77 Fed. Reg. 48,756 (Aug. 14, 2012) .......... 17, 18

*Amendments to the Rules of Practice for Trials Before the Patent Trial and Appeal Board*, 81 Fed. Reg. 18,750 (Apr. 1, 2016) .......... 17, 23

**LEGISLATIVE HISTORY**

154 Cong. Rec.
S9987 (daily ed. Sept. 27, 2008) .......... 18
S9988 (daily ed. Sept. 27, 2008) .......... 26

157 Cong. Rec.
S1375 (daily ed. Mar. 8, 2011) .......... 17, 23, 29
H4425 (daily ed. June 22, 2011) .......... 24
S5409 (daily ed. Sept. 8, 2011) .......... 25, 26
S5429 (daily ed. Sept. 8, 2011) .......... 44

H.R. Rep. No. 112-98 (2011) .......... 19, 25, 26, 43

H.R. Rep. No. 1980, 79th Cong., 2d Sess. (1946) .......... 31, 47

S. Rep. No. 97-275 (1982) .......... 28

S. Rep. No. 752, 79th Cong., 1st Sess. (1945) .......... 47

## STATEMENT OF RELATED CASES

A petition for a writ of mandamus in the underlying *inter partes* proceedings was previously before this Court. *In re Telefonaktiebolaget LM Ericsson*, Nos. 2014-127, -128, and -129, 564 F. App'x 585 (Fed. Cir. May 5, 2014) (mem.). The panel was composed of Judges Lourie, Dyk, and Reyna. Judge Lourie authored the opinion of the Court.

The patents at issue in the present consolidated appeals—U.S. Patent Nos. 6,772,215 ("the '215 patent"), 6,466,568 ("the '568 patent") and 6,424,625 ("the '625 patent")—were involved in a case in the United States District Court for the Eastern District of Texas, which was administratively closed on May 8, 2015. *Ericsson, Inc. v. D-Link Sys., Inc.*, No. 6:10-cv-0473 (E.D. Tex.) (Dkt. 711). This Court previously decided an appeal from that action. *Ericsson, Inc. v. D-Link Sys., Inc.*, Nos. 2013-1625, -1631, -1632, -1633, 773 F.3d 1201 (Fed. Cir. Dec. 4, 2014). The panel was composed of Judges O'Malley, Taranto, and Hughes. Judge O'Malley authored the opinion of the Court, and Judge Taranto filed an opinion dissenting-in-part.

## RESPONSE TO THE EN BANC QUESTION

This Court should not overrule *Achates Reference Publishing, Inc. v. Apple Inc.*, 803 F.3d 652 (Fed. Cir. 2015), which correctly held that a patent owner cannot appeal the Patent Trial and Appeal Board's determination that a petition for

*inter partes* review is timely filed under 35 U.S.C. § 315(b). *Achates* properly recognized that the plain language of 35 U.S.C. § 314(d) prohibits appeals of the Board's determination whether to institute an *inter partes* review, including the closely related issue of whether the petition is timely. *Achates* further acknowledged certain narrow exceptions to the otherwise categorical bar on judicial review, including an exception for decisions that clearly exceed the Board's statutory limits.

On both issues—the general unavailability of judicial review and the existence of limited exceptions—*Achates* correctly anticipated the Supreme Court's analysis in *Cuozzo Speed Technologies, LLC v. Lee*, 136 S. Ct. 2131 (2016). That is unsurprising: *Achates* followed the reasoning of this Court's decision in *In re Cuozzo Speed Technologies, LLC*, 793 F.3d 1268 (Fed. Cir. 2015), which the Supreme Court affirmed. Relying heavily on the text of § 314(d) and Congress's intention to enable the Patent Office to revisit and cancel invalid patent claims in a speedy and efficient manner, the Supreme Court in *Cuozzo* held that § 314(d) bars appeals that are "*closely tied* to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review." 136 S. Ct. at 2141-2142 (emphasis added). Here, § 315(b) governs which petitioners can seek institution of an *inter partes* review and when, *see Achates*,

803 F.3d at 658, and is explicitly and directly related to the Board's institution determination.

*Achates* also properly recognized that judicial review may be available if the Board's institution decision clearly exceeds the scope of the Board's statutory authority. 803 F.3d at 658-659. Here, too, this Court's analysis mirrored the Supreme Court's in *Cuozzo*, which recognized that an institution decision may be appealable if the Board violated the Constitution or "act[ed] outside its statutory limits by, for example, canceling a patent claim for 'indefiniteness under § 112' in inter partes review." 136 S. Ct. at 2141-2142. *Achates* correctly found those exceptions inapplicable where a patent owner challenges only the Board's fact-intensive resolution of a routine discovery dispute and its equally fact-bound, case-specific analysis of whether a non-party is a "real party in interest" or "privy" that would render the petition untimely under § 315(b).

The Supreme Court's decision in *Cuozzo*, along with the text and purpose of the statute, confirm that *Achates* was correctly decided and should not be overruled by this Court.

## STATEMENT OF THE CASE

These consolidated cases arise from three petitions for *inter partes* review filed by Broadcom, a leading developer of semiconductor technologies, with

respect to patents currently owned by Wi-Fi One, LLC, a wholly owned subsidiary of non-practicing entity Optis Wi-Fi Holdings, LLC.[1]

On September 14, 2010, Wi-Fi One filed suit in the United States District Court for the Eastern District of Texas, accusing seven wireless communications companies (the "Texas Defendants") of infringing nine patents that Wi-Fi One alleged were essential to the IEEE 802.11(n) wireless standard, including the three patents at issue in the present case. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1213 (Fed. Cir. 2014). Although Wi-Fi One's allegations were based in part on the Texas Defendants' use of Broadcom's chips, Wi-Fi One chose not to sue Broadcom. Broadcom never became a party to the litigation, nor did Broadcom control the conduct of the Texas Defendants. A63.[2]

After a seven-day trial, a jury found that the Texas Defendants infringed three of the patents-in-suit. *Ericsson*, 773 F.3d at 1213. On appeal, this Court affirmed two of the infringement findings, reversed one, vacated the damages award, and remanded the case to the district court. *Id.* at 1217-1222, 1235.

[1] During the pendency of the *inter partes* reviews, Telefonaktiebolaget LM Ericsson ("Ericsson") transferred ownership of the patents-in-suit to Wi-Fi One, though Ericsson retains some interest in the patents. This brief refers to Wi-Fi One and Ericsson collectively as "Wi-Fi One."

[2] For ease of reference, this supplemental brief cites only the briefs and joint appendix filed in *Wi-Fi One, LLC v. Broadcom Corp.*, No. 2015-1944, the appeal from the Board's decision in IPR2013-00601 (related to the '215 patent).

Before the district court entered final judgment, Broadcom filed three petitions for *inter partes* review of several claims of the patents at issue. IPR2013-00601; IPR2013-00602; IPR2013-00636. On December 16, 2013, Wi-Fi One filed motions for additional discovery in each proceeding. The requested discovery related to Wi-Fi One's contention that Broadcom allegedly had the opportunity to control the Texas Defendants in the Texas litigation and therefore that its petitions were time-barred under 35 U.S.C. § 315(b). A45-52. On December 20, 2013, Broadcom submitted its opposition and a confidential declaration establishing that no amount of discovery could show the Texas Defendants were real parties in interest or in privity with Broadcom. A67-70; A867-869; *see also* Broadcom Br. 13-14, 42-49.[3] Broadcom further explained that Wi-Fi One could not demonstrate the requested discovery was "necessary in the interest of justice" under the five relevant factors set forth in *Garmin International, Inc. v. Cuozzo Speed Technologies, LLC*, IPR2012-00001, Paper 26 at 6-7 (PTAB Mar. 5, 2013). A71-

[3] Wi-Fi One asserts that Broadcom's declaration was "carefully worded to focus exclusively on its ties to the District Court litigation, and avoid any mention of the reverse—the District Court Defendants' control (or lack thereof) over IPRs below." En Banc Br. 11. That mischaracterizes the record. Broadcom submitted its declaration in response to Wi-Fi One's claim that Broadcom could control the Texas Defendants. A50 ("Here, evidence will prove that Broadcom has had the opportunity to control and maintains a substantive legal relationship with the [Texas] Defendants sufficient to bind Broadcom to the District Court's judgment."). It was not until Wi-Fi One's petition for rehearing of the Final Written Decision that Wi-Fi One reversed course and asserted its new theory that the Texas Defendants controlled Broadcom. A260-261; A272-274.

73; *see also* 35 U.S.C. § 316(a)(5); 37 C.F.R. § 42.51(b)(2). In particular, Broadcom demonstrated that Wi-Fi One lacked even the bare minimum requirement of "'a threshold amount of evidence or reasoning tending to show beyond speculation that something useful [would] be uncovered.'" A71 (quoting *Garmin*, IPR2012-00001, Paper 26 at 7).

