**Nos. 2015-1944, -1945, -1946**

# United States Court of Appeals for the Federal Circuit

WI-FI ONE, LLC,

*Appellant*,

v.

BROADCOM CORPORATION,

*Appellee*,

MICHELLE K. LEE, Director, U.S. Patent and Trademark Office,

*Intervenor*.

On Appeals From the United States Patent and Trademark Office,
Patent Trial and Appeal Board Case Nos. 2013IPR-00601, -00602, -00636

## BRIEF OF INTEL CORPORATION AS *AMICUS CURIAE* IN SUPPORT OF APPELLEE

Paul D. Clement
*Counsel of Record*
George W. Hicks, Jr.
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200
paul.clement@kirkland.com

Matthew J. Hult
INTEL CORPORATION
2200 Mission College Blvd.
Santa Clara, CA 95054

Sopan Joshi
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654

*Counsel for Intel Corporation*

March 27, 2017

## CERTIFICATE OF INTEREST

Pursuant to Federal Rule of Appellate Procedure 26.1 and Federal Circuit Rules 29 and 47.4, counsel for *amicus curiae* Intel Corporation certifies the following:

1. The full name of every party or *amicus* represented by me is:

   Intel Corporation

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   None

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or *amicus curiae* represented by me are:

   None

4. The names of all law firms and the partners or associates that appeared for the party or *amicus* now represented by me in the trial court or agency or are expected to appear in this Court are:

   Matthew J. Hult of Intel Corporation

   Paul D. Clement, George W. Hicks, Jr., and Sopan Joshi of Kirkland & Ellis LLP

DATED: March 27, 2017

*/s/ Paul D. Clement*
Paul D. Clement

*Counsel for Intel Corporation*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........ i

TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iii

INTEREST OF *AMICUS CURIAE* ........ 1

SUMMARY OF ARGUMENT ........ 3

ARGUMENT ........ 6

I. The Text And Structure Of The AIA Preclude Judicial Review Of Arguments That Institution Of An IPR Was Time-Barred By §315(b). ........ 6

II. *Cuozzo* Confirms That PTO Decisions to Institute IPRs Over Objections That a Petition was Time-Barred Are Not Appealable. ........ 9

III. Appellate Review Of an Institution Decision, Based on An Allegedly Untimely Petition, Is Inconsistent With the AIA. ........ 14

A. IPRs Have Fulfilled Congress' Goal of Creating an Efficient Administrative Process That Eliminates Non-Meritorious Patents ........ 15

B. Appellate Review of Institution Decisions Would Thwart Congress' Objectives And Only Grant a Windfall to Owners of Invalid Patents ........ 19

IV. Alternative Remedies Remain Available To Handle Extraordinary Circumstances. ........ 23

CONCLUSION ........ 25

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs. v. Andrx Pharms., Inc.*,
452 F.3d 1331 (Fed. Cir. 2006) ....................21

*Achates Reference Publ'g, Inc. v. Apple Inc.*,
803 F.3d 652 (Fed. Cir. 2015) ....................1-4, 20-21, 23-24

*Broadcom Corp. v. Telefonaktiebolaget LM Ericsson*,
Nos. IPR2013-00601, -00602, -00636, Paper 23 (PTAB Jan. 24, 2014) ....................8

*Cheney v. U.S. Dist. Court for D.C.*,
542 U.S. 367 (2004)....................23

*Click-to-Call Techs., LP v. Oracle Corp.*,
No. 2015-1242, 2016 WL 6803054 (Fed. Cir. Nov. 17, 2016) .......... 12-13, 24

*Cuozzo Speed Techs., LLC v. Lee*,
136 S. Ct. 2131 (2016)....................3-7, 9-15, 20, 23-24

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006)....................18

*Ericsson Inc. v. D-Link Corp.*,
No. 10-cv-473 (E.D. Tex. May 8, 2015) ....................2

*Ericsson, Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014) ....................2

*Oracle Corp. v. Click-to-Call Techs., LP*,
No. IPR2013-00312, 2013 WL 11311788 (PTAB Oct. 30, 2013)....................12

*Simmons v. Himmelreich*,
136 S. Ct. 1843 (2016)....................7

*St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*,
749 F.3d 1373 (Fed. Cir. 2014) ....................7, 23

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*,
793 F.3d 1306 (Fed. Cir. 2015) ....................7

*Wi-Fi One, LLC v. Broadcom Corp.*,
__ F. App'x __, 2016 WL 4933344 (Fed. Cir. Sept. 16, 2016) .......... 19

*Wi-Fi One, LLC v. Broadcom Corp.*,
__ F. App'x __, 2016 WL 4933418 (Fed. Cir. Sept. 16, 2016) .......... 19

