**Nos. 2015-1944, -1945, -1946**

IN THE

# UNITED STATES COURT OF APPEALS

FOR THE FEDERAL CIRCUIT

WI-FI ONE, LLC,

*Appellant,*

v.

BROADCOM CORPORATION,

*Appellee,*

MICHELLE K. LEE, DIRECTOR, U.S. PATENT AND TRADEMARK OFFICE,

*Intervenor.*

*Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in IPR2013-00601, IPR2013-00602, IPR2013-00636*

**APPELLANT WI-FI ONE, LLC'S *EN BANC* REPLY BRIEF**

G. Donald Puckett
NELSON BUMGARDNER PC
3131 West 7th Street, Ste. 300
Fort Worth, Texas 79107
(817) 377-9111

Douglas A. Cawley
MCKOOL SMITH, P.C.
300 Crescent Court, Ste. 1500
Dallas, Texas 75201
(214) 978-4972

Peter J. Ayers
Law Office of Peter J. Ayers, PLLC
2200 Bowman Avenue
Austin, Texas 78703
(512) 771-3070

*Attorneys for Appellant Wi-Fi One, LLC*

## CERTIFICATE OF INTEREST

Counsel for the Appellant, Wi-Fi One, LLC, certifies the following:

The full name of every party or amicus represented by me is:

**Wi-Fi One, LLC**

The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

**Wi-Fi One, LLC**

All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

**Wi-Fi One, LLC is 100% owned by Optis Wi-Fi Holdings, LLC.**

**Wi-Fi One, LLC's ultimate parent corporation is Inception Holdings, LLC.**

**No publicly held company owns 10 percent or more of the stock of Wi-Fi One, LLC.**

The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

**LAW OFFICE OF PETER J. AYERS, PLLC**
Peter Ayers

**LEE & HAYES, PLLC**
J. Christopher Lynch
John Shumaker

**NELSON BUMGARDNER, P.C.**
Donald Puckett

**SKIERMONT DERBY LLP (formerly SKIERMONT PUCKETT LLP)**
Steven Joseph Udick
Sarah E. Spires

**MCKOOL SMITH, P.C.**
Douglas A. Cawley

Dated: April 12, 2017

Respectfully submitted,

/s/ Donald Puckett

G. Donald Puckett
NELSON BUMGARDNER PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
(817) 377-9111 (telephone)
(817) 377-3485 (facsimile)
puckett@nelbum.com

Douglas A. Cawley
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, TX 75201
(214) 978-4972 (telephone)
(214) 978-4044 (facsimile)
dcawley@mckoolsmith.com

Peter J. Ayers
Law Office of Peter J. Ayers, PLLC
2200 Bowman Avenue
Austin, TX 78703
(512) 771-3070 (telephone)
peter@ayersiplaw.com

*Attorneys for Appellant,*
*Wi-Fi One, LLC*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........................................................................ i

TABLE OF CONTENTS ........................................................................ iii

TABLE OF AUTHORITIES ........................................................................ v

ARGUMENT IN REPLY ........................................................................ 1

I. Introduction and Summary of Reply ........................................................ 1

II. Summary of the Parties' Positions on the Scope of Judicial Review in IPR Appeals. ........................................................................ 4

A. Wi-Fi One Does Not Advocate the Reading of §314(d) Espoused by the Dissent in *Cuozzo*. ................................................ 4

B. The Opposing Parties Concede that §314(d) Does Not Apply to PTAB Actions During the Trial Phase. ............................................ 5

C. Contrary to Supreme Court Authority, the USPTO and Others Urge this Court to Restrict its Appellate Jurisdiction in IPR Appeals Based on IPR Statutes that *Authorize* Appellate Review. ........................................................................ 8

III. The Reasoning of *Achates* Is Erroneous and Should Be Disapproved. ...... 10

A. *Achates* Applied an Erroneous Legal Standard Without Proper Consideration of the Presumption of Judicial Review. ...................... 11

B. *Achates* Erred by Failing to Recognize the Statutory Distinction between the Director and PTAB. ................................................ 11

IV. The Timeliness Requirement of §315(b) Is Not *Only* Relevant to the Director's Institution Decision. .... 13

A. The Timeliness Requirement of **§**315(b) Is Not a "Claim Processing Rule" or "Workaday Rule" that the USPTO May Choose to Ignore. .... 13

B. Use of the Word "instituted" in §315(b) is not Conclusive. .... 15

C. Fact-Intensive Issues (Such as §315(b) Timeliness) Cannot Be Conclusively Determined at the Institution Stage on a Partial Evidentiary Record when Patent Owners Are Procedurally Disadvantaged. .... 17

D. The Purpose and Legislative History of the AIA Demonstrates that §315(b) is Not "*Only*" Applicable to the Institution Decision. .... 19

E. The USPTO's Position is Contradicted by its Own Regulatory Statements, its Own Routine Practices, and its Own Opinions on the Issue. .... 21

V. Even if §315(b) is *Only* Relevant to Institution, the Presumption of Review Still Requires Exceptions to §314(d) that Permit the Court to Review Wi-Fi One's Appellate Points. .... 24

A. The Text of the Relevant Statutes Can Be Reasonably Construed in Ways that Preserve Some Form of Judicial Review. .... 24

B. The Presumption of Judicial Review Compels Exceptions to §314(d), No Matter How the Statute Is Construed. .... 25

CONCLUSION .... 27

CERTIFICATE OF SERVICE .... 30

CERTIFICATE OF COMPLIANCE .... 31

## TABLE OF AUTHORITIES

**<u>Cases:</u>**

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967) .......... 9

*Achates Reference Publishing, Inc. v. Apple, Inc.*,
803 F.3d 652 (Fed. Cir. 2015) .......... passim

*Align Tech., Inc. v. ITC*,
771 F.3d 1317 (Fed. Cir. 2014) .......... 22

*Block v. Community Nutrition Inst.*,
467 U.S. 340 (1984) .......... 9, 10

*Bowen v. Michigan Acad. of Family Physicians*,
476 U.S. 667 (1986) .......... 9

*Chevron, U.S.A., Inc. v. NRDC, Inc.*,
467 U.S. 837 (1984) .......... 7, 14, 20, 26, 27

*Christensen v. Harris County*,
529 U.S. 576 (2000) .......... 14

*City of Arlington v. FCC*,
133 S.Ct. 1863 (2013) .......... 13, 14, 15, 27

*Covidien LP v. Univ. of Florida Research Found. Inc.*,
Case IPR2016-001274, Paper 21 (PTAB Jan. 25, 2017) .......... 23