On January 24, 2014, the Board denied Wi-Fi One's motions for additional discovery. A75-76. After reviewing the statute, legislative history, and implementing regulations, the Board noted that Congress intended discovery in *inter partes* review to be limited in scope. A79-80. Under the Board's prior decision in *Garmin*, the party seeking discovery must support its request with more than a "mere allegation that something useful [to the proceeding] will be found." A80 (internal quotation marks omitted). Turning to Wi-Fi One's motion, the Board noted that privity is a "highly fact-dependent question" that requires consideration of several factors, including "whether the non-party exercised or could have exercised control over a party's participation in a proceeding." A80-81 (internal quotation marks omitted). The Board reviewed well-established precedent on the question of privity, and concluded that "[t]he totality of [Wi-Fi One's] evidence fails to amount to more than a 'mere allegation' that Broadcom controlled, or could have controlled, the Texas Litigation." A85. The Board thus

found that Wi-Fi One "ha[d] not met its burden of demonstrating that additional discovery is in the interests of justice." A90.

On February 7, 2014, Wi-Fi One asked the Board to reconsider the denial of its motion, alleging again that Broadcom's actions showed a community of interest with the Texas Defendants. A98. The Board denied Wi-Fi One's request on February 20, 2014. A101-102. The Board explained that Wi-Fi One "ignores the weight of authority cited by the Board that shows control over prior litigation is a crucial factor normally required to bind a party to that prior litigation using collateral estoppel." A103. Ultimately, the Board held, Wi-Fi One had not demonstrated any error in the Board's conclusion that Wi-Fi One had "failed to meet its burden of showing that additional discovery would have more than a mere possibility of showing that Broadcom should be bound by the Texas Litigation." A105-106.

Wi-Fi One subsequently waived its right to file a preliminary response to the petitions. A2. Notably, Wi-Fi One failed to argue, after the denial of discovery and before institution, that the Board should decline to institute *inter partes* review because of Broadcom's alleged privity with the Texas Defendants. On March 10, 2014, the Board issued a Decision on Institution in each case, finding a reasonable likelihood that the challenged claims were unpatentable. A128.

On April 1, 2014, Wi-Fi One petitioned this Court for a writ of mandamus seeking to overturn the Board's denial of its motion for additional discovery related to the privity issue. *In re Telefonaktiebolaget LM Ericsson*, 564 F. App'x 585 (Fed. Cir. 2014) (mem.). This Court held that Wi-Fi One had failed to meet the "heavy burden" required for mandamus relief, and denied the petition without prejudice. *Id.* at 586.

Wi-Fi One filed its Patent Owner Response in each case on June 11, 2014, arguing that Broadcom's petitions were time-barred because Broadcom was in privity with the Texas Defendants and "could have exercised control" over the Texas litigation. A148. On October 1, 2014, Broadcom filed its Reply, explaining that Wi-Fi One was simply rearguing its "privity" theory that the Board had already rejected multiple times. A234-236.

After oral hearings, the Board issued a Final Written Decision in each case, holding that all of the challenged claims were unpatentable. A16-26. Each decision included an identical section addressing Wi-Fi One's argument that Broadcom was in privity with the Texas Defendants. The Board found that Wi-Fi One's arguments and evidence on that question were not substantively different from the arguments and evidence it had already found to be insufficient. The Board thus reaffirmed its institution decisions, incorporating by reference the reasoning in the denial of Wi-Fi One's motion for additional discovery. A8-9.

On April 6, 2015, Wi-Fi One filed a request for a rehearing of the Board's Final Written Decisions, arguing that the Board had applied an erroneous legal standard in its privity determination that focused solely on whether Broadcom had the ability to control the Texas Defendants in the Texas Litigation, and had not considered whether the Texas Defendants were controlling Broadcom's actions in the *inter partes* reviews. A260-261. The Board denied Wi-Fi One's request on June 1, 2015, explaining that Wi-Fi One had not identified any error in the Board's analysis. A272-277. In particular, the Board explained that its prior decision focused on whether Broadcom had controlled the Texas Defendants in the Texas litigation because "that was the focus of [Wi-Fi One's] Motion for Additional Discovery." A273. The Board further explained that its prior decision had properly recognized the question of privity as requiring consideration of several factors, including but not "limited strictly to a petitioner's control, or opportunity to control, a non-party in previous litigation." A273-274. The Board then reviewed Wi-Fi One's arguments and evidence that the Texas Defendants were controlling Broadcom's actions in the *inter partes* reviews, and found them unpersuasive. A272-277. The Board therefore reaffirmed its determination that the Texas Defendants were not real parties in interest or in privity with Broadcom, and that the *inter partes* reviews were not time-barred under 35 U.S.C. § 315(b). A278.

Wi-Fi One appealed the Board's determinations in each of the three *inter partes* reviews, and filed identical arguments on the time-bar issue in each case. Acknowledging that *Achates Reference Publishing, Inc. v. Apple, Inc.*, 803 F.3d 652 (Fed. Cir. 2015), held the Board's assessment of a time-bar issue under § 315(b) is nonappealable, Wi-Fi One nonetheless asked the Court to review the Board's determination that Broadcom was not barred from petitioning for *inter partes* review. Wi-Fi One challenged that determination on several procedural grounds, arguing the Board had applied an incorrect legal standard on the question of privity, erroneously denied Wi-Fi One's request for discovery, failed to consider known evidence, and failed to adequately explain its reasons for concluding the petitions were timely. Wi-Fi Opening Br. 19-44. Wi-Fi One also challenged the Board's determination that the claims were unpatentable. *Id.* at 44-61.

After briefing but before oral argument, the Supreme Court decided *Cuozzo Speed Technologies, LLC v. Lee*, 136 S. Ct. 2131 (2016), and this Court invited supplemental briefing on *Cuozzo*'s implications for the reviewability of time-bar issues under § 315(b) (Dkt. 50).

On September 16, 2016, this Court issued a published opinion in the '215 patent appeal affirming the Board's Final Written Decision. *Wi-Fi One, LLC v. Broadcom Corp.*, 837 F.3d 1329 (Fed. Cir. 2016). The Court first held that *Cuozzo* did not implicitly overrule *Achates*. *Cuozzo* interpreted § 314(d) to bar appeals

"'that are closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review,'" and § 315(b) "is just such a statute." *Id.* at 1334 (quoting *Cuozzo*, 136 S. Ct. at 2141). The Court rejected Wi-Fi One's attempt to portray the Board's decision as "an example of the 'shenanigans'" that *Cuozzo* suggested could be reviewed: "The Board simply declined to grant discovery because Wi-Fi had not made a sufficient showing to support its request. To hold that such a ruling falls within the narrow exception to the Supreme Court's unreviewability holding would render routine procedural orders reviewable, contrary to the entire thrust of the *Cuozzo* decision." *Id.* at 1335. Finally, the Court affirmed the determination that the challenged '215 patent claims were unpatentable. *Id.* at 1335-1340. Judge Reyna concurred. On the merits of the time-bar issue, Judge Reyna "agree[d] with the majority that Wi-Fi One has neither shown Broadcom to be in privity with the Texas Defendants nor a real party in interest in the Texas litigation." *Id.* at 1340 (Reyna, J., concurring). Judge Reyna wrote separately to suggest the en banc Court revisit *Achates* and hold that judicial review is available when the Board addresses a time-bar issue in a final written decision.

The Court further issued summary decisions pursuant to Federal Circuit Rule 36, affirming the Board's Final Written Decisions canceling the challenged claims of the '568 patent and '625 patent. *See Wi-Fi One, LLC v. Broadcom*

*Corp.*, No. 15-1945, __ F. App'x __, 2016 WL 4933344 (Fed. Cir. Sept. 16, 2016) (mem.); *Wi-Fi One, LLC v. Broadcom Corp.*, No. 15-1946, __ F. App'x __, 2016 WL 4933418 (Fed. Cir. Sept. 16, 2016) (mem.).

Wi-Fi One filed identical petitions for rehearing en banc in all three cases. Dkt. 62. This Court granted the petitions, consolidated the appeals for briefing and argument, and asked the parties to address the limited question whether the Court should overrule *Achates* and permit a patent owner whose patent has been found invalid in an *inter partes* review to appeal the Board's determination that the underlying petition was timely under § 315(b). Dkts. 67, 74.