*Wi-Fi One, LLC v. Broadcom Corp.*,
837 F.3d 1329 (Fed. Cir. 2016) .......... 19

**Statutes**

35 U.S.C. §311 .......... 4, 8

35 U.S.C. §312 .......... 4, 8, 10

35 U.S.C. §312(a) .......... 13

35 U.S.C. §312(a) (2006 ed.) .......... 17

35 U.S.C. §312(a)(3) .......... 9, 13-14

35 U.S.C. §314(a) .......... 17

35 U.S.C. §314(d) .......... 3-4, 6-11, 13-14, 23-24

35 U.S.C. §315 .......... 4, 10

35 U.S.C. §315(b) .......... 2-4, 6-14, 19, 21-24

35 U.S.C. §315(c) .......... 21

35 U.S.C. §316 .......... 6

35 U.S.C. §316(a)(11) .......... 16

35 U.S.C. §316(c) .......... 16

35 U.S.C. §317(a) .......... 20

35 U.S.C. §318(a) .......... 7

35 U.S.C. §319 .......... 16

America Invents Act,
Pub. L. 112-29, 125 Stat. 284 (Sept. 16, 2011) .......... 1, 3, 6

American Inventors Protection Act of 1999,
Pub. L. No. 106-113, 113 Stat. 1501A-552 ........................................................15

**Rules and Regulations**

37 C.F.R. §§42.120-42.123........................................................................6

Fed. R. App. P. 29(a)(4)(E)........................................................................1

**Other Authorities**

157 Cong. Rec. S5326 (daily ed. Sept. 6, 2011)...............................................16, 20

157 Cong. Rec. S5409 (daily ed. Sept. 8, 2011).........................................14, 20, 22

H.R. Rep. 112-98 (June 1, 2011) ................................................................ 16-17, 22

U.S. PTO, Patent Trial and Appeal Board Statistics, January 2017,
available at www.uspto.gov/sites/default/files/documents/
aia_statistics_january2017.pdf..........................................................................17

U.S. PTO, U.S. Patent Statistics Chart, 1963–2015, www.uspto.gov/
web/offices/ac/ido/oeip/taf/us_stat.htm .............................................................17

# INTEREST OF *AMICUS CURIAE*

Intel Corporation is the largest semiconductor company in the world, designing, manufacturing, and selling microprocessors, flash memory, and other integrated circuit products.[1] Intel also has one of the largest patent portfolios in the country, comprising roughly 27,000 U.S. patents. Intel, thus, has a significant interest in a well-functioning patent system that issues high-quality patents for truly worthwhile innovations. Intel has a related interest in having an efficient post-grant review available as an alternative to expensive and time-consuming patent litigation, which in the past has been the primary vehicle to challenge the validity of weak patents.

In the America Invents Act (AIA), Pub. L. 112-29, 125 Stat. 284 (Sept. 16, 2011), Congress adopted inter partes review (IPR) proceedings to allow the Patent and Trademark Office (PTO or Patent Office) to quickly weed out low-quality patents based on prior art provided by the petitioner. An efficient IPR process, which cancels patent claims that never should have been issued, is important to the patent system and the national economy. This Court's decision in *Achates*

---

[1] No party's counsel authored this brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting this brief. No person—other than Intel Corporation or its counsel—contributed money that was intended to fund preparing or submitting this brief. *See* Fed. R. App. P. 29(a)(4)(E). This Court's January 4, 2017 order granting rehearing en banc allows the filing of *amicus* briefs without consent and leave of court.

*Reference Publ'g, Inc. v. Apple Inc.*, 803 F.3d 652 (Fed. Cir. 2015), is important to the efficient administration of IPRs. *Achates* correctly held that the AIA precludes judicial review of decisions by the PTO to institute IPR based on its assessment of the one-year time bar in 35 U.S.C. §315(b). That should remain the law of this Court.

In addition to its general interests in the administration of our patent system, Intel has a specific interest in the outcome of this particular case. In the IPRs at issue, the PTO invalidated 24 claims in three patents owned by appellant Wi-Fi One, LLC (U.S. Patent Nos. 6,772,215, 6,446,568, and 6,424,625). Those same patents were at issue in a separate action, *Ericsson Inc. v. D-Link Sys., Inc.* (E.D. Tex.), where a jury found nine defendants (including Intel) liable for infringing five of these claims. Although this Court subsequently affirmed the jury finding infringement as to four claims, the Court remanded for a new trial on damages. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201 (Fed. Cir. 2014). That trial has not yet occurred; the case has been administratively closed in the district court awaiting the conclusion of the IPR proceedings and appeals. See Order at 1-2, *Ericsson Inc. v. D-Link Corp.*, No. 10-cv-473 (E.D. Tex. May 8, 2015), ECF No. 711. The outcome of this case is therefore expected to directly affect Intel's interests in the *Ericsson* case.

## SUMMARY OF ARGUMENT

Less than a year ago, the Supreme Court held unequivocally that §314(d) bars judicial review of "mine-run claim[s] … involving the Patent Office's decision to institute inter partes review." *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2136 (2016). That is exactly what this case involves: a routine challenge to a "decision to institute inter partes review," based on the argument that the petitioner was supposedly in privity with parties to an earlier case, and thus should have been time-barred under §315(b). As this Court previously concluded, that is the kind of decision that Congress entrusted to the PTO, not the courts, and with good reason. Invalidation of improper patents is ultimately in the *public interest*—not just the interest of particular parties before the PTO. Indeed, *Achates* found nothing in the text, structure, or purpose of the AIA permits judicial review of an IPR institution decision after the Board has reached a decision on the merits, regardless of the timeliness of the petition. *Achates* was correct the day it was decided, and, nothing in *Cuozzo* undermines the correctness of that decision today—quite the opposite.