*Cuozzo Speed Techs., LLC v. Lee*,
136 S.Ct. 2131 (2016) .......... passim

*Ethicon Endo-Surgery, Inc. v. Covidien LP*,
812 F.3d 1023 (Fed. Cir. 2016) .......... 7

*Gonzales v. Oregon*,
546 U.S. 243 (2006) .......... 22

*Hartman v. Nicholson*,
483 F.3d 1311 (Fed. Cir. 2007)........................................................................ 11

*Husky Injection Molding Sys. v. Athena Automation Ltd.*,
838 F.3d 1236 (Fed. Cir. 2016)........................................................................ 12

*In re Magnum Tools*,
829 F.3d 1364 (Fed. Cir. 2016).......................................................................... 1

*In re NuVasive, Inc.*,
841 F.3d 966 (Fed. Cir. 2016).......................................................................... 18

*Lindahl v. Office of Personnel Management*,
470 U.S. 768 (1985) ...................................................................... 2, 10, 15

*Mach Mining LLC v. Equal Employment Opportunity Commission*,
135 S.Ct. 1645 (2015) .................................................................................. 10

*Medtronic, Inc. v. Robert Bosch Healthcare Sys.*,
839 F.3d 1382 (Fed. Cir. 2016)........................................................................ 22

*Ortiz v. Jordan*,
562 U.S. 180 (2011) ...................................................................................... 18

*Sebelius v. Auburn Regional Medical Center*,
133 S.Ct. 817 (2013) ...................................................................................... 14

*Shaw Indus. Grp. v. Automated Creel Sys.*,
817 F.3d 1293 (Fed. Cir. 2016)........................................................................ 12

*SightSound Technologies, LLC v. Apple Inc.*,
809 F.3d 1307 (Fed. Cir. 2015)................................................................ 13, 16

*Synopsys, Inc. v. Mentor Graphics Corp.*,
814 F.3d 1309 (Fed. Cir. 2016)........................................................................ 12

*Tunik v. MSPB*,
407 F.3d 1326 (Fed. Cir. 2005)........................................................................ 22

*Unwired Planet, LLC v. Google Inc.*,
841 F.3d 1376 (2016)........................................................................................ 17

*Versata Dev. Grp., Inc. v. SAP America, Inc.*,
793 F.3d 1306 (Fed. Cir. 2015)............................................................... passim

**Statutes:**

5 U.S.C. §552(a) ........................................................................................ 22

5 U.S.C. §701(a) .......................................................................................... 9

5 U.S.C. §701(a)(1)....................................................................................... 9

5 U.S.C. §701(a)(2)..................................................................................... 10

5 U.S.C. §702 ............................................................................................... 9

5 U.S.C. §706(2)(D)..................................................................................... 22

5 U.S.C. §706(2)(F) ..................................................................................... 26

35 U.S.C. §102 ............................................................................................ 16

35 U.S.C. §103 ............................................................................................ 16

35 U.S.C. §112 ............................................................................................ 16

35 U.S.C. §141(c) ......................................................................................... 4

35 U.S.C. §311 ............................................................................................ 25

35 U.S.C. §311(b) ........................................................................................ 16

35 U.S.C. §312(a) ........................................................................................ 24

35 U.S.C. §312(c) ........................................................................................ 24

35 U.S.C. §314 .................................................................................. 6, 24, 25

35 U.S.C. §314(a) ........................................................................................ 18, 24

35 U.S.C. §314(b) ............................................................................................... 24

35 U.S.C. §314(d) ......................................................................................... passim

35 U.S.C. §315(b) ......................................................................................... passim

35 U.S.C. §315(c) ............................................................................................... 20

35 U.S.C. §316 .................................................................................................... 12

35 U.S.C. §316(c) ................................................................................................. 6

35 U.S.C. §317 .................................................................................................... 22

35 U.S.C. §317(a) ............................................................................................... 21

35 U.S.C. §318 .................................................................................................... 12

35 U.S.C. §318(a) ....................................................................... 4, 6, 8, 9, 22

35 U.S.C. §319 ............................................................................................. 4, 8, 9

35 U.S.C. §324(e) ................................................................................................. 6

America Invents Act §18(a)(1)(E) ...................................................................... 17

**Regulations:**

37 C.F.R. §42.3 ................................................................................................... 21

37 C.F.R. §42.4(a) ............................................................................................... 12

37 C.F.R. §42.51(2)(b)(ii) .................................................................................... 18

37 C.F.R. §42.53(d)(2) ......................................................................................... 18

37 C.F.R. §42.108 .......................................................................................... 12

37 C.F.R. §42.108(c)........................................................................................ 18

37 C.F.R. §42.122(b) ........................................................................................ 20

**Other Authorities:**

Charles H. Koch, Jr., Administrative Law and Practice (3d ed. 2010) 10, 22, 26, 27

Office Patent Trial Practice Guide, 77 Fed. Reg. 48756, 48759-60 (2012)............17

*SAS Institute Inc. v. Lee*, Brief for the Federal Respondent in Opposition, No. 16-969 (2017) ..........................................................................................7, 25

## ARGUMENT IN REPLY

### I. Introduction and Summary of Reply

The most important issue in this appeal is not the interpretation of the appeal-bar in 35 U.S.C. §314(d); instead, it is the characterization of the timeliness requirement of 35 U.S.C. §315(b). If §315(b) is a statutory requirement applicable to the Patent Trial and Appeal Board ("PTAB" or "Board") during the trial phase, after institution by the Director, then the *en banc* question is easily resolved. The plain text of §314(d) bars appeal of the "determination by the Director whether to institute an inter partes review . . ." and is wholly inapplicable to actions or decisions of the PTAB during the IPR trial – even if the PTAB's final decision encompasses facts or issues first considered by the Director during the institution phase.[1]

On the other hand, if §315(b) "only" applies to the Director's institution decision, then judicial review *may* be precluded by §314(d) – but a more thorough analysis is required. Before finding all judicial review has been precluded, the Court must carefully assess all relevant evidence (text, structure, purpose and

---

[1] *See In re Magnum Tools*, 829 F.3d 1364, 1374 (Fed. Cir. 2016) ("[W]e have jurisdiction to review determinations made during institution that are subsequently incorporated in the Board's final written decision."); *Versata Dev. Group, Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1319 (Fed. Cir. 2015) ("*Versata II*") ("The distinct agency actions do not become the same just because the agency decides certain issues at both stages of the process. . . . Overlap of issues is not determinative, neither is the timing determinative.").

legislative history) to determine whether there are clear indications of Congressional intent to preclude judicial review of the USPTO's compliance with the requirements of §315(b).