## SUMMARY OF ARGUMENT

This Court should reaffirm the decision in *Achates*. By its plain terms, 35 U.S.C. § 314(d) prohibits appeals of the Board's "determination … *whether to institute* an inter partes review." The Board's conclusion that a petitioner is not time-barred under § 315(b) is a central aspect of the institution determination and thus falls well within the scope of § 314(d). The Supreme Court's decision in *Cuozzo* only bolsters that conclusion. *Cuozzo* held that § 314(d), at a minimum, bars challenges that are "*closely tied* to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review." 136 S. Ct. at 2141-2142 (emphasis added). As the panel recognized, § 315(b) is "just such a statute." *Wi-Fi One, LLC v. Broadcom Corp.*, 837 F.3d 1329, 1334 (Fed.

Cir. 2016). Section 315(b) defines when a petitioner can ask the Board to institute an *inter partes* review, and requires the Board to apply fact-intensive statutory standards—*e.g.*, privity and real party in interest—to the particular case at hand to determine the petition's timeliness.

That interpretation of the statute advances the purposes of *inter partes* review—namely, allowing the Board to revisit and invalidate patents that should not have been granted and providing a speedy and efficient avenue for challenging invalid patents. Allowing broad appealability of time-bar determinations would threaten to undo the Board's decisions based on minor procedural issues, and would bog down this Court with discovery disputes and fact-bound challenges to the Board's determinations on common-law issues like privity—in other words, subjects far afield from the substantive patentability issues that Congress authorized this Court to review in 35 U.S.C. § 319. As in *Cuozzo*, the statutory text and purpose provide ample evidence that Congress intended to preclude appeals of time-bar determinations. The presumption in favor of reviewability thus does not control.

Importantly, interpreting § 314(d) as written does not give the Board free rein to disregard all statutory limits on its authority. Both *Cuozzo* and *Achates* properly recognized certain narrow exceptions that permit judicial review of particularly egregious errors in the Board's institution decisions, including claims

that the Board violated the Constitution or acted wholly outside the scope of its statutory authority. Neither of those exceptions is implicated here. Wi-Fi One raises only garden-variety procedural challenges to the Board's decision, and cannot establish that the Board's thorough, fact-intensive assessment of the time-bar issue violated any constitutional prohibition or plainly exceeded the Board's statutory authority.

This Court should affirm the Board's decision and hold, consistent with *Cuozzo* and *Achates*, that Congress unambiguously shielded from appeal the Board's determination to institute review over a patent owner's time-bar objection. Although judicial oversight through mandamus remains available in an appropriately extraordinary case, where, as here, the patent owner challenges only the Board's application of a well-settled legal standard to the facts of its case, it cannot establish a clear and indisputable right to relief.

## ARGUMENT

### I. *ACHATES* CORRECTLY HELD THAT THE BOARD'S DECISION REJECTING A TIME-BAR CHALLENGE IS GENERALLY NOT APPEALABLE

The text of § 314(d), the purpose and history of the statute, and the Supreme Court's recent decision in *Cuozzo* all confirm that *Achates* was correctly decided. Subject to certain narrow exceptions not applicable here, § 314(d) bars appeals of the Board's decision to institute *inter partes* review over a patent owner's time-bar objection.

### A. The Text Of Section 314(d) Provides That Issues Related To The Institution Decision Are Not Appealable

The Leahy-Smith America Invents Act ("AIA") created *inter parte*s review as a new, streamlined mechanism for challenging the validity of previously issued patents. Any person other than the patent owner may file a petition asking the Board to institute an *inter partes* review of a particular patent. 35 U.S.C. § 311(a), (b). The Board may "consider[]" a petition "only if" the petition complies with certain statutory requirements; the petition must, for example, "identif[y] all real parties in interest" and plead its challenges to each claim "with particularity." *Id.* § 312(a)(2), (3). Once a petition is filed, the patent owner may file "a preliminary response … that sets forth reasons why no inter partes review should be instituted based upon the failure of the petition to meet any requirement of this chapter." *Id.* § 313. Relying on "the information presented in the petition … and any response," the Director then determines whether to institute a proceeding. *Id.* § 314(a).[4] If the Board decides to proceed, it conducts a trial and issues a final written decision with respect to the patentability of the challenged claims. *Id.* § 318(a); *see also St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, 749 F.3d 1373, 1375-1376 (Fed. Cir. 2014) (describing this "two-step procedure" for *inter partes* review).

[4] The Director has delegated the responsibility for instituting *inter partes* reviews to the Board. *See* 37 C.F.R. §§ 42.4(a), 42.108.

Several statutory provisions bear on the Board's determination at the first step. The Board "may not" institute an *inter partes* review unless "there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a). An *inter partes* review "may not be instituted" if the petitioner or a real party in interest challenged the validity of the same patent in a prior district court action. *Id.* § 315(a). And, as relevant here, an *inter partes* review "may not be instituted" if the petitioner, a real party in interest, or a privy of the petitioner had been "served with a complaint alleging infringement of the patent" more than one year before the petition was filed. *Id.* § 315(b). As this Court has recognized, these provisions amount to additional "restrictions on the Director's 'instituting' an inter partes review." *St. Jude*, 749 F.3d at 1374.

Section 314(d) unambiguously precludes appeals of the Board's resolution of these issues. The provision imposes a broad limitation on the availability of review: "The determination by the Director *whether to institute an inter partes review* under this section shall be final and nonappealable." 35 U.S.C. § 314(d); *see also St. Jude*, 749 F.3d at 1376 (noting that § 314(d) is "broadly worded"). As described above, the Board's institution determination depends not only on its initial assessment of the merits of the petition under § 314(a), but also on its resolution of several other potential objections to institution, including a time-bar

challenge under § 315(b). The Patent Office encourages the patent owner to raise any claim that the petitioner is time-barred in its preliminary response. Most recently, the Patent Office explained that "it is important to resolve real party-in-interest and privity issues as early as possible, preferably in the preliminary stage of the proceeding prior to institution." *Amendments to the Rules of Practice for Trials Before the Patent Trial and Appeal Board*, 81 Fed. Reg. 18,750, 18,758 (Apr. 1, 2016); *see also Office Patent Trial Practice Guide*, 77 Fed. Reg. 48,756, 48,764 (Aug. 14, 2012) (noting that a preliminary response may argue that the "petitioner is statutorily barred from pursuing a review"). The Patent Office's guidance is consistent with Congress's expectation that "patent owners [would] take the initiative in determining whether a petitioner is the real party in interest or privy of a party that is barred from instituting a proceeding with respect to the patent." 157 Cong. Rec. S1375 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl). The Board's assessment of a time-bar issue under § 315(b) is thus essential to the institution determination.

The Supreme Court's decision in *Cuozzo* confirms that § 314(d) bars appeals of time-bar challenges. In *Cuozzo*, the patent owner argued the Board had improperly instituted *inter partes* review on certain dependent claims not specifically identified in the petition, in violation of a statutory provision requiring the petition to "identif[y], in writing and with particularity, each claim challenged."

35 U.S.C. § 312(a)(3). The Supreme Court found the patent owner's claim unreviewable on appeal, holding that § 314(d) bars review where a challenge "consist[s] of questions that are *closely tied* to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review." *Cuozzo*, 136 S. Ct. at 2141-2142 (emphasis added); *see also id.* at 2139 (noting that § 314(d) at a minimum bars "an ordinary dispute about the application of certain relevant patent statutes concerning the Patent Office's decision to institute inter partes review").

By its terms, § 315(b) relates closely to the institution decision: it defines when an *inter partes* proceeding may or "may not be *instituted*," and it requires the Board to apply fact-dependent standards like "privity" and "real party in interest" to the particular facts at hand to determine whether the petition is time-barred. *See Cuozzo*, 136 S. Ct. at 2141. The concept of privity, for example, is "borrowed from the common law" and has a "practical and equitable nature." 154 Cong. Rec. S9987 (daily ed. Sept. 27, 2008) (statement of Sen. Kyl). The Board must assess in each case whether the relationship between the petitioner and a third party is "sufficiently close" to justify a finding of privity. *Id*. As the Patent Office has explained, the Board must "evaluate what parties constitute 'privies' in a manner consistent with the flexible and equitable considerations established under federal caselaw." 77 Fed. Reg. at 48,759; *see also id.* (noting the Board "will apply

traditional common-law principles" in applying the "real-party-in-interest" and "privy" standards, which are "highly fact-dependent").