*First*, the text and structure of the AIA make clear that the limit on reviewing institution decisions broadly encompasses challenges to the timeliness of petitions under §315(b). Section 314(d) unequivocally states that "[t]he determination … whether to institute an inter partes review under this section shall

be final and nonappealable." That should be the end of the matter. Certainly nothing in the text suggests that *some* institution decisions are nonetheless reviewable, and it makes no sense to carve out cascading exceptions for purportedly untimely petitions or other alleged failures to satisfy petition requirements. Nothing about §314(d)'s use of the phrase "under this section" changes that result. To the contrary, that "section" is *the section that describes the process of instituting IPRs*. That is precisely what makes clear that institution decisions are unreviewable. It makes no difference that other sections, whether §311, §315, or the substantive requirements of §312 (as in *Cuozzo*), address what is required for institution *under §314*. Under appellant's approach, *every* challenge to an institution decision could be recast to avoid §314(d), rendering it a meaningless limitation. That cannot be the law, and *Achates* rightly rejected such an approach.

*Second*, any lingering doubts on this issue were resolved by *Cuozzo*. In that case, the Supreme Court made clear that the PTO's determination of any question "closely related to th[e] decision to institute inter partes review" is not appealable. 136 S. Ct. at 2142. And here, the question whether an IPR petition was timely is not just "closely related," but inseparable from the PTO's decision to institute. *Cuozzo* provides no basis for changing the law.

*Third*, appellate review of IPR institution decisions would thwart Congress' purposes in creating IPRs, implicating the very issues that persuaded the Supreme Court to affirm this Court in *Cuozzo*. Congress intended IPR to be an efficient method for the PTO to weed out non-meritorious patents that it never should have issued. So far it has achieved that goal: IPRs move and conclude swiftly. Moreover, once the PTO has decided the matter on the merits, and come to the conclusion that a patent should not have issued—a determination that benefits the public, not merely a petitioner—it would be bizarre for this Court to undo that decision based on the determination that an IPR should not have been instituted in the first place. Indeed, Congress specifically anticipated and allowed for a situation where the parties to IPR proceedings settle their disputes after institution, but the PTO can continue the IPR process, precisely because the public interest is at stake. *Cuozzo* was just such a case. Lastly, anyone else in the world could subsequently challenge the same patent on the same grounds in a subsequent petition. Resuscitating an invalid patent based on alleged petition insufficiencies (whether based on a disagreement over privity, timeliness, or the particularly of allegations in a petition, as at issue in *Cuozzo*) makes no sense, and would be an exercise in pointless repetition and delay. That is plainly not what Congress intended. What appellant seeks, thus, is a windfall. After all, if on the merits the

patent should not have been invalidated, then this Court can say so on appeal—review of *that* decision is not restricted by §314(d).

*Finally*, there are tools—such as mandamus—to permit review of institution decisions in particularly extraordinary circumstances. This case, however, presents nothing of the sort.[2] It involves a garden-variety claim that the PTO's factbound assessment of privity was incorrect. Accordingly, there is no need for this Court to canvass the full scope of any alternative remedies that might conceivably permit reviewability, and no reason to contort the AIA to permit an appeal here.

## ARGUMENT

### I. The Text And Structure Of The AIA Preclude Judicial Review Of Arguments That Institution Of An IPR Was Time-Barred By §315(b).

This case begins and should end with the text of §314(d), which provides in no uncertain terms that "[t]he determination … whether to institute an inter partes review under this section shall be *final and nonappealable*." There is no doubt that when the PTO declines to institute review, that decision is unappealable, even if erroneous. *See Cuozzo*, 136 S. Ct. at 2140. The same is true when the PTO institutes review, even though the proceeding moves on to a second stage—a trial before the Patent Trial and Appeal Board (PTAB or Board). 35 U.S.C. §316; *see also* 37 C.F.R. §§42.120-42.123. Although the Board's decision on the merits is

[2] The mandamus Ericsson sought in relation to the IPRs here sought to overturn the PTO's denial of discovery as to privity issues. *See infra* n.4. This Court denied the request for mandamus. *Id.*

appealable (a "final written decision," 35 U.S.C. §318(a)), that does not provide an opportunity to revisit the institution decision. The Supreme Court could not have been clearer about that in *Cuozzo*: "Cuozzo's contention that the Patent Office unlawfully initiated its agency review is *not appealable*." *Cuozzo*, 136 S. Ct. at 2139 (emphasis added).