As this Court determines whether it is permitted to review *any aspect* of the USPTO's regulations and/or adjudications on issues related to §315(b), it is erroneous for the Court to begin and end its construction of the relevant statutes with the statutory text alone. As in *Lindahl*, the Court must consider reasonable narrow constructions of the relevant statutes that would permit at least some judicial review of the USPTO's compliance with §315(b). *See generally*, *Lindahl v. Office of Personnel Management*, 470 U.S. 768 (1985). And there are some issues that are always subject to judicial review – no matter how clear the text of a review-limiting statute – such as constitutional questions, *ultra vires* agency action, and arbitrary and capricious agency behavior.[2]

Under the correct legal standards (from *Cuozzo Speed Techs., LLC v. Lee*, 136 S.Ct. 2131 (2016) and other cases), the USPTO has not and cannot meet its heavy burden to show clear indications of Congressional intent to preclude *all judicial review* of Wi-Fi One's points of error. Wi-Fi One's alleged errors, if true, raise constitutional due process questions and fundamental procedural errors under the Administrative Procedure Act ("APA") (and other reviewable errors as

[2] *See* Wi-Fi Brief at 18-19.

discussed below). Wi-Fi One's appellate points amount to much more than an "ordinary . . . dispute over whether the USPTO should have granted discovery . . . ."[3] To the contrary, Wi-Fi One's points of error raise fundamental procedural defects that call into question the legitimacy of the process that resulted in the PTAB's decision on this issue. These points of error rise to the level of depriving Wi-Fi One of constitutional due process and substantial APA procedural protections. The USPTO and others disagree with that characterization. But for this Court to agree or disagree with Wi-Fi One's assertion that due process and substantial APA rights are implicated, the Court first must overrule the "total preclusion" of *Achates* – because otherwise the Court is powerless to provide any review of §315(b) issues at all. *See Achates Reference Publishing, Inc. v. Apple, Inc.*, 803 F.3d 652 (Fed. Cir. 2015).

The Court should answer the *en banc* question by overruling *Achates*, and holding that Wi-Fi One's points of error related to §315(b) are properly reviewable in this appeal. The timeliness requirement of §315(b) is not "only" related to the Director's institution decision. It is a fact-intensive issue that (as a matter of due process) cannot be fully and finally resolved during the institution phase of IPR, when the patent owner is procedurally handicapped. Even if a §315(b) determination is viewed as inherently an "institution decision," the nature of the

[3] *See, e.g.*, USPTO Brief at 40.

errors alleged by Wi-Fi One in this case fit within the exceptions to §314(d) that are required by the presumption of judicial review and *Cuozzo*.

Throughout their briefs, the USPTO and others make broad and sweeping statements about the global scope of this Court's appellate jurisdiction in IPR appeals, and urge the Court to construe 35 U.S.C. §§141(c), 314(d), 318(a), and 319 together to hold that the Federal Circuit's jurisdiction to hear IPR appeals is limited to reviewing the PTAB's final decision on patentability *and no more*. Wi-Fi One urges the Court to follow the Supreme Court's lead in *Cuozzo* and leave the reviewability question as related to issues other than §315(b) to be decided another day, as those issues arise on the facts of future cases.

## II. Summary of the Parties' Positions on the Scope of Judicial Review in IPR Appeals.

### A. Wi-Fi One Does Not Advocate the Reading of §314(d) Espoused by the Dissent in *Cuozzo.*

In dissent, Justice Alito advocated a construction of §314(d) that would only preclude immediate interlocutory appeal of the Director's institution decision, but would not preclude *review* of the Director's institution decisions upon a proper appeal of the PTAB's final written decision. *See Cuozzo Speed Techs., LLC v. Lee*, 136 S.Ct. 2131, 2151 (2016) (Alito, J. dissenting).

Wi-Fi One does not advocate Justice Alito's reading of §314(d). Instead, Wi-Fi One acknowledges §314(d) generally bars judicial review of the Director's

institution decision, subject to exceptions required by the presumption of judicial review. *See* Wi-Fi Brief at 38-44. But critically, Wi-Fi One also contends that §314(d)'s scope by its plain language is limited to the Director's institution decision,[4] and has no application at all to appeals that challenge actions or decisions of the PTAB during the trial phase of IPR, or issues the PTAB decides in connection with its trial decisions (irrespective of whether the issue overlaps with an issue decided by the Director during the institution phase). *See id.* at 6, n.5.

It is incorrect to assert that Wi-Fi One's construction of §314(d) was rejected by the Supreme Court in *Cuozzo*. It also is erroneous to infer from the back-and-forth exchange between the *Cuozzo* majority and dissent that the precise *en banc* question (appellate review of §315(b) issues) was decided in that case, given the Court's emphasis on the limited scope of its holding. The only plausible reading of the *Cuozzo* majority opinion is that it chose not to decide whether §315(b) timeliness issues are subject to appellate review, instead leaving reviewability of those issues to be decided in the first instance by this Court.

### B. The Opposing Parties Concede that §314(d) Does Not Apply to PTAB Actions During the Trial Phase.

As much as they try to avoid any mention of the *Director's* institution decision, the opposing party briefs all concede that §314(d) alone does not extend

[4] The parties also dispute the scope and effect of the "under this Section" language in §314(d). *See* Section V(A).

to issues decided by the PTAB during the trial phase of IPR. Wi-Fi One urges the *en banc* Court to disavow any reading of §314(d) that extends it to preclude judicial review of *any* action or decision of the PTAB during the trial phase.

This reading of the parallel CBM statute (§324(e)) was expressly rejected by the Court in *Versata II* (prior to *Achates*) based on the clear distinction in the AIA statutes between the roles of the Director at institution versus the PTAB during the trial phase of IPR. *See Versata II*, 793 F.3d at 1319; *see also* 35 U.S.C. §§314, 316(c) and 318(a).

*Achates*, on the other hand, disregards the significance of this distinction and reinterprets *Versata II* as having been based exclusively on that court's finding that the issue reviewed was a "jurisdictional" restriction on the PTAB's authority to invalidate the challenged patent. *See Achates*, 803 F.3d at 657-658. *Achates* further demonstrates its disregard for the statutory distinction between Director and PTAB when it held that when the PTAB decides the §315(b) issue during the trial phase, it merely "reconsiders" the Director's previous §315(b) determination that was made during institution – without recognizing that for *statutory purposes* the institution decision was made under the Director's statutory authority, not the

PTAB's.[5] *See id,* at 658 ("The Board's reconsideration of the time-bar is still fairly characterized as part of the decision to institute.") (internal quotes omitted).