Recent decisions of this Court likewise support the conclusion that § 315(b) is "closely tied" to statutes governing the Board's institution decision. After *Cuozzo*, this Court explained that "statutes 'closely related' to the decision whether to institute are necessarily, and at least, those that define the metes and bounds of the inter partes review process." *Husky Injection Molding Sys. Ltd. v. Athena Automation Ltd.*, 838 F.3d 1236, 1246 (Fed. Cir. 2016). Section 315(b)—which simply defines *who* may seek *inter partes* review and *when*—must fall within that category. *See* H.R. Rep. No. 112-98 at 47 (2011) (explaining that under § 315(b), "[p]arties who want to use inter partes review during litigation are required to seek a proceeding within 12 months of being served with a complaint alleging infringement of the patent"). Indeed, the dissent in *Cuozzo* explicitly recognized that "the petition's timeliness, no less than the particularity of its allegations, is 'closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate ... review,'" 136 S. Ct. at 2155 (Alito, J., dissenting in part)—a statement the majority did not dispute, even after responding to other concerns raised by the dissent.

Wi-Fi One argues that *Cuozzo* does not foreclose the reviewability of the Board's timeliness determination under § 315(b), asking the Court to read

additional limitations into the language of § 314(d). But its proposed restrictions lack any foundation in the statutory text and are irreconcilable with the reasoning in *Cuozzo*.

*First*, Wi-Fi One seizes on § 314(d)'s reference to the "determination by the Director whether to institute an inter partes review *under this section*." (Emphasis added.) Wi-Fi One suggests that *only* the Board's "determin[ation]" under § 314(a) that "there is a reasonable likelihood that the petitioner would prevail" is barred from judicial review. En Banc Br. 41-42. That is incorrect. As *Achates* recognized, "[t]he words 'under this section' … modify the word 'institute.'" 803 F.3d at 658. Section 314 is the statutory provision authorizing the Board to institute an *inter partes* review, so any institution decision is a decision made "under [§ 314]." The statutory reference to "under this section" thus does not limit the bar on appeals to the "reasonable likelihood" determination under § 314(a). The Supreme Court confirmed that interpretation by holding in *Cuozzo* that the § 314(d) extended to challenges raised under § 312(a)(3).

Unlike § 314(d), other statutory provisions *do* single out the Board's preliminary assessment of the merits as nonappealable. Section 303(a), for example, governs reexamination proceedings and provides that "the Director will determine whether a substantial new question of patentability … is raised by the request." Section 303(c) then prohibits review of "[a] determination by the

Director *pursuant to subsection (a) of this section*." The statutory provision governing *inter partes* reexamination prior to enactment of the AIA similarly provided that "[a] determination by the Director *under subsection (a)*" was final and nonappealable. 35 U.S.C. § 312(c) (2010) (emphasis added). Congress could have modeled § 314(d) on either of these statutory provisions, but instead deliberately chose broader language that encompassed the Board's timeliness determination under § 315(b).[5]

*Second*, Wi-Fi One suggests that the Board's institution determination is nonappealable only to the extent the determination draws upon the Board's "specialized agency expertise for adjudicating the validity of a patent." En Banc Br. 46. That argument is simply a repackaging of the previous one; the only aspect of the institution decision that Wi-Fi One identifies as meeting that standard is the "reasonable likelihood" determination under § 314(a). The argument thus fails for the same reasons discussed above. It is inconsistent with *Cuozzo*'s holding that the Court could not review a challenge regarding whether a petition was pleaded with sufficient particularity. 136 S. Ct. at 2139; *see also Wi-Fi One*, 837 F.3d at 1334 ("Subsection 312(a)(3) … is not related to substantive patentability, but instead is

[5] This Court has also held that a patent owner's claim that a party is barred by assignor estoppel from petitioning for *inter partes* review is nonappealable because it is bound up in the "reasonable likelihood" determination. *Husky*, 838 F.3d at 1246. The same is true of whether a party is time-barred under § 315(b).

addressed to the conditions for seeking review—in that case, the level of specificity required in the petition.”). And more generally, it cannot be reconciled with Congress’s stated intent to prohibit review of the “determination … *whether to institute*” more broadly. *See Cuozzo*, 136 S. Ct. at 2141 (recognizing that “Congress has told the *Patent Office* to determine whether inter partes review should proceed”).

*Finally*, Wi-Fi One suggests that this Court may review the Board’s resolution of a challenge to the petition’s timeliness if the Board addresses the issue in its final written decision. The dissent in *Cuozzo* embraced that position, interpreting § 314(d) to prohibit only “interlocutory appeals, leaving a court free to review the initial decision to institute review in the context of the agency’s final decision.” 136 S. Ct. at 2140. The majority opinion squarely rejected that interpretation, which it said would “read[] into the provision a limitation … that the language nowhere mentions and that is unnecessary.” *Id.*[6]

---

[6] The dissent drew support for its interpretation from the general principle that judicial review of a final decision generally encompasses review of earlier, non-final decisions made during the case. *Cuozzo*, 136 S. Ct. at 2152 (Alito, J., dissenting in part). In response, the majority noted other contexts in which an initial determination—*e.g.*, a grand jury’s finding of probable cause—is *not* reviewable. *Id.* at 2140. The majority did not suggest that *only* determinations that are akin to an initial assessment of the merits of a dispute should be appealable under § 314(d). That would have been inconsistent with the Court’s ultimate holding that the statute precluded review of challenges raised under § 312(a)(3), as well as other issues “closely related” to the institution determination. *Id.* at 2142.

The statutory provisions governing appeals from *inter partes* review proceedings further undermine Wi-Fi One's argument. Section 319 allows "[a] party dissatisfied with the final written decision of the Patent Trial and Appeal Board *under section 318(a)* [to] appeal the decision." (Emphasis added.) Section 318(a), in turn, requires the Board to "issue a final written decision *with respect to the patentability of any patent claim* challenged by the petitioner and any new claim added under section 316(d)." (Emphasis added.) The statute thus requires any appeal from the Board's final written decision to be limited to the *patentability* of the disputed claims—not to subsidiary issues related to the institution decision.

Wi-Fi One correctly notes (at 32-33) that the governing regulations allow a patent owner to raise § 315(b) issues during trial. But the Board has emphasized the importance of resolving time-bar objections "as early as possible, preferably in the preliminary stage of the proceeding *prior to institution*." 81 Fed. Reg. at 18,758 (emphasis added); *see also* 157 Cong. Rec. S1375 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl). Allowing the Court to review a time-bar challenge as long as the Board addressed the issue in the final written decision would encourage patent owners *not* to raise the issue in the preliminary response (or, like Wi-Fi One, not to file a preliminary response at all). Instead, patent owners would simply circumvent § 314(d) by waiting to raise the issue at trial. That kind of sandbagging could substantively harm petitioners, requiring them to undertake needless trials in

some cases and allowing patent owners to gain unfair leverage during the proceedings. Properly interpreted, § 314(d) prohibits review of the Board's assessment of a time-bar challenge, regardless of when the issue is raised.

### B. The Purpose And History Of The Statute Confirm That Institution Decisions Are Not Appealable

As Wi-Fi One recognizes, *inter partes* review serves two important purposes: enabling the Patent Office to revisit and cancel claims that should not have been issued and providing a speedy and efficient alternative to district court litigation over patent validity. En Banc Br. 24. *Achates*' interpretation of § 314(d) serves both of those goals.

*First*, Congress created *inter partes* review primarily to "improve patent quality and restore confidence in the presumption of validity that comes with issued patents." H.R. Rep. at No. 112-98 at 45, 48. To effectuate that purpose, Congress entrusted the Board with "significant power to revisit and revise earlier patent grants"—including, for example, the power to continue an *inter partes* proceeding and invalidate a patent claim "even after the original petitioner settles and drops out." *Cuozzo*, 136 S. Ct. at 2139-2140; *see* 35 U.S.C. § 317(a) ("If no petitioner remains in the inter partes review, the Office may terminate the review or proceed to a final written decision under section 318(a)."). The breadth of the Board's power reflects the importance Congress placed on "screen[ing] out bad patents." 157 Cong. Rec. H4425 (daily ed. June 22, 2011) (statement of Rep.

Goodlatte); *see also* 157 Cong. Rec. S5409 (daily ed. Sept. 8, 2011) (noting the bill would "ensure that the poor-quality patents can be weeded out" (statement of Sen. Schumer)).

In *Cuozzo*, the Supreme Court expressed "doubt that Congress would have granted the Patent Office this authority … if it had thought that the agency's final decision could be unwound under some minor statutory technicality related to its preliminary decision to institute inter partes review." 136 S. Ct. at 2139-2140. That reasoning applies equally well here. Wi-Fi One asks the Court to undo the Board's final decisions invalidating three patents in three separate *inter partes* proceedings based on a supposed defect in the Board's application of fact-bound standards at the institution stage. In other recent appeals, patent owners seeking reversal of the Board's final written decisions have challenged *only* the Board's institution decision—without even attempting to defend the patentability of the disputed claims. *See, e.g.*, *Achates*, 803 F.3d at 654; *Husky*, 838 F.3d at 1241-1242. These are precisely the cases the Supreme Court had in mind when it stated in *Cuozzo* that permitting appeals of institution decisions "would undercut [the] important congressional objective" of revisiting invalid patent grants. *Cuozzo*, 136 S. Ct. at 2139-2140.