Indeed, as this Court recognizes, "institution and invalidation are two distinct actions." *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1319 (Fed. Cir. 2015). This Court has, thus, rejected various attempts to bootstrap review of institution decisions through review of the merits. *St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, 749 F.3d 1373, 1375-76 (Fed. Cir. 2014). Nothing in §314(d) permits such bootstrapping. Congress was clear in barring *any* review of institution decisions, and "[a]bsent persuasive indications to the contrary, [courts] presume Congress says what it means and means what it says." *Simmons v. Himmelreich*, 136 S. Ct. 1843, 1848 (2016).

The clear language of §314(d) unquestionably applies to an argument on appeal that an IPR was instituted in violation of the timing limitations in §315(b). Section 315(b) addresses when "inter partes review may not be instituted."[3] A

[3] Section 315(b) provides in pertinent part that "[a]n inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent." 35 U.S.C. §315(b).

challenge to an institution decision based on timeliness under §315(b) is, by definition, a challenge to a "determination … whether to institute an inter partes review" under §314. Section 314(d), in turn, renders such determinations "final and nonappealable," and precludes review of a determination that a petition either was or was not timely under §315(b).

Resisting this straightforward textual interpretation, Wi-Fi One relies on the phrase "under this section" in §314(d) to argue that a §315(b) timeliness decision is exempted from the appeal ban. That makes no sense. The PTO does not institute an IPR under §315(b) any more than it institutes under §311 or §312. Those provisions simply provide the requirements the PTO must analyze in making an institution decision under §314. Make no mistake, Wi-Fi One's real complaint is it believes the PTO *instituted proceedings* under §314 in a manner it believes to be improper—*i.e.*, by failing to accept a speculative claim that there may have been privity between Broadcom and one or more (unspecified) of the defendants in *Ericsson* simply because of a boilerplate indemnity provision in Broadcom's customer contracts. *See Broadcom Corp. v. Telefonaktiebolaget LM Ericsson*, Nos. IPR2013-00601, -00602, -00636, Paper 23 (PTAB Jan. 24, 2014).[4] The fact

[4] The brief for the PTO describes more fully the history of Wi-Fi One's conclusory privity assertion, including its unsupported request for broad-ranging discovery and its subsequent petition for mandamus to this Court after the PTO denied that request. *See* PTO Br. 5-6.

that Wi-Fi One believes the PTO erred in its application of §315(b) in making an institution decision under §314 has no bearing on the applicability of §314(d). At bottom, the PTO instituted proceedings under §314, and *that* decision is not appealable because "that is what §314(d) says." *Cuozzo*, 136 S. Ct. at 2139.

## II. *Cuozzo* Confirms That PTO Decisions to Institute IPRs Over Objections That a Petition was Time-Barred Are Not Appealable.

The Supreme Court's *Cuozzo* decision eliminates all doubt that IPR institution decisions based on petitions purportedly violating §315(b)'s time bar are not appealable. Although *Cuozzo* specifically addressed whether an IPR institution violating §312(a)(3)'s particularity requirement is reviewable, its holding is equally applicable here. After reviewing the text, structure, and purpose of §314(d)'s nonappealability provision, the Court held that the provision "applies where the grounds for attacking the decision to institute inter partes review consist of questions that are closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review." *Cuozzo*, 136 S. Ct. at 2141. Put another way: "[W]here a patent holder grounds its claim in a statute closely related to th[e] decision to institute inter partes review, §314(d) bars judicial review." *Id.* at 2142; *see also id.* at 2139 (noting that the case involved "the application of certain relevant patent statutes concerning the Patent Office's decision to institute inter partes review").

Given *Cuozzo*, the only question that possibly remains is whether the arguments Wi-Fi One seeks to make are "closely related" to the provisions governing the PTO's institution decision. Challenges to institution based on purported violations of §315(b) plainly are. It is hard to see how the challenge here could be any closer: As explained above, §315(b) supplies one of the requirements the PTO must evaluate to make an institution decision, since an IPR "may not be instituted" unless the timeliness requirements of §315(b) are satisfied. 35 U.S.C. §315(b). If §312, the very provision at issue in *Cuozzo*, is "closely related," §315 must also be.

Arguments that the institution decision here was inconsistent with §315(b)'s time bar also do not fit any of the three exceptions to nonappealability that *Cuozzo* hypothesized. Though *Cuozzo* adopted a broad "no appeal" construction of §314(d), the Court remarked: "[W]e need not, and do not, decide the precise effect of §314(d) on appeals [1] that implicate constitutional questions, [2] that depend on other less closely related statutes, or [3] that present other questions of interpretation that reach, in terms of scope and impact, well beyond 'this section.'" *Cuozzo*, 136 S. Ct. at 2141.

The first exception—"appeals that implicate constitutional questions"—is self-evidently inapplicable. As for the second, that falls with the argument discussed above. All of the provisions setting forth the content and timing for

petitioning and initiating review are closely related to the institution decision. As for the third potential exception, the argument that an institution decision was inconsistent with §315(b) does not "present other questions of interpretation that reach, in terms of scope and impact, well beyond 'this section.'" Again, as *Cuozzo* explained, the "this section" clause refers to §314, titled "Institution of inter partes review," and for the reasons discussed above what Wi-Fi One seeks to do is challenge an institution decision—no more and no less. To be clear, there is no reason for the PTO even to address, much less resolve, the question whether a petitioner is a "privy" to a defendant in a separate litigation matter, but for its impact on the decision whether to institute an IPR under §314.