The errors in this aspect of *Achates* will be discussed further in Section III(B), below. But at the outset, it should be noted that no opposing party in this appeal denies the statutory distinction between Director at institution and PTAB during trial, or that the institution decision and final written decision constitute distinct agency actions. Instead, the opposing briefs argue (as they must) that §315(b) is "only" related to the institution decision, and that the issue has no relevance to the IPR trial phase. *See, e.g.*, USPTO Brief at 20; Broadcom Brief at 23-24.

The USPTO recently emphasized the importance of this distinction for purposes of interpreting §314(d) in a brief to the U.S. Supreme Court. *See* Brief for the Federal Respondent in Opposition at 10-11 n.3, *SAS Institute Inc. v. Lee*, No. 16-969 (2017).

---

[5] The USPTO's decision to delegate all the Director's statutory authority to the PTAB is an important background fact in this appeal related to the structure of the IPR statutory scheme. This delegation of the Director's institution authority was affirmed by a panel opinion applying *Chevron* deference. *See Ethicon Endo-Surgery, Inc. v. Covidien LP*, 812 F.3d 1023, 1029-31 (Fed. Cir. 2016); *see also Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984). The correctness of the *Ethicon* holding is not at issue here, so as the Court considers this delegation as a background fact, it is not bound by the *Ethicon* holding or required to apply *Chevron* deference to the USPTO's compliance with applicable IPR statutes.

### C. Contrary to Supreme Court Authority, the USPTO and Others Urge this Court to Restrict its Appellate Jurisdiction in IPR Appeals Based on IPR Statutes that *Authorize* Appellate Review.

Because §314(d) by its plain text does not apply to the trial phase of IPR, the USPTO and others turn to other statutory sections – namely §318(a) and §319, in combination with §314(d) – to argue that this Court's appellate jurisdiction in an IPR appeal is limited to reviewing the PTAB's final patentability decisions *and nothing else*. *See e.g.,* USPTO Brief at pp. 14-15; Broadcom Brief at 23. The USPTO's sweeping characterization regarding its view of scope of this Court's appellate review would impact reviewability of many issues not before the Court in this appeal. *See* USPTO Brief at 15.[6] From the briefs, it can be seen that the USPTO and others seek to expand the scope of the *en banc* question in hopes this Court will make a broad ruling on the scope of judicial review in IPR that potentially could be read to preclude review for a broad range of issues not before the Court. A broad ruling of that sort would be contrary to *Cuozzo* and the manner in which the Supreme Court carefully limited its holding to the specific appellate issues presented in that appeal. *See Cuozzo*, 136 S. Ct. at 2141; *see also* Wi-Fi One Brief at 2-5, 18-21 (presumption of review requires issue-by-issue assessment).

---

[6] Significantly, the USPTO concedes (as it must) that "if the Court were to conclude that Wi-Fi One has raised and preserved constitutional objections to the USPTO's institution decisions in this case, the government would agree that section 314(d) does not bar review of those issues on appeal." USPTO Brief at p. 37 n.6.

Moreover, the USPTO's position on the overall scope of this Court's review in an IPR appeal is premised on an error of law, because the USPTO does not acknowledge the role the presumption of judicial review and APA §702 play in this context.[7] When Congress authorizes judicial review for some issues in an administrative statutory scheme, the Supreme Court has repeatedly held that this authorization of review *does not support an inference* that Congress intended to preclude review on other issues. *See, e.g. Abbott Labs v. Gardner*, 387 U.S. 136, 141 (1967); *Bowen v. Michigan Acad. of Family Physicians*, 476 U.S. 667, 670 (1986). The USPTO makes this same erroneous argument when it asserts that this Court's appellate jurisdiction is limited to what is authorized by §318(a) and §319, and no more. *See* USPTO Brief at 14-16.

The USPTO's position is out-of-step with the Supreme Court jurisprudence on the presumption of review, and the standards for interpreting statutes that limit judicial review of agency action. The USPTO is misguided when it points to *Block* as a key precedent that must be considered to answer the *en banc* question.[8] The

[7] The USPTO is wrong to suggest that Wi-Fi One "misunderstands the relevant principles of judicial review of agency action" for failing to give effect to APA §701(a)(1). *See* USPTO Brief at 24-25. But Wi-Fi One cited and discussed §701(a) as codifying the applicable legal framework for assessing the presumption of review. *See* Wi-Fi One Brief at 16. Contrary to the USPTO's argument, §701(a)(1) provides no guidance in determining whether a particular statute has in fact precluded judicial review - it merely frames the question in conjunction with §702.

[8] *See* USPTO Brief at 25. *Block* found that *consumers* were not permitted to bring an APA challenge to agency pricing determinations because the relevant statutory

USPTO is wrong when it asserts that a review-limiting statute such as §314(d) must be construed or applied "like any other" statute.[9] And, it is misleading for the USPTO to argue that it can meet its burden to show clear Congressional intent to preclude review "expressly or implicitly" by citing cases such as *Mach Mining* that fall under APA §701(a)(2).[10] *See Mach Mining LLC v. Equal Employment Opportunity Commission*, 135 S.Ct. 1645 (2015).

Wi-Fi One urges the Court to confine its opinion to the *en banc* question and the issues presented by the facts of this appeal: (1) whether *Achates* should be overruled; and (2) whether (and to what degree) this Court may review points of error related to §315(b) of the type that Wi-Fi One has presented in this appeal.

## III. The Reasoning of *Achates* Is Erroneous and Should Be Disapproved.

Whether the holding of *Achates* was correct or not, the reasoning of the opinion was erroneous. At least two aspects of the *Achates* reasoning should be disapproved by the *en banc* Court: (1) the erroneous legal standards used in

---

scheme authorized *industry participants* to seek judicial review of the pricing determinations. *See Block v. Community Nutrition Inst.*, 467 U.S. 340, 345-348 (1984). Thus, *Block* did not involve *total* preclusion of judicial review at all, but was more akin to a standing decision because it involved *who* was authorized to seek review, not *whether* any review was available at all. *See* Charles H. Koch, Jr. Administrative Law and Practice §12.11 (3d ed. 2010) (discussing *Block*).

[9] *See* USPTO Brief at 25. The USPTO's argument ignores *Lindahl* and other Supreme Court cases requiring consideration of reasonable narrow constructions and use of special rules of statutory interpretation imposed by the presumption of judicial review. *See* Wi-Fi One Brief at 15-17.

[10] *See* Wi-Fi Brief at 16-17 (explaining that cases under APA §701(a)(2) are not applicable to the *en banc* question).

*Achates* as it determined whether §314(d) precludes judicial review of the §315(b) issues, and (2) the failure of *Achates* to appreciate the significance to the statutory distinction between the Director during the institution phase and the PTAB during trial.