*Second*, Congress intended *inter partes* review to "provid[e] a more efficient system for challenging patents that should not have issued." H.R. Rep. No. 112-98

at 39-40; *see also id.* at 48 (noting that IPR would be "quick and cost effective"); 157 Cong. Rec. S5409 (daily ed. Sept. 8, 2011) (noting that AIA "streamlines review of patents" (statement of Sen. Schumer)). To promote efficiency, Congress imposed strict deadlines for instituting and conducting *inter partes* proceedings: the Board must decide whether to institute review within three months of receiving the patent owner's preliminary response (or the deadline for the response, if none is filed), 35 U.S.C. § 314(b), and must generally issue a final written decision no later than one year after institution, *id.* § 316(a)(11). To make those deadlines feasible, Congress significantly limited the scope of discovery in *inter partes* review. Under § 316(a)(5), discovery "shall be limited to" depositions of witnesses submitting affidavits and discovery that "is otherwise necessary in the interest of justice." A leading sponsor of the AIA "anticipated that … PTO will be conservative in its grants of discovery," given the "deadlines imposed on these proceedings." 154 Cong. Rec. S9988-S9989 (daily ed. Sept. 27, 2008) (statement of Sen. Kyl).

Allowing parties to relitigate not only the threshold time-bar issue but also all the underlying discovery disputes related to that issue would severely undermine Congress's goal of providing a speedy and efficient alternative for challenging the validity of patents. *See Wi-Fi One*, 837 F.3d at 1335 (noting that allowing review of the Board's denial of discovery in this case "would render

routine procedural orders reviewable, contrary to the entire thrust of the *Cuozzo* decision"). This Court would inevitably become entangled in fact-intensive questions about whether the Board properly weighed the five factors used to determine whether additional discovery is warranted, including whether the party seeking discovery established more than a "mere possibility" or "mere allegation that something useful will be found." *Garmin Int'l, Inc. v. Cuozzo Speed Techs., LLC*, IPR2012-00001, Paper 20 at 2-3 (PTAB Feb. 14, 2013). After resolving the discovery dispute, the Court would have to analyze whether the patent owner's evidence established that a non-party acted as a "real party in interest" or a "privy" of the petitioner—common-law concepts that the Board recognizes are fact-dependent and must be adjudicated case by case. *See supra* pp. 18-19; *see also* A89 (Board noting that "determining whether privity exists … typically spirals into what amounts to a separate trial that involves a myriad of considerations"). Congress could not have intended this Court to undertake that responsibility.

Wi-Fi One and its *amici* point to other aspects of the legislative history that, in their view, support the availability of judicial review for time-bar issues. These arguments are unpersuasive.

Wi-Fi One first argues (at 25-26) that Congress eliminated intra-agency appeals in the AIA to accelerate this Court's review of the Board's decisions in *inter partes* reviews. Relatedly, it notes (at 23, 45) that Congress created the

Federal Circuit to "promote consistency and uniformity in patent law." These observations are correct but wholly irrelevant to the proper interpretation of § 314(d). This Court ensures that *substantive* patent law remains uniform across the nation's district courts. *See*, *e.g.*, S. Rep. No. 97-275 at 15 (1982) (discussing the need for a "forum that will increase doctrinal stability in the field of patent law"); *id.* (noting that "the patent bar indicated that uncertainty created by the lack of national law precedent was a significant problem"); *see also* En Banc Br. 21 (acknowledging that Congress created the Patent Office "'to bring specialized expertise on *questions of patentability*'" (quoting *Hyatt v. Kappos*, 625 F.3d 1320, 1343-1344 (Fed. Cir. 2010) (en banc) (emphasis and alterations in original))). Wi-Fi One points to no indication that Congress was concerned about a lack of uniformity with respect to *procedural* issues like timeliness—indeed, this Court applies the law of the regional circuits on most procedural matters, even when that practice leads to inconsistent outcomes. *See Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 841 F.3d 1334, 1346 (Fed. Cir. 2016) (noting that regional law applies to "procedural issues not intimately involved in federal patent law" (internal quotation marks omitted)). This Court's expertise in *substantive* matters of patent law provides an additional reason to preclude review of fact-intensive, procedural issues like the time-bar and minor discovery issues. Permitting such appeals could flood this Court's docket with cases challenging

*only* the Board's assessment of a time-bar objection (like *Achates*), rather than the validity of disputed claims under substantive patent law.

Wi-Fi One next points out that Congress intended § 315(b) to protect patent owners against serial challenges and dual-track litigation. Again, the statement is correct but irrelevant—the mere fact that § 315(b) protects the interests of patent owners does not resolve the question of reviewability. In *Block v. Community Nutrition Institute*, 467 U.S. 340, 347 (1984), the Supreme Court rejected the argument that consumers must be able to obtain review of agency decisions under the Agricultural Marketing Agreement Act because the statute was meant to serve consumer interests. The Supreme Court held that preclusion turns on congressional intent with respect to the availability of judicial review—not just on "whether the interests of a particular class like consumers are implicated." *Id.* A rule permitting judicial review whenever an issue implicates protected interests would make little sense. In the AIA, for example, Congress considered the heightened threshold for instituting *inter partes* review—the "reasonable likelihood" standard—to be "[a]mong the most important protections for patent owners added by the present bill." 157 Cong. Rec. S1375 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl). And the requirement to plead challenges with particularity likewise protects the patent owner by ensuring the petitioner provides

adequate notice of the scope of the challenge. Yet Wi-Fi One concedes that § 314(d) precludes judicial review of both of those issues. En Banc Br. 41.

Finally, Wi-Fi One's *amicus* asks the Court to read § 314(d) narrowly because the Board "has been granted significant powers to take away patent owners' previously granted intellectual property rights." IPO Br. 7. But the Board's *institution decision* does not "take away" substantive patent rights; only the Board's final written decision invalidating a patent claim can accomplish that end, and that decision remains appealable in all cases. 35 U.S.C. § 319.

### C. The Presumption Favoring Judicial Review Does Not Control

Wi-Fi One and its *amici* rely heavily on the presumption in favor of judicial review, criticizing *Achates* for not making the presumption the "starting point of its analysis." En Banc Br. 2. As an initial matter, the fact "[t]hat the court did not specifically mention the [presumption] in its opinion forms no basis for an assumption that it did not consider it." *Hartman v. Nicholson*, 483 F.3d 1311, 1315 (Fed. Cir. 2007). The Court gave the presumption the weight it deserved, implicitly recognizing—as *Cuozzo* confirms—that the statutory text and purpose sufficiently rebutted the presumption in this case. It "is, after all, a presumption, and like all presumptions used in interpreting statutes, may be overcome by, *inter alia*, specific language or specific legislative history that is a reliable indicator of congressional intent … to preclude judicial review." *Bowen v. Michigan Acad. of*

*Family Physicians*, 476 U.S. 667, 673 (1986) (internal quotation marks omitted). Where the statute on its face precludes judicial review, the presumption ordinarily will not control. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 141 n.2 (1967) ("To preclude judicial review under this bill a statute, *if not specific in withholding such review*, must upon its face give clear and convincing evidence of an intent to withhold it." (quoting H.R. Rep. No. 1980, 79th Cong., 2d Sess. at 275 (1946) (emphasis added)); *id.* at 140 (noting the basic presumption of judicial review "*so long as no statute precludes such relief*" (emphasis added)).

The Supreme Court in *Cuozzo* squarely held that the language of § 314(d) and the legislative history of the AIA sufficiently establish Congress's intent to bar review of challenges that are "closely tied" to the Board's institution decisions. *Cuozzo*, 136 S. Ct. at 2140-2141 (the standard for overcoming the presumption "is met here"). That decision is indisputably correct. The explicit statutory language precluding review is unequivocal here, making this case even stronger than those cases in which the Supreme Court has held that statutes *implicitly* barred review of certain claims. *See, e.g.*, *United States v. Fausto*, 484 U.S. 439, 447-448 (1988) (inferring from statutory structure that personnel could not appeal adverse action decisions); *Block*, 467 U.S. at 352 (same, with respect to actions brought by milk consumers); *United States v. Erika, Inc.*, 456 U.S. 201, 206-208 (1982) (same, with respect to awards made under Part B of Medicare statute). In those cases, the

Supreme Court found "congressional intent to preclude judicial review [to be] 'fairly discernible' in the detail of the legislative scheme." *Block*, 467 U.S. at 351. Here, Congress spoke in clear, explicit terms. This Court must give effect to the "clear command" of Congress to preclude review. *Barlow v. Collins*, 397 U.S. 159, 167 (1970).