Even the *Cuozzo* dissenters recognized that, under the majority's reasoning, §314(d)'s bar on judicial review encompasses an argument that an IPR was improperly instituted due to an untimely petition (including, as here, because the PTO allegedly made an incorrect privity determination). Citing §315(b) in particular, the dissent described "problems" that would arise if, *inter alia*, "the Patent Office fails to enforce the prohibitions against instituting inter partes review at the behest of challengers … that were sued for infringement more than a year before seeking inter partes review." 136 S. Ct. at 2154 (Alito, J., dissenting). Yet, the dissent stated, "according to the Court, Congress made courts powerless to correct such [alleged] abuses." *Id.* The dissent further remarked that a "petition's

timeliness, no less than the particularity of its allegations, is 'closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate review,' and *the Court says that such questions are unreviewable*." *Id.* at 2155 (emphasis added, ellipsis omitted). The dissent may have disagreed with that result, but it left no doubt that this was what the majority intended.

Finally, the "shenanigans" the dissent posited, *id.*—which did not move the *Cuozzo* majority—are far removed from the garden-variety error asserted here. Indeed, in *Cuozzo*, the PTO reviewed claims that *had not even been raised by the petitioner*. 136 S. Ct. at 2138. That certainly comes closer to *ultra vires* conduct than here, where the PTO simply made a fact-bound decision regarding privity with which the patent holder disagrees. If the former did not merit judicial review in *Cuozzo*, neither does the latter merit judicial review here.[5]

The Supreme Court's reasoning in *Cuozzo* also provides a complete answer to the reviewability argument made by *amicus* American Intellectual Property Law Association (AIPLA). AIPLA contends that §315(b) "limits the Board's authority to institute proceedings and invalidate claims." Brief for AIPLA as *Amicus Curiae*

---

[5] Or consider the "error" asserted in *Click-to-Call Techs., LP v. Oracle Corp.*, No. 2015-1242, 2016 WL 6803054 (Fed. Cir. Nov. 17, 2016). Having had its patents invalidated in IPR proceedings, the patent holder attempted to invoke the §315(b) time bar based on a lawsuit against the petitioner that, years earlier, had been *voluntarily dismissed without prejudice* by the plaintiff (a licensee of the original patentee). *See Oracle Corp. v. Click-to-Call Techs., LP*, No. IPR2013-00312, 2013 WL 11311788, at *6 (PTAB Oct. 30, 2013).

3.[6] AIPLA asks: "*who violates* §315(b) when a petition is filed, and instituted, after the one-year statutory period?" And it answers: "Not the petitioner," but instead "the Office," which "violates the statute by instituting review based on that petition." *Id.* at 4. AIPLA complains, thus, that the PTO exceeds its statutory authority if it institutes IPR proceedings in contravention of §315(b). That misses the point. Every error by the PTO could be recast as a violation of authority. But no matter how cast, the argument is that the PTO erred in an *institution decision under §314*. That is precisely what §314(d) removes from judicial review, as *Cuozzo* recognized. Moreover, the same thing could be said for the requirement in §312(a)(3) at issue in *Cuozzo*: that a petition "identif[y], in writing and with particularity, each claim challenged." Section 312(a) makes clear that a petition "may be considered only if" that condition is met. But "considered" by whom? The PTO, of course—not the petitioner. Under the AIPLA's logic, therefore, §312(a) also "limits the Board's authority to institute proceedings and invalidate claims," and instituting IPR proceedings despite an alleged violation of §312(a)(3)'s particularity requirement similarly "exceed[s] the PTO's statutory authority." *Click-to-Call*, 2016 WL 6803054, at *4.

---

[6] This argument echoes a pair of concurring opinions in *Click-to-Call*. *See* 2016 WL 6803054, at *4 (O'Malley, J., concurring); *id.* at *8 (Taranto, J., concurring).

*Cuozzo*, of course, held that the PTO's determination that IPR *can* be instituted because a petition *has* satisfied §312(a)(3)—whether erroneous or not—is not appealable under §314(d). By the same reasoning, the PTO's determination that IPR *can* be instituted because a petition *has* satisfied §315(b)—despite the patent holder's objections—is also not appealable under §314(d). In short, what is true for §312(a)(3) must also be true for §315(b); there is no meaningful basis for distinguishing them in this context (and AIPLA provides none). Whether cast as "statutory authority" or just simple error, this Court cannot review an argument that the PTO erred by instituting an untimely IPR

## III. Appellate Review Of an Institution Decision, Based on An Allegedly Untimely Petition, Is Inconsistent With the AIA.