### A. *Achates* Applied an Erroneous Legal Standard Without Proper Consideration of the Presumption of Judicial Review.

As discussed in Wi-Fi One's opening brief, the *Achates* opinion did not discuss the presumption of judicial review and did not assess whether the USPTO is able to overcome the presumption by showing clear indications of Congressional intent. *See* Wi-Fi One Brief at 35-40; Wi-Fi One Opening Panel Brief at 21-23. Broadcom's citation to *Hartman v. Nicholson*, 483 F.3d 1311 (Fed. Cir. 2007) is inapposite and does not excuse *Achates* for having failed to consider the presumption of review. Broadcom Brief at 30. *Hartman* did not involve the presumption of review at all; it was an appeal from a final agency decision reviewed under a deferential standard. It has no application here, where the *en banc* Court is considering issues that touch on the presumption of review, and where the *en banc* Court reviews the *Achates* holding *de novo*.

### B. *Achates* Erred by Failing to Recognize the Statutory Distinction between the Director and PTAB.

The reasoning of *Achates* misapprehended the statutory distinction between the Director during the institution phase versus the PTAB during the trial phase.

*See* Section II(B), *supra*. This distinction is well-grounded in the words of the statute and in basic principles of administrative law. *See Versata II*, 793 F.3d at 1319. Under the IPR statutes, the Director's role in the IPR process is *complete* when the institution decision is made. *See* 35 U.S.C. §314(d) (the Director's institution decision is "final"); s*ee also* 35 U.S.C. §§316, 318 (PTAB conducts trial and renders final patentability decision).

Under the IPR statutes, the PTAB has no role at all during the institution phase of IPR. As a part of its rulemaking, however, the USPTO delegated all the Director's institution authority to the PTAB. *See* 37 C.F.R. §§42.4(a), 42.108. But the USPTO's *regulatory* delegation of authority does not diminish the significance of the statutory distinction, especially as it relates to statutory interpretation, and assessing whether there are clear indications of congressional (not agency) intent to preclude judicial review.

Subsequent panel opinions have followed *Achates* by similarly discarding the statutory distinction between Director at institution and PTAB during the trial phase, and have read §314(d) to preclude judicial review of other issues decided or related to a *PTAB final decision* on the basis of §314(d)'s bar on appeal of the institution decision. *See, e.g. Husky Injection Molding Sys. v. Athena Automation Ltd.*, 838 F.3d 1236 (Fed. Cir. 2016); *Shaw Indus. Grp. v. Automated Creel Sys.*, 817 F.3d 1293, 1301 (Fed. Cir. 2016); *Synopsys, Inc. v. Mentor Graphics Corp.*,

814 F.3d 1309, 1322-1323 (Fed. Cir. 2016); *Sightsound Technologies, LLC v. Apple*, 809 F.3d 1307, 1313-14 (Fed. Cir. 2015). For this reason, it is important in this *en banc* rehearing that the Court expressly disapprove the aspect of *Achates* that overlooks this important statutory distinction.

## IV. The Timeliness Requirement of §315(b) Is Not *Only* Relevant to the Director's Institution Decision.

### A. The Timeliness Requirement of §315(b) Is Not a "Claim Processing Rule" or "Workaday Rule" that the USPTO May Choose to Ignore.

Broadcom characterizes §315(b) as a "claim processing rule" and the USPTO characterizes it as a "workaday rule" – with both parties arguing that the statute imposes no restriction on the PTAB's authority to act, and thus that the PTAB may choose to ignore it. *See* USPTO Brief at 41; Broadcom Brief at 43.

These characterizations of §315(b) are in tension with the Supreme Court's holding in *City of Arlington* that every clear statutory command to an agency serves as a restriction on the agency's authority to act, and the agency is afforded discretion only to the extent that the statute is ambiguous:

> No matter how it is framed, the question a court faces when confronted with an agency's interpretation of a statute it administers is always, simply, *whether the agency has stayed within the bounds of its statutory authority*. . . . [F]or agencies charged with administering congressional statutes . . . [b]oth their power to act and how they are to act is authoritatively prescribed by Congress, so that when they act improperly, no less than when they act beyond their jurisdiction, what they do is ultra vires. . . . Where Congress has established a clear line, the agency cannot go beyond it; and where Congress has established

> an ambiguous line, the agency can go no further than the ambiguity will fairly allow.

*City of Arlington v. FCC*, 133 S.Ct. 1863, 1868-74 (2013) (emphasis in original). In asserting that §315(b) is a claim-processing or workaday rule the PTAB can waive or ignore, no party argues that the language of §315(b) is ambiguous such that the USPTO would enjoy any *Chevron* deference in interpreting or applying it (much less waiving or ignoring it); and even if some of the USPTO's actions under §315(b) are afforded *Chevron* deference, they are still reviewable at least for arbitrariness or capriciousness.

The USPTO does not address *City of Arlington* in its brief, and others are unsuccessful in distinguishing it. Broadcom (at n.9 of its brief) argues that it is inapplicable because it involved rulemaking, but *Chevron* deference is applicable to both rulemaking and formal agency adjudications. *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000). Broadcom also cites *Sebelius v. Auburn Regional Medical Center*, 133 S.Ct. 817 (2013), a case that held (under *Chevron* deference) an agency could permissibly adopt a regulation permitting extension of a filing deadline for good cause. *Auburn Reg'l* did not hold, however, that all administrative filing deadlines are subject to being waived or ignored by any agency. Instead, its holding was limited to the particular deadline at issue, and based on the court's determination of Congressional intent with respect to that statute and statutory scheme. *See id*. at 824-25.

Apple, in its amicus brief, argues that *City of Arlington* is inapplicable because the purpose of rejecting the jurisdictional / nonjurisdictional distinction – on the facts of that case – was to increase the discretion of the agency. *See* Apple Brief at 11. But Apple's argument ignores the plain language of *City of Arlington*, which requires agencies to follow *all* unambiguous statutory command, with agency discretion bounded by the degree to which the statutory language is ambiguous.

**B. Use of the Word "instituted" in §315(b) is not Conclusive.**

The USPTO's primary argument (like other opposing parties) is that §315(b) is "only" related to the institution decision because the text of the statute states that a time-barred petition "may not be instituted . . ." In *Lindahl*, however, the Supreme Court reversed the *en banc* Federal Circuit when it construed a review-limiting statute by looking only at the text. In the context of the presumption of review, courts are required also to consider the structure of the statute, its purpose, and legislative history as well as potential narrow constructions of the statute that would permit at least some forms of judicial review. *See* Wi-Fi One Brief at 17-21.