Wi-Fi One's arguments in favor of applying the presumption to permit review of time-bar claims cannot be squared with *Cuozzo*. Wi-Fi One asserts, for example, that Broadcom must supply clear and convincing evidence of Congress's intent to bar review of the *specific issue* raised on appeal. En Banc Br. 51. But *Cuozzo* did not rely on any evidence that Congress intended to bar review of challenges under *§ 312(a)* specifically. Instead, it relied on the language, structure, and purpose of the statute as a whole.

Wi-Fi One also relies heavily (at 43-44) on the Supreme Court's decision in *Lindahl v. Office of Personnel Management*, 470 U.S. 768 (1985), but *Cuozzo* addressed essentially the same argument and made clear that *Lindahl* provides no support for Wi-Fi One's interpretation. The statute in *Lindahl* required the agency to "determine questions of disability and dependency" and precluded judicial review of "decisions … concerning these matters." 470 U.S. at 771. The Supreme Court in *Lindahl* narrowly interpreted that language to permit judicial review of legal challenges, but not to the "factual underpinnings of … disability

determinations"—an interpretation that *Cuozzo* said "preserved the agency's primacy over its core statutory function in accord with Congress' intent." *Cuozzo*, 136 S. Ct. at 2141 (internal quotation marks omitted). As *Cuozzo* explained, an interpretation of § 314(d) that bars review of the institution determination likewise "gives effect to [Congress's] statutory command," because "Congress has told the *Patent Office* to determine whether inter partes review should proceed." *Id.* *Cuozzo* further observed that *Lindahl* had relied on legislative history supporting the inference that Congress intended to bar review of the agency's factual determinations, and that the statutory scheme and legislative history of the AIA similarly "point in favor of precluding review of the Patent Office's institution decision." *Id.*[7]

Adhering to Congress's intent in this case does not, as Wi-Fi One's *amicus* contends, render the statutory limits on the Board's institution determination a "nullity." BIO Br. 23. The Board remains bound by those limits and presumably applies them in good faith, but, as in the many cases described above, the statutory

[7] In any event, Wi-Fi One overstates the degree to which *Lindahl* preserved the availability of judicial review. *See* En Banc Br. 18 (suggesting that, under *Lindahl*, a court can review "the law and procedures used by [the agency] in reaching its determination"). As this Court subsequently recognized, only "legal errors *of sufficient gravity*" are reviewable; the Court cannot review challenges to the agency's factual determinations or whether its decision is supported by substantial evidence. *Reilly v. Office of Pers. Mgmt.*, 571 F.3d 1372, 1377 (Fed. Cir. 2009) (emphasis added). Wi-Fi One's allegations fall largely within the latter category.

language and history "demonstrate[] that Congress wanted [the Board] to police its own conduct." *Mach Mining LLC v. EEOC*, 135 S. Ct. 1645, 1651 (2015). Here, Congress determined that the public's interest in preserving the efficiency of *inter partes* review outweighs the patent owner's interest in relitigating complex factual disputes *after* its patent has been declared invalid. Nothing prohibits Congress from making that choice.

## II. *ACHATES* CORRECTLY RECOGNIZED NARROW EXCEPTIONS FOR CLAIMS NOT IMPLICATED HERE

Consistent with longstanding precedent, *Cuozzo* preserved the availability of judicial review for certain "shenanigans" related to the institution determination—namely, determinations that violate the Constitution or plainly exceed the Board's statutory limits. 136 S. Ct. at 2141-2142. *Achates* likewise recognized that the Court can review "*ultra vires* agency action," as well as claims that implicate the Board's ultimate authority to invalidate a claim. 803 F.3d at 657-658. The Supreme Court's recognition of these narrow exceptions in *Cuozzo* thus provides no basis for this Court overruling *Achates*.

### A. This Court May Review Constitutional Challenges To The Institution Decision

Even when a statute expressly precludes review, the Supreme Court has long recognized an exception for constitutional claims. *See, e.g.*, *Bowen*, 476 U.S. at 681 n.12 (noting the "serious constitutional question that would arise" if the statute

were construed "to deny a judicial forum for constitutional claims"); *Johnson v. Robison*, 415 U.S. 361, 367 (1974) (similar). Consistent with that precedent, the Supreme Court in *Cuozzo* suggested that § 314(d) would not bar a constitutional challenge to an institution decision—where, for example "a petition fails to give 'sufficient notice' such that there is a due process problem with the entire proceeding." 136 S. Ct. at 2141.

The Supreme Court has been equally clear, however, that courts need not review *every* allegation of constitutional error. If that were the rule, litigants could easily circumvent statutory bars on judicial review by recasting run-of-the-mill procedural challenges as due process claims. Courts can instead decline to review constitutional challenges that are "insubstantial—that is to say, 'essentially fictitious,' 'obviously frivolous,' and 'obviously without merit.'" *Bowen*, 476 U.S. at 681 n.12 (quoting *Hagans v. Lavine*, 415 U.S. 528, 537 (1974)). This Court has followed suit in appeals from the Board's institution decisions. *See, e.g.*, *SightSound Techs., LLC v. Apple Inc.*, 809 F.3d 1307, 1314 n.4 (Fed. Cir. 2015) (finding "no merit" to petitioner's due process argument). And other circuits have done the same in other statutory contexts. *See, e.g.*, *Key Med. Supply, Inc. v. Burwell*, 764 F.3d 955, 965-966 (8th Cir. 2014) ("Because the constitutional claim lacks merit due to the absence of a protected property or liberty interest, it is not a

*substantial* constitutional challenge capable of overcoming the bar on review." (internal quotation marks omitted)).

In this case, Wi-Fi One waived any constitutional claim by failing to raise it to the Board. *Lingamfelter v. Kappos*, 513 F. App'x 934, 937-938 (Fed. Cir. 2012) (finding that patent owner waived statutory and due process challenge to evidentiary issues by failing to properly raise it during *inter partes* proceeding). Indeed, Wi-Fi One never raised a constitutional issue before the present appeal, and fails even now to clearly identify any alleged due process issue or articulate why additional process was constitutionally required. *See* En Banc Br. 52 (arguing without citation that "Wi-Fi One's points of error raise issues of constitutional due process," but describing only alleged errors under the APA); *cf. Mathews v. Eldridge*, 424 U.S. 319, 335, 343 (1976) (setting forth factors to consider in assessing procedural due process claim). Its due process challenges are therefore frivolous and do not merit review under the exception for substantial constitutional claims.

### B. This Court May Review *Ultra Vires* Institution Decisions

*Cuozzo* also suggested that judicial review would be available if the Board "act[ed] outside its statutory limits by, for example, canceling a patent claim for 'indefiniteness under § 112' in inter partes review." 136 S. Ct. at 2141-2142. *Achates* recognized this same "implicit and narrow exception … for claims that the

agency exceeded the scope of its delegated authority." 803 F.3d at 658 (internal quotation marks omitted). *Achates* correctly held, however, that the Board's decision to institute *inter partes* review over a time-bar objection does not fit within this exception. *Id.* at 659.

The origin of the *ultra vires* exception is *Leedom v. Kyne*, 358 U.S. 184 (1958)—a case the Supreme Court subsequently described as "characterized by extraordinary circumstances." *Boire v. Greyhound Corp.*, 376 U.S. 473, 479-480 (1964). The governing statute in *Kyne* prohibited the National Labor Relations Board ("NLRB") from certifying a collective bargaining unit that included both professional and non-professional employees unless a majority of the professional employees voted in favor of inclusion. *Kyne*, 358 U.S. at 184-185. The facts were entirely undisputed: the NLRB certified a combined unit without polling the professional employees, and conceded during the litigation that it "had acted in excess of its powers." *Id.* at 186-187. The Supreme Court held that a district court could review and vacate the NLRB order, notwithstanding previous decisions finding that the governing statute *implicitly* precluded judicial review.

Wi-Fi One would interpret this *ultra vires* exception as permitting review of *every* arguably erroneous decision by the Board. *See, e.g.*, En Banc Br. 19, 36-37 & n.8. But the Supreme Court has rejected that interpretation, holding that *Kyne* should *not* be read "as authorizing judicial review of any agency action that is

alleged to have exceeded the agency's statutory authority." *Board of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991). On the contrary, the Supreme Court has emphasized the "narrow limits" and "painstakingly delineated procedural boundaries" of the *ultra vires* exception. *Boire*, 376 U.S. at 481-482. In *MCorp*, the Supreme Court refused to apply *Kyne* altogether in part because the statute at issue precluded judicial review expressly, not implicitly. *MCorp*, 502 U.S. at 44 (distinguishing *Kyne* based on "the clarity of the congressional preclusion of review"). Even when the exception does apply, the Supreme Court has cautioned against "extend[ing]" it to permit review "whenever it can be said that an erroneous assessment of the particular facts before the Board has led it to a conclusion which does not comport with the law." *Boire*, 376 U.S. at 481-482; *see also Physicians Nat'l House Staff Ass'n v. Fanning*, 642 F.2d 492, 496 (D.C. Cir. 1980) ("That the Board may have made an error of fact or law is insufficient ….").