Congress created IPR proceedings with one goal in mind: "to ensure that … poor-quality patents can be weeded out through administrative review." 157 Cong. Rec. S5409 (daily ed. Sept. 8, 2011) (Sen. Schumer). Since IPRs were established, the PTO has diligently reviewed and invalidated patents it initially issued, with the benefit of a more focused prior art record and more fulsome resources than were available during the original prosecution. In Intel's experience, most IPR petitions involve patents as to which patent holders—often non-practicing entities—are actively seeking to extract rents by asserting the patents either in pending litigation or in licensing demands. Allowing the holder of an invalid patent to retroactively upend an institution decision would thwart Congress' goals by needlessly delaying

the PTO's canceling of invalid claims, and be contrary to the public interest. Even if the petitioner and respondent settle after institution, the PTO has the discretion to continue an IPR proceeding, and often does—as in *Cuozzo* itself. The reason is simple: Invalid patents are a scourge, not only to the petitioner, but to the public writ large. To have the PTO's ultimate determination of unpatentability unwound based on revisiting the institution decision, thus, is a windfall to the patent owner and a burden on the public.

The Supreme Court recognized as much in *Cuozzo*:

> Moreover, a contrary holding would undercut one important congressional objective, namely, giving the Patent Office significant power to revisit and revise earlier patent grants. See H. R. Rep., at 45, 48 (explaining that the statute seeks to "improve patent quality and restore confidence in the presumption of validity that comes with issued patents"); 157 Cong. Rec. 9778 (2011) (remarks of Rep. Goodlatte) (noting that inter partes review "screen[s] out bad patents while bolstering valid ones"). We doubt that Congress would have granted the Patent Office this authority, including, for example, the ability to continue proceedings even after the original petitioner settles and drops out, §317(a), if it had thought that the agency's final decision could be unwound under some minor statutory technicality related to its preliminary decision to institute inter partes review.

136 S. Ct. at 2139-40 (brackets in original). So too here.

### A. IPRs Have Fulfilled Congress' Goal of Creating an Efficient Administrative Process That Eliminates Non-Meritorious Patents.

In creating IPR proceedings, Congress sought to eliminate problems that had bedeviled its predecessor, inter partes reexamination, which proved underused and unpopular. Inter partes reexamination was enacted as part of the American

Inventors Protection Act of 1999, Pub. L. No. 106-113, 113 Stat. 1501A-552. The USPTO initially projected that "in the first year after the creation of inter partes reexamination, it would receive 400 such requests," and by 2004 "nearly 600." H.R. Rep. 112-98, at 46 (footnotes omitted). That never happened. In fact, "no inter partes reexamination requests were actually filed in 2000 and only 27 such requests had been filed by 2004." *Id.* In one five-year period studied by the PTO, "it issued 900,000 patents and received only 53 requests for inter partes reexamination." *Id.*

A primary reason for the unpopularity of inter partes reexamination was the protracted nature of the proceedings: It could take three years or more to complete, making it "too lengthy and unwieldy to actually serve as an alternative to litigation when users are confronted with patents of dubious validity." 157 Cong. Rec. S5326 (daily ed. Sept. 6, 2011) (Sen. Leahy). IPRs, by contrast, are designed to proceed much faster. Once instituted, proceedings generally must conclude within one year, with a single 6-month extension available only for "good cause shown." 35 U.S.C. §316(a)(11). In addition, IPRs are conducted before a panel of three PTAB members, all administrative patent judges, whose final written decision is appealable directly to this Court. *See* §§316(c), 319.

While making IPR speedier than its predecessor, however, Congress simultaneously *raised* the threshold showing required to institute proceedings in

the first instance. Instead of needing to demonstrate only a "significant new question of patentability"—a relatively lax standard under which 95% of requests for inter partes reexamination were granted, *see* H.R. Rep. 112-98, at 47—a petitioner now must demonstrate "a reasonable likelihood" of "prevail[ing]" on at least one challenged claim. *Compare* 35 U.S.C. §312(a) (2006 ed.), *with* 35 U.S.C. §314(a). Congress thus struck a careful balance to achieve its goal of creating an efficient post-grant administrative process to weed out invalid claims.

In the nearly five years since the implementation of IPRs in September 2012, the PTO's efforts have achieved that goal. In contrast to the scant 53 requests for inter partes reexamination over a representative five-year period, through the end of January 2017 there have been 4,220 petitions for IPR that have reached a final disposition. U.S. PTO, Patent Trial and Appeal Board Statistics, January 2017, at 10, available at www.uspto.gov/sites/default/files/documents/aia_statistics_ january2017.pdf. Yet the *rate of institution* is markedly *lower* for IPR than for inter partes reexamination: only 2,216 IPRs have been instituted, a rate of 53% (compared to 95% of inter partes reexaminations). *Id.* To put the absolute numbers in perspective, the PTO likely has issued more than *1.2 million patents* during that same period. See U.S. PTO, U.S. Patent Statistics Chart, 1963-2015, www.uspto.gov/web/offices/ac/ido/oeip/taf/us_stat.htm (showing annual grants exceeding 300,000 from 2013 to 2015). In short, just as Congress envisioned, IPR

provides the PTO an opportunity to reconsider, efficiently and with a fuller record of prior art, only a small subset of patents, and largely those that have been asserted (either in litigation or by a licensing demand) by patent holders.