In *Cuozzo*, the Supreme Court demonstrated, in the context of the AIA, that the words of the statute alone are not a reliable indicator of whether a certain statute is only relevant at a preliminary stage or whether, despite its language, the statute has relevance to the IPR trial stage and/or limits the PTAB's authority to act

post-institution. In *Cuozzo*, the majority wrote that §314(d) would not preclude judicial review to correct the PTAB if it were to "act outside its statutory limits by, for example, canceling a patent for 'indefiniteness under §112' in *inter partes* review." *See Cuozzo*, 136 S.Ct. at 2141-42. The Supreme Court had no trouble finding that the statutory prohibition on raising indefiniteness in IPR is a restriction on the PTAB's authority to act, and the PTAB's failure to comply with that statutory restriction would be subject to judicial review. By its own language, however, the relevant IPR statute only applies to the *petitioner*:

> *A petitioner in an inter partes review* may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under section 102 and 103 and only on the basis of prior art consisting of patents or printed publications.

35 U.S.C. §311(b) (emphasis added).

Under the USPTO's literalist reading of the AIA statutes, this restriction is only applicable to what may be pled in an IPR petition, but does not restrict the grounds *the Director* may consider at institution or *the PTAB* may consider during the trial. Indeed, one panel opinion (applying *Achates*) held that §314(d) precludes review of whether the PTAB may institute trial on grounds other than those stated in the IPR petition. *See Sightsound Techs., LLC v. Apple Inc.*, 809 F.3d 1037, 1313 (Fed. Cir. 2015). Under the USPTO / *Sightsound* literalist interpretation, this Court would be precluded from reviewing the specific *ultra vires* "shenanigan" identified

by the Supreme Court in *Cuozzo* as most obviously reviewable on appeal of a final decision. *See Cuozzo*, 136 S.Ct. at 2141-42.

*Versata II* is in accord, because it found that the statutory threshold for CBM review restricted the PTAB's authority to invalidate a patent, even though the statutory language is directed to the Director's institution decision, using nearly identical language to §314(d). *See* AIA §18(a)(1)(E) ("*The Director may institute* a transitional proceeding only for a patent that is a covered business method patent." (emphasis added)).The *Versata II* court correctly held the proper characterization of an agency statute is determined by the substance of the issue, not a strict and literal reading of the statutory text. *See Versata II*, 793 F.3d at 1692; *see also Unwired Planet, LLC v. Google Inc.*, 841 F.3d 1376, 1381 (2016).

### C. Fact-Intensive Issues (Such as §315(b) Timeliness) Cannot Be Conclusively Determined at the Institution Stage on a Partial Evidentiary Record when Patent Owners Are Procedurally Disadvantaged.

The §315(b) issue is fact-intensive, particularly in determining whether any "real party in interest or privy" of the petitioner is time-barred. *See* Office Patent Trial Practice Guide, 77 Fed. Reg. 48756, 48759-60 (2012). As a matter of constitutional due process (and under the APA), this fact-intensive issue cannot be fully and finally decided during the IPR institution stage, because of the serious procedural disadvantages imposed on the patent owner pre-institution, such as restrictions on the ability to offer testimonial evidence, inability to cross examine

witnesses, and resolution of disputes in testimony in favor of petitioners. *See* 37 C.F.R. §42.108(c), §42.51(2)(b)(ii), §42.53(d)(2); Wi-Fi One Brief at 32-33.

It is a fundamental due process (and APA) violation to consider the §315(b) timeliness issues as "only" relevant to institution, or that the ultimate merits of the §315(b) issue is fully determined during the institution phase, given the procedural handicaps the USPTO's regulations place on patent owners prior to the commencement of trial. *See, e.g., In re NuVasive, Inc.*, 841 F.3d 966, 973 (Fed. Cir. 2016) (importance of trial procedures for protecting due process rights).

If an agency makes a preliminary decision on a partial record, and that decision is later subsumed by a subsequent determination of the issue on a more developed record, total preclusion of review is objectionable – because the ultimate merits of the decision are subject to review on appeal of a final decision. It is analogous to a motion to dismiss the pleadings and a summary judgment motion in civil litigation – decisions that are merged into and mooted by the subsequent final judgment in the case. *See Ortiz v. Jordan*, 562 U.S. 180, 184 (2011). *See also Cuozzo*, 136 S.Ct. at 2140 (discussing grand juries).

The Director's §314(a) "reasonably likely" determination is similarly merged into the Board's final decision on patentability. But the §315(b) timeliness issue is never subsumed or merged into a subsequent appealable decision. It is a

fact-intensive question by its nature, and for that reason it cannot be finally decided at the institution stage consistent with due process.

**D. The Purpose and Legislative History of the AIA Demonstrates that §315(b) is Not "*Only*" Applicable to the Institution Decision.**

No party contests that the timeliness requirement of §315(b) was an essential component of the legislative compromise necessary to secure passage of the AIA, and that it serves at least three important statutory purposes: (1) protection of patent owners from harassment, (2) encouraging prompt resolution of patent validity disputes by discouraging parties from delaying IPR filings; and (3) protecting the integrity of the patent system and this court by minimizing the instances of the "dual path" problem that can lead to inconsistent determinations on the same patents validity. *See* Wi-Fi Brief at 26-30.

The USPTO and others, however, ignore the AIA's careful balance of the interests of various patent stakeholders, and instead characterize the AIA as having a single-minded focus on quickly and efficiently invalidating patents – without any countervailing purposes or policy considerations. *See* USPTO Brief at 17 ("For the individual parties […] the agency's decision whether to institute a proceeding carries significant consequences. But from the perspective of the patent system as a whole, it is the patentability decision that matters."); *see also* USPTO Brief at 2-3, 22; Broadcom Brief at 24-26; Apple Brief at 18. To be sure, one important purpose

of the AIA was to streamline litigation over patent validity. But it is revisionist history for the opposing parties to disregard other important AIA policies.

The USPTO and other parties assert that §315(b) is only relevant to institution because there are strong policy reasons for deciding the timeliness issue early in the IPR process. *See* id. But in making these arguments, no party points out that the patent owner is procedurally disadvantaged at the institution stage, or discusses the attendant due process consequences of this fact. Nor does any party discuss the fact that the USPTO and PTAB have never in practice confined the §315(b) issue to the institution stage.

The USPTO asserts that the text of the IPR statutes (the final sentence of §315(b) in combination with §315(c)) give it broad authority to invalidate patents apart from party standing requirements. *See* USPTO Brief at 42-43. But the USPTO's reading of these statutes is plain error as evident from their text. Section 315(b) states that the time bar does not apply to a motion for joinder, but it does not state that filing a motion for joinder waives the time bar. The USPTO's corresponding regulation, which permits an otherwise time-barred party to join an instituted IPR trial, is based on a plainly erroneous interpretation of the statutes. *See* 37 C.F.R. §42.122(b). Because the validity of this regulation is not at issue here, the Court need not apply *Chevron* deference to the USPTO's stated position.