As several decades of precedent make clear, the *ultra vires* exception does not apply when the agency action at issue "involves a determination of fact and an exercise of judgment." *Clark v. Gabriel*, 393 U.S. 256, 258 (1968); *see also Oestereich v. Selective Serv. Sys. Local Bd. No. 11, Cheyenne, Wyo.*, 393 U.S. 233, 238 (1968) ("exercise of discretion by [the] Board in evaluating evidence" and determining eligibility for relief is not reviewable); *Lepre v. Department of Labor*,

275 F.3d 59, 74 (D.C. Cir. 2001) ("challenge to the … assessment of [the petitioner's] evidence" not reviewable). Nor does the *ultra vires* exception apply when the petitioner's challenge is simply "one of statutory interpretation concerning the scope of agency authority." *Key Med. Supply*, 764 F.3d at 962; *see also American Airlines, Inc. v. Herman*, 176 F.3d 283, 293 (5th Cir. 1999) (the claim "must not simply involve a dispute over statutory interpretation" to be reviewable as *ultra vires* (internal quotation marks omitted)). These restrictions closely map onto the line *Cuozzo* drew between reviewable and nonreviewable agency actions: actions that *clearly* exceed statutory limits may be reviewable, but disputes concerning the "application and interpretation" of relevant statutes are not. *Cuozzo*, 136 S. Ct. at 2141-2142.

The Board's institution of *inter partes* review over a time-bar objection under § 315(b) cannot amount to a reviewable *ultra vires* action—particularly where, as here, the Board's resolution of the issue turns on a fact-intensive determination about whether a party is entitled to additional discovery and whether the requested discovery would establish that a non-party is a "real party in interest" or a "privy" of the petitioner. As described above, Congress expressly contemplated that discovery in *inter partes* reviews would be narrowly confined. In *Garmin*, the Board appropriately set forth five factors for determining whether a petitioner established that discovery is "necessary in the interests of justice,"

including whether the requests are "overly burdensome" and whether the party is already "in possession of evidence tending to show beyond speculation that in fact something useful will be uncovered." IPR2012-00001, Paper 26 at 6-7. The Board's resolution of a time-bar issue under § 315(b) will very often turn on whether the Board properly weighed these factors.

Even if the patent owner does not request additional discovery, the Board must still exercise its judgment in applying the flexible common-law concepts of privity and real parties in interest to the facts of each case. *See supra* pp. 18-19. Indeed, Wi-Fi One acknowledged before the Board that "the determination of who is a real party in interest or privy must be made on the facts of each case." A97. A patent owner's challenge to the Board's assessment of a time-bar issue is thus no more than a challenge to the Board's evaluation of the patent owner's evidence. Even if the Board erred in a particular case, the *ultra vires* exception does not permit review of such "[g]arden-variety errors of law or fact." *Lepre*, 275 F.3d at 74; *see also Herman*, 176 F.3d at 293 (noting the alleged agency action must be "egregious error" to be reviewable).

By contrast, the scenario *Cuozzo* envisioned—the Board's institution of *inter partes* review on a wholly improper ground like indefiniteness—would easily fall under the *ultra vires* exception. That decision would not involve an exercise of discretion or a fact-intensive determination about the application of a statutory

term. As in *Kyne*, the Board's decision would "'on its face' violate[] a statute." *Dart v. United States*, 848 F.2d 217, 222 (D.C. Cir. 1988). This Court need not decide in this case whether any other statutory limits would be susceptible to review under the *ultra vires* exception. *Achates* correctly held that § 315(b) is not. The Board's decision to institute review over a time-bar challenge will rarely "on its face" violate § 315(b), so permitting judicial review would require the Court to wade into evidentiary disputes and second-guess the Board's interpretation and application of the statute to the facts of each case. That is precisely the type of challenge the Supreme Court has indicated should *not* be reviewable under *Kyne*.[8]

### C. The Court May Review Claims That The Board Acted Beyond Its Authority To Invalidate

*Cuozzo* also recognized (without deciding) that review might be available for "appeals … that present other questions of interpretation that reach, in terms of scope and impact, well beyond [§ 314]." 136 S. Ct. at 2141. This Court's decisions in *Achates* and *Versata Development Group, Inc. v. SAP America, Inc.*, 793 F.3d 1306, 1319 (Fed. Cir. 2015), can be understood as preserving the availability of review in precisely those circumstances—that is, where the patent

[8] The Court need not decide in this appeal whether review would be available if, for example, the Board instituted review even after the *petitioner itself* had been served with a complaint alleging infringement more than one year before filing the petition. Under those circumstances, the Court might determine review is warranted under the *ultra vires* exception or mandamus, because there would be no dispute over whether the Board, in its discretion, properly applied the fact-intensive privity standard to the facts of the case.

owner challenges not just an aspect of the Board's institution decision, but also a "defining characteristic" of the Board's "ultimate authority to invalidate a patent claim." *Achates*, 803 F.3d at 657.

*Versata* arose under the narrower post-grant review process available for covered business method (CBM) patents under § 18 of the AIA. This Court held that the Board's determination of whether a challenged patent qualifies as a CBM patent can be appealed, notwithstanding a no-appeal provision similar to § 314(d). *Versata*, 793 F.3d at 1320. As the Court explained, "one of the limits on § 18 invalidation authority is that the patent at issue be a CBM patent." *Id.* "If a particular patent is not a CBM patent, there is *no proper pleading* that could be filed to bring it within the [Board]'s § 18 authority." *Id.* (emphasis added). An incorrect determination that a patent qualifies for CBM review thus necessarily tainted not just the institution decision under § 314, but also the final written decision under § 318, because the Board lacked any authority to review the patent at issue. *Id.* *Achates* properly recognized the narrowness of *Versata*'s holding: "The basis for this court's review of the CBM issue in *Versata II* was … that it *uniquely and fundamentally* related to the Board's 'ultimate authority to invalidate' *onl*y CBM patents in a CBMR proceeding." *Achates*, 803 F.3d at 657 (emphases added); *see also id.* (explaining *Versata* is "limited to the unique circumstances of CBMR").

Section 311 clearly sets forth the scope of the Board's invalidation authority in an *inter partes* review proceeding: the Board may "cancel as unpatentable 1 or more claims of a patent *only* on a ground that could be raised under section 102 or 103 and *only* on the basis of prior art consisting of patents or printed publications." 35 U.S.C. § 311(b) (emphases added). The Board's authority to invalidate thus depends on the grounds for the challenge; the Board cannot, for example, invalidate a patent for indefiniteness under § 112. Unlike the Board's § 18 authority, however, its authority to invalidate in *inter partes* review does not depend on the nature of the patent at issue.

Nor does the Board's authority depend on a petitioner's compliance with the time-bar in § 315(b). As *Achates* explained, "[w]hether an IPR petition is filed one year after the petitioner is served with an infringement complaint or one year and a day is not [a defining] characteristic because compliance with the time-bar does not itself give the Board the power to invalidate a patent." 803 F.3d at 657-658. Indeed, the Board's authority arguably does not depend on the identity of the petitioner at all. Other provisions expressly allow the Board to invalidate a patent even after the original petitioner and the patent owner have settled, 35 U.S.C. § 317(a), and allow a time-barred party to join an *inter partes* review proceeding, *id.* § 315(c). Congress viewed § 315(b) as simply a filing deadline, not a substantive limit on the Board's invalidation authority. In extended remarks on

§ 315(b), Senator Kyl repeatedly referred to the time-bar as a "deadline." *E.g.*, 157 Cong. Rec. S5429 (daily ed. Sept. 8, 2011) ("it is important that the section 315(b) deadline afford defendants a reasonable opportunity to identify and understand the patent claims that are relevant to the litigation"); *see also* H.R. Rep. No. 112-98 at 163-164 (additional views of Reps. Berman, Watt, and Lofgren). Thus, like other filing deadlines, the purpose of the time-bar is to "effectuate[] the orderly progress of inter partes review." *Husky*, 838 F.3d at 1244. That holding is consistent with Supreme Court precedent holding that filing deadlines are "nonjurisdictional"—*i.e.*, do not implicate an agency's ultimate authority to adjudicate a claim—absent a clear statement to the contrary. *Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 825 (2013).[9]

[9] Wi-Fi One argues (at 36-38) that *Achates* rests on a distinction between "jurisdictional" and "nonjurisdictional" issues that the Supreme Court rejected in *City of Arlington v. FCC*, 133 S. Ct. 1863 (2013). That is incorrect: the distinction *Achates* drew is between issues that define the Board's authority to *invalidate* a patent and those that do not. 803 F.3d at 657-658. In any event, *City of Arlington* merely held in the *rulemaking* context that a court determining whether to grant deference to an agency's interpretation of a statute need not decide whether the interpretation qualifies as "jurisdictional," because "the question in every case is, simply, whether the statutory text forecloses the agency's assertion of authority, or not." *Id.* at 1870-1871; *see also id.* at 1869. But saying the distinction is irrelevant for *Chevron* purposes is not the same as rejecting the distinction in full. In fact, as noted above, the Court has recognized certain statutory limitations—including filing deadlines—as "nonjurisdictional" in the context of agency adjudication. *See Auburn Reg'l Med. Ctr.*, 133 S. Ct. at 825.