Intel in particular benefits from an efficient IPR process. Intel is a frequent target of patent lawsuits and patent assertions, the vast majority of which involve non-practicing entities asserting patents that the original patentees never used.[7] Many such patents are of dubious validity, and in appropriate cases, Intel often has utilized the IPR process. As of March 2017, Intel had filed IPR petitions against 24 different patents that were asserted against it in district court litigation. So far, IPR has been instituted on 417 claims in those petitions, with 90 such claims being canceled by final written decisions. For 282 of the instituted claims, institution spurred the patent holders to dismiss their lawsuits rather than face a final written decision reversing the PTO's original allowance decisions. In three of Intel's litigations where IPR was instituted on the asserted patents, the underlying district court litigations were stayed, thereby saving both private and public resources. These data demonstrate that a speedy post-grant administrative process by which the original patent issuing agency can reconsider its original issuance decision is

[7] Non-practicing entities "present considerations quite unlike" those for actual patentees and innovators. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 396 (2006) (Kennedy, J., concurring).

highly efficient at eliminating bad patents and the related burdensome district court litigation involving them.

### B. Appellate Review of Institution Decisions Would Thwart Congress' Objectives And Only Grant a Windfall to Owners of Invalid Patents

Allowing a patent holder to obtain appellate review of the PTO's "final and nonappealable" decision to institute an IPR on the basis that a petition was untimely—*after* the PTAB has subsequently invalidated the patent on the merits—would undermine the IPR process, contradict Congress' objectives, and grant the patent owner a windfall at the expense of the public.

To be clear, the only reason that a challenge to an institution decision (under §315(b), or otherwise) would ever be relevant is if the PTAB invalidates the patent and the patent owner would not otherwise prevail on the merits on appeal. If this Court believed that all of the challenged claims were valid, the patent holder would obtain all the relief it seeks, rendering the question whether the IPR was properly instituted moot. What Wi-Fi One wants is a chance to overturn the IPR decision without this Court's reversing the merits on appeal.[8] Such a result benefits the owner of an invalid patent.

---

[8] Indeed, this Court actually affirmed the IPR decisions finding the claims invalid. *See Wi-Fi One, LLC v. Broadcom Corp.*, 837 F.3d 1329 (Fed. Cir. 2016); *Wi-Fi One, LLC v. Broadcom Corp.*, __ F. App'x __, 2016 WL 4933418 (Fed. Cir. Sept. 16, 2016); *Wi–Fi One, LLC v. Broadcom Corp.*, __ F. App'x __, 2016 WL 4933344 (Fed. Cir. Sept. 16, 2016).

That is precisely the situation in which review of an institution decision is *least* desirable. Indeed, this is the kind of "technicality" the Supreme Court had in mind in *Cuozzo* when it observed that it doubted Congress would have granted the PTO the authority "to continue proceedings even after the original petitioner settles and drops out, §317(a), if it had thought that the agency's final decision could be unwound under some minor statutory technicality related to its preliminary decision to institute inter partes review." 136 S. Ct. at 2139-40. Congress instead created IPRs for the purpose of "ensur[ing] that the poor-quality patents can be weeded out through administrative review rather than costly litigation." 157 Cong. Rec. at S5409; *see also id.* at S5326 (IPR is designed to "weed out recently issued patents that should not have been issued in the first place"). It did so not only for the benefit of petitioners, but for the public.

Moreover, once the PTAB has reached a final decision on the merits, it would be entirely wasteful to vacate that decision on procedural grounds related to institution, when *any* member of the public could come along and seek the same result on the same record. Section 315(b)'s time bar "does not impact the Board's authority to invalidate a patent claim—it only bars particular petitioners from challenging the claim." *Achates*, 803 F.3d at 657. The PTAB "may still invalidate a claim challenged in a time-barred petition via a properly-filed petition from

another petitioner." *Id.*[9] That takes time, however, and in the meantime, the patent owner can continue to seek illegitimate rents from the public. To let the tail wag the dog in this manner would plainly disserve the public interest. *Cf. Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006).[10] In short, making §315(b) claims judicially reviewable would ultimately result only in needless repetition and pointless delay, all at substantial costs to parties, the PTO, this Court, and the public.

Moreover, appellate review of the sort of dispute at issue in this case—a privity dispute—would particularly bog down both the PTO and this Court. It may be relatively easy to determine whether a petitioner itself sought to institute an IPR more than one year after being sued for infringement. 35 U.S.C. §315(b). But

---

[9] Ironically, at that point *even the time-barred petitioner* could join the new petitioner's action, because §315(b)'s bar does not apply to parties joining an IPR under §315(c). *See* 35 U.S.C. §315(b)-(c); *Achates*, 803 F.3d at 657.