The USPTO also reads too much into its extremely limited authority under §317(a) to render a final decision even after a settlement by the parties – but only if the PTAB has already decided the case at the time of settlement. This is scant evidence of Congressional intent to allow the USPTO to disregard *all* party and standing requirements in circumstances outside of §317(a) settlement.

The legislative purpose and history confirm that the §315(b) requirement is analogous to the prohibition against the PTAB considering indefiniteness in IPR, or the statutory prerequisites for CBM review – unambiguous statutory restrictions that impact the authority of the PTAB to act, and that also are applicable to the PTAB during trial and to its authority to render a final decision.

### E. The USPTO's Position is Contradicted by its Own Regulatory Statements, its Own Routine Practices, and its Own Opinions on the Issue.

Through APA rulemaking, the PTAB adopted a rule that requires strict compliance with statutory filing deadlines. *See* 37 C.F.R. §42.3 ("A petition to institute a trial must be filed with the Board consistent with any time period required by statute."). Even if, under the statute, Congress intended the USPTO to have some authority to waive or ignore §315(b), once the USPTO informed the public of its strict compliance policy it had adopted through regulation, the USPTO

obligated itself to comply with its own rule in an even-handed manner.[11] If the PTAB deviates from its own regulations as they are written, it is under an obligation to provide a written statement of the reasons for the departure. *See*, *Align Tech., Inc. v. ITC*, 771 F.3d 1317, 1325 (Fed. Cir. 2014); *see also* 5 U.S.C. §§ 552(a), 706(2)(D). The USPTO also published formal comments during rulemaking to inform the public that IPR standing issues such as §315(b) could be raised by a patent owner post-institution and be decided during the IPR trial phase. *See* Wi-Fi Brief at 32-33.

In practice, the PTAB routinely considers §315(b) timeliness post-institution, with continued development of the factual record. *Id.* at 46-47. The PTAB frequently decides the §315(b) issue post-institution, either in its final written decision or else in deciding a post-institution motion to terminate or dismiss.[12] Indeed, as discussed in Wi-Fi One's opening brief, the PTAB recently issued a highly-publicized opinion on the issue of Eleventh Amendment state sovereign immunity from IPR filings, and a critical underpinning of the decision

---

[11] *See Tunik v. MSPB*, 407 F.3d 1326, 1341 (Fed. Cir. 2005); *see also Gonzales v. Oregon*, 546 U.S. 243, 257 (2006). *See also* Koch, Administrative Law and Practice §11.42.

[12] Panel opinions have referred to the Board's post-institution dismissal of an IPR on §315(b) grounds as a reconsideration or vacatur of the institution decision. *See Achates*, 803 F.3d 652; *Medtronic, Inc. v. Robert Bosch Healthcare Sys.*, 839 F.3d 1382, 1384-1385 (Fed. Cir. 2016). But the IPR statues in this context indicate otherwise, and contemplate that the Board may *terminate* (§317) or *dismiss* (§318(a)) an IPR proceeding that the Director has instituted.

was the PTAB's holding that it does not have "in rem" jurisdiction to invalidate patents because standing requirements (including §315(b), according to the PTAB) restrict the authority of the PTAB to act in a given case. *See* Wi-Fi Brief at 47 (discussing *Covidien LP v. University of Florida Research Found. Inc.*, Case IPR2016-001274, Paper 21 (P.T.A.B. Jan. 25, 2017)).

It is curious that neither the USPTO nor any opposing party discuss *Covidien*. *Covidien* is the Director's decision – made by the PTAB on behalf of the Director using the authority that the USPTO delegated to the PTAB by regulation. In that case, the Director (through the PTAB) directly held that §315(b) is a statutory restriction on the PTAB's ability to act. *See Covidien LP v. University of Florida Research Found. Inc.*, Case IPR2016-001274, Paper 21 at 14 (PTAB Jan. 25, 2017). But in this appeal, the USPTO (through the Director) has intervened to assert that §315(b) is a "workaday rule" that the PTAB is free to waive or ignore.

The Director's position in *Covidien* versus the positions taken in this appeal could not be more contradictory. Even if *Covidien* is not a binding admission or the basis for estoppel against the USPTO (as it would be for a non-government party), this sort of self-contradiction by any administrative agency is itself the kind of agency action that is subject to review under *at least* an arbitrary and capricious standard.

## V. Even if §315(b) is *Only* Relevant to Institution, the Presumption of Review Still Requires Exceptions to §314(d) that Permit the Court to Review Wi-Fi One's Appellate Points.

If the *en banc* Court determines that §315(b) is only related to the institution decision, it does not follow necessarily that Wi-Fi One's points of error are precluded by §314(d). This is true for at least two reasons.

### A. The Text of the Relevant Statutes Can Be Reasonably Construed in Ways that Preserve Some Form of Judicial Review.

The text of §314(d) limits its scope to the Director's decision to institute "under this section." It is a reasonable construction of the plain statutory text to hold that the "under this section" language restricts the scope of §314(d) to aspects of the institution decision applying the standard set forth in §314(a) (or, if it matters, to §314 *in toto*).[13] Given that the presumption of judicial review requires a strict statutory construction in this context, the *en banc* Court should adopt this reasonable construction of the statute unless the USPTO can meet its heavy burden to show clear indications of Congressional intent to preclude review.

---

[13] The USPTO reads too much into the slight change in wording between pre-AIA 35 U.S.C. §312(c) (2006) and current 35 U.S.C. §314(d). *See* USPTO Brief at 10. This was a technical cleanup to the language to correspond to a technical amendment that separated the institution standard and the institution deadline from a single section in §312(a) to two sections in §314(a) and §314(b). If a comparison of §314(d) to old §312(c) is useful at all, it would be in relation to possible Congressional acquiescence to prior statutory constructions of §312(c) that permitted judicial review of the Director's institution on appeal of the final decision. *See Versata II*, 793 F.3d at 1321-22 (collecting cases).

This interpretation is consistent with the textual structure of the statute, which is organized sequentially according to the chronological progression of an IPR trial. *See* 35 U.S.C. §311 *et seq*. Within that progression, the AIA places the §315(b) timeliness requirement *after* §314, which addresses institution.