Wi-Fi One and its *amici*'s attempts to recast § 315(b) as a substantive limit on the Board's invalidation authority are meritless. One *amicus* points out, for example, that § 315(b) provides that an *inter partes* review "*may not be instituted*" if the petitioner is time-barred. *See* NYIPLA Br. 4-5. That formulation, however is nearly identical to the language at issue in *Cuozzo*. Section 312(a) provides that a petition "*may be considered*" by the Board "*only if* … the petition identifies, in writing and with particularity, each claim challenged." Both sections, by their terms, limit the Board's authority to take certain actions, and *Cuozzo* nonetheless held that a claim under § 312(a)(3) is nonappealable. There is no functional difference between the wording of the two sections—and certainly not one that would justify a result different from the one the Supreme Court reached in *Cuozzo*. The timeliness requirement of § 315(b) is no less related to the Board's decision to institute *inter partes* review than is the particularity requirement of § 312(a)(3).

Wi-Fi One also correctly notes (at 46) that a Board regulation entitled "Jurisdiction" requires petitioners to comply with all relevant deadlines. 37 C.F.R. § 42.3(b). That, too, is irrelevant. Only Congress—not the agency itself—can determine which issues are reviewable on appeal. Otherwise, the Board could adopt a regulation declaring that § 312(a)(3) pleading defects *are* jurisdictional and thereby permit judicial review in an area where (as *Cuozzo* recognized) Congress intended to preclude it. As explained above, Congress intended to preclude review

of the Board's determination that a petition is timely filed under § 315(b). The Board's regulations have no bearing on this Court's obligation to give effect to Congress's intent.

### D. These Narrow Exceptions Do Not Extend To All Challenges To The Board's Process

*Cuozzo* and *Achates* properly recognized narrow exceptions for constitutional challenges, *ultra vires* decisions, and decisions exceeding the Board's authority to invalidate a particular patent. Wi-Fi One asks the Court to read yet another exception into the statute—one that "permit[s] judicial review of the *process* by which the agency made the decision." En Banc Br. 3. Under that purported exception, it seeks review of garden-variety APA claims, including whether the Board's institution decision was adequately explained and supported by substantial evidence. En Banc Br. 51-53. That interpretation of the statute is fundamentally incorrect. Absent a colorable due process claim, § 314(d) prohibits the Court from reviewing challenges to the Board's "process" in rendering an institution decision.

By their plain terms, the judicial-review provisions of the APA do not apply where "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a); *see also NLRB v. United Food & Commercial Workers Union, Local 23, AFL-CIO*, 484 U.S. 112, 130-131 (1987) ("review under the APA is unavailable … where 'statutes preclude judicial

review'"); *Block*, 467 U.S. at 345 (the APA does not confer any "cause of action to the extent the relevant statute preclude[s] judicial review" (internal quotation marks omitted)). The APA's legislative history confirms this understanding of the statute. *See, e.g.*, S. Rep. No. 752, 79th Cong., 1st Sess. at 26 (1945) ("Section 10 on judicial review does not apply in any situation so far as there are involved matters with respect to which statutes preclude judicial review …."); H.R. Rep. No. 1980, 79th Cong., 2d Sess. at 275 (1946) (same); S. Rep. No. 752 at 43, Attorney General's Statement (Oct. 19, 1945) ("[The APA] provides for judicial review except insofar as statutes preclude it[.]"). The Supreme Court's statement in *Cuozzo* that "shenanigans" by the Board "may be properly reviewable in the context of § 319 and under the Administrative Procedure Act," 136 S. Ct. at 2141-2142, did not overturn this longstanding principle. The Court simply recognized that APA challenges are available where § 314(d) does *not* preclude review—for example, where the challenge is not closely tied to the institution determination. Here, because § 314(d) *does* bar appeals of the Board's time-bar determinations under § 315(b), this Court cannot consider Wi-Fi One's collateral challenges to those decisions under the APA.

This Court has specifically held the APA cannot be used as a tool to circumvent § 314(d). "Allowing an APA challenge to the Board's decision to institute on the basis that the Board had insufficiently articulated its reasoning

would eviscerate § 314(d) by allowing substantive review of the institution decision." *HP Inc. v. MPHJ Tech. Inv., LLC*, 817 F.3d 1339, 1347 (Fed. Cir. 2016). *Cuozzo* further supports that conclusion. Under Wi-Fi One's theory, the precise issue that *Cuozzo* held was nonappealable could, in fact, be appealed if recast as a challenge to whether the Board sufficiently explained its decision to institute review notwithstanding the alleged defect in the pleadings. That cannot be what *Cuozzo* intended.

In any event, even if some procedural challenges might theoretically be appealable, Wi-Fi One's complaints amount to nothing more than a challenge to the Board's ultimate determination to institute review. Wi-Fi One received all the process to which it was entitled under the APA: an opportunity to request discovery (A44-54), a thorough adjudication of whether it was entitled to that discovery based on an application of the relevant factors (A75-91), and a full assessment of whether the requested discovery would establish privity under § 315(b) (*id.*). Even if judicial review were available in some cases, no further review would be warranted here.

## III. MANDAMUS SHOULD REMAIN AVAILABLE IN EXTRAORDINARY CASES

The principal concern of Wi-Fi One and its *amici* seems to be the possibility that the Board will enjoy carte blanche to disregard the time-bar when making institution determinations. *E.g.*, En Banc Br. 48. As explained above, Congress

intended to give the Board wide latitude to make institution decisions without being subject to appeal, particularly where the decision requires the Board to interpret and apply broad statutory standards like "privity." If, however, the Court seeks to guarantee that patent owners will have an avenue to obtain relief if the Board simply ignores a glaring time-bar issue, the Court should clarify that mandamus remains available in an appropriately extraordinary case. *Cheney v. U.S. Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 380 (2004) (noting that mandamus is a "'drastic and extraordinary' remedy 'reserved for really extraordinary causes'").

Consistent with longstanding precedent, mandamus should be available only where the petitioner can show the Board violated a "clear and indisputable" right. *Id.* at 381; *see, e.g.*, *SightSound*, 809 F.3d at 1314 (assuming mandamus would be available but finding "no basis for mandamus relief on the Board's initiation decision, because 'the situation here is far from satisfying the clear-and-indisputable requirement for mandamus'"); *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1275 (Fed. Cir. 2015) (assuming mandamus would be available but finding the patent owner failed to establish a "clear and indisputable right that preclude[d] institution of the IPR proceeding"). Wi-Fi One would fall well short of meeting that standard, given the fact-bound nature of the dispute and the

Board's well-reasoned explanation for concluding that even with the sought-after discovery, Wi-Fi One would not be able to establish privity.

## CONCLUSION

For the foregoing reasons, Appellee respectfully requests that the en banc Court reaffirm *Achates* and hold that a patent owner may not appeal the Patent Trial and Appeal Board's determination that a petition for *inter partes* review is timely filed under 35 U.S.C. § 315(b), and affirm the Board's decisions.

Respectfully submitted,

/s/ Dominic E. Massa

DOMINIC E. MASSA
KATIE M. SAXTON
KEVIN A. GOLDMAN
ZACHARY P. PICCOLOMINI
JANINE M. LOPEZ
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

*Attorneys for Appellee Broadcom Corporation*

March 15, 2017

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 15th day of March, 2017 I filed the foregoing Supplemental Brief for Appellee Broadcom Corporation on Rehearing En Banc with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system, which will send notice of such filing to all registered CM/ECF users.

/s/ Dominic E. Massa
DOMINIC E. MASSA
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certifies that this brief complies with the type-volume limitation of Circuit Rule 32(a).

1. Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 11,707 words.

2. The brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Dominic E. Massa
DOMINIC E. MASSA
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

March 15, 2017