[10] This case proves the point, as Intel is only all too aware. Intel is currently facing a re-trial of FRAND damages for infringing four patent claims that both the PTO and this Court have now found to be invalid under the standards of IPR. (This Court's order granting rehearing en banc is limited to the reviewability question. Accordingly, the panel decisions affirming the PTO's substantive determination of patent invalidity remain undisturbed.) Even though two separate bodies have independently examined these claims, and each held that they should be canceled, Intel could still be held liable for infringing those patents, to the tune of millions of dollars, based on allegations that some unidentified party, in some unspecified fashion, at some unidentified time, was in privity with Broadcom. That is the antithesis of the streamlined process for eliminating meritless patents that Congress envisioned.

determining whether a party is a "privy of the petitioner," *id.*, is a fact-intensive inquiry. For this Court to engage in the review of such issues will inevitably result in remands, further discovery, and further proceedings—all against the backdrop of a patent the PTAB has found invalid. In short, privity disputes, appeals, remands, and further discovery disputes over establishing privity will almost certainly impede the "streamline[d]" process Congress envisioned. 157 Cong. Rec. at S5409.

Nor is there reason to believe the PTO is too permissive in instituting IPR in general, or biased on the privity issue in particular. As noted, only a slight majority (53%) of petitions result in institution of IPRs, compared to 95% of inter partes reexamination petitions—in line with Congress' expectations. See H.R. Rep. 112-98, at 47 (remarking "[t]he threshold for initiating an inter partes review is elevated from" the previous standard). And on the privity issue in particular, Wi-Fi One concedes that the PTO has in the past *declined* to institute proceedings on the basis of §315(b). *See* Appellant's Brief at 49. Accordingly, this is not a "consistency" or "uniformity" problem. It is the natural result of an adjudicative body's applying the law to the facts and reaching different outcomes based on different facts. There is no evidence to suggest the PTO systematically favors instituting IPR proceedings notwithstanding §315(b)'s time bar. Even if there

were, it would be a problem most appropriately addressed by Congress, not by this Court's ignoring the AIA's plain text, structure, and purpose.

Finally, allowing appellate review of initiation decisions following a PTO final written decision would improperly skew the development of the law in ways Congress did not intend. It is well-established that if the PTO *declined* to initiate an IPR proceeding based on a belief (correct or incorrect) that an initiation request was untimely, §314(d) would bar judicial review. *See Cuozzo*, 136 S. Ct. at 2140; *St. Jude*, 749 F.3d at 1375-76. Making initiation, but not declination, decisions reviewable would therefore mean that this Court would hear §315(b) issues solely when the complaint is that PTO erred in going forward. Hearing claims only in that context could not help but skew the progression of the law, and there is no hint in the text of §314 that Congress intended that result.

## IV. Alternative Remedies Remain Available To Handle Extraordinary Circumstances.

Even though the PTO's institution decisions are unappealable, that does not mean no form of relief is ever available. Egregious conduct related to IPRs is potentially subject to a mandamus petition. *See, e.g.*, *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380-81 (2004). While this Court had previously "rejected the availability of mandamus … for interlocutory review of … initiation decisions in IPR," *Achates*, 803 F.3d at 655-56, the Supreme Court in *Cuozzo* left this possibility open for rare cases. *Cf.* 136 S. Ct. at 2151 n.5 (Alito, J., dissenting).

And if conduct is *truly* extraordinary and egregious, it might rise to a due process violation, which *Cuozzo* repeatedly suggested would remain reviewable. *Id.* at 2136, 2141, 2142. Therefore, if the PTO really is "creat[ing] federal holidays" willy-nilly and thereby flouting §315(b)'s one-year limit, Br. for Elm 3DS Innovations, LLC as *Amicus Curiae* 1-2, there are other remedies to address such problems. But there is no reason distort the AIA to solve hypothetical problems that do not currently exist.

In all events, this case—like others attempting to challenge institution decisions after a patent was found invalid in an IPR proceeding, *e.g.*, *Click-to-Call*, 2016 WL 6803054—presents no extraordinary circumstances or "shenanigans." *Cuozzo*, 136 S. Ct. at 2142. This Court therefore need not decide the extent of the availability of mandamus or other extraordinary relief. It is enough that institution decisions following a fact-bound assessment of timeliness under §315(b)—including underlying determinations of privity—are unappealable under §314(d). That is what the AIA says, that is what *Achates* correctly held, and that is what *Cuozzo* unequivocally confirms.

## CONCLUSION

For the foregoing reasons, the Court should affirm the final written decision of the PTAB and dismiss Wi-Fi One's challenge to the institution decision for lack of jurisdiction.

DATED: March 27, 2017

Respectfully submitted,

*/s/ Paul D. Clement*

Paul D. Clement
*Counsel of Record*
George W. Hicks, Jr.
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200
paul.clement@kirkland.com

Sopan Joshi
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654

Matthew J. Hult
INTEL CORPORATION
2200 Mission College Blvd.
Santa Clara, CA 95054

*Counsel for Intel Corporation*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) and Federal Circuit Rule 28.1(b)(1)(A). This brief contains 5,931 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

DATED: March 27, 2017

*/s/ Paul D. Clement*
Paul D. Clement

*Counsel for Intel Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2017, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

DATED: March 27, 2017

*/s/ Paul D. Clement*
Paul D. Clement

*Counsel for Intel Corporation*