### B. The Presumption of Judicial Review Compels Exceptions to §314(d), No Matter How the Statute Is Construed.

Even if §315(b) issues fall squarely within §314(d), the presumption of review still requires certain exceptions that would nonetheless permit this Court some degree of review. *See* Wi-Fi One Brief at 18-19. Wi-Fi submits that each of the following types of appellate points are subject to appellate review in this Court.

**Constitutional Issues.** The USPTO acknowledges (as it must) that courts will always be able to conduct some degree of judicial review of agency actions – including the Director's institution decisions – if the agency action involves constitutional questions or implicates constitutional rights. *See* USPTO Brief at 37 n.6. The USPTO seems to acknowledge that this Court would be permitted, for example, to review the Director's denial of institution on grounds of Eleventh Amendment state sovereignty. *See* Brief for the Federal Respondent in Opposition at 10-11 n.3, *SAS Institute Inc. v. Lee*, No. 16-969 (2017).

**Serious Procedural Error.** In this appeal, Wi-Fi One alleges procedural error that calls into question the legitimacy of the procedures the PTAB used to make its §315(b) determination. Even if the §315(b) timeliness determination is

completely committed to the discretion of the agency, the Court may review for procedural errors that taint the decision-making process in ways that implicate due process or substantial procedural protections of the APA.[14] *See* Wi-Fi One Brief at 51-53. *See also* Koch, Administrative Law and Practice at §12.14[2](d).

**Arbitrary and Capricious or Abuse of Discretion.** "Arbitrary and capricious" review and/or "abuse of discretion" review provides an outer boundary to agency discretion even in instances where it is entitled to *Chevron* or other deferential review. Arbitrary and capricious review allows courts to enforce agency compliance with clear statutory commands (such as the "one-year" portion of §315(b)) to correct clear legal error, while maintaining a degree of agency discretion for more open-ended aspects of the statute (such as the "real party in interest or privy" language of §315(b)). Under arbitrary and capricious review, this Court would be permitted to review the reasonableness of the USPTO's IPR regulations and adjudicated policies applying *Chevron* deference. This standard permits review of whether the PTAB has enforced its own rules as they are written, and whether it has contradicted the statements and guidance it provided to the

[14] Broadcom is incorrect that Wi-Fi One waived its constitutional due process arguments because it raised its points of error under the APA. When the APA is applicable to agency action, due process violations are appropriately asserted under the APA. *See* 5 U.S.C. §706(2)(F) (authorizing courts to set aside agency action that is "contrary to constitutional right, power, privilege, or immunity . . ."). In determining whether fundamental constitutional rights are implicated, it is the nature of the procedural right at stake that matters, not the label attached to it.

public during the rulemaking process. It also permits review of the PTAB's inconsistent decisions on an issue such as §315(b) across various cases. *See* Koch, Administrative Law and Practice §§9.23, 9.25, 9.27, 12.10[4].

***Ultra Vires* Agency Action.** Although *City of Arlington* may have cast doubt on the utility of the "jurisdictional" label, no party seems to contest that this Court has authority to review actions that exceed the scope of the PTAB's statutory power to act such that the agency's action is *ultra vires*. The holding of *Versata II* was correct – but the *ultra vires* (or "jurisdictional") exception to preclusion of review that was important in that case is not the only exception to §314(d) that is required by the presumption of review. *See* Wi-Fi One Brief at 19.

Thus, even if the *en banc* Court holds that §315(b) is only relevant during the institution phase, Wi-Fi still has alleged points of error that fit within the previously described standards of review.

## CONCLUSION

Executive agencies are rarely given discretion with no limits and no review, particularly when important property interests are at stake. The timeliness requirement of §315(b) was an essential part of the legislative compromise that led to the AIA, and its role within the overall IPR scheme cannot be ignored. Section 315(b) cannot successfully encourage parties to avoid delay in filing IPR petitions, help minimize "dual path" cases to protect the integrity of this Court, and protect

patent owners from harassment by delayed or multiple IPR petitions if it is enforced inconsistently or not at all by the USPTO. Congress created this Court to provide oversight and consistency in patent law, and there is no indication that Congress intended, when it passed the AIA, to diminish this Court's role in providing judicial review on §315(b) issues.

Wi-Fi One urges the *en banc* Court to overrule *Achates* so the Court may consider the points of error Wi-Fi One has raised in this appeal related to §315(b).

Dated: April 12, 2017

Respectfully submitted,

*/s/ Donald Puckett*

G. Donald Puckett
NELSON BUMGARDNER PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
(817) 377-9111 (telephone)
(817) 377-3485 (facsimile)
puckett@nelbum.com

Peter J. Ayers
Law Office of Peter J. Ayers, PLLC
2200 Bowman Avenue
Austin, Texas 78703
(512) 771-3070 (telephone)

Douglas A. Cawley
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
(214) 978-4972 (telephone)
(214) 978-4044 (facsimile)
dcawley@mckoolsmith.com

*Attorneys for Appellant,*
*Wi-Fi One, LLC*

## CERTIFICATE OF SERVICE

I, John C. Kruesi, Jr., being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by NELSON BUMGARDNER PC, attorneys for Appellant to print this document. I am an employee of Counsel Press.

On **April 12, 2017,** counsel has authorized me to electronically file the foregoing **Wi-Fi One's *En Banc* Reply Brief** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following principal counsel registered as CM/ECF users:

Dominic E. Massa, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
617-526-6000 (telephone)
dominic.massa@wilmerhale.com
Principal Counsel for Appellee

Nathan K. Kelley, Solicitor
U.S. Patent and Trademark Office
Office of the Solicitor
PO Box 1450, Mail Stop 8
Alexandria, VA 22313
571-272-9035
nathan.kelley@uspto.gov
Principal Counsel for Intervenor

Paper copies will also be mailed to the above principal counsel on this date. Any Counsel for Amicus Curiae, appearing at the time of this filing will be served only via CM/ECF notice.

Thirty paper copies will be filed with the Court within the time provided in the Court's rules.

April 12, 2017

*/s/ John C. Kruesi, Jr.*
John C. Kruesi, Jr.
Counsel Press

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, I hereby certify that I am an attorney of record on behalf of Appellants Wi-Fi One, LLC and that I personally used the "word count" feature of Microsoft Word 2010 to count the words in the foregoing Brief of Appellant Wi-Fi One, LLC identified in the Rule 32(a)(7)(B)(iii) and determined that the foregoing brief contains 6,979 words and is therefore in compliance with Rule 32(a)(7)(B)(i).

In addition, this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman.

By: *<u>/s/ Donald Puckett</u>*
G. Donald Puckett
NELSON BUMGARDNER PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
(817) 377-9111 (telephone)
(817) 377-3485 (facsimile)
puckett@nelbum